TODD KIM, Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRIAN R. HERMAN (DC Bar No. 1044672)
Senior Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, <br><br> Plaintiff, <br><br> v. <br><br> U.S. Department of Agriculture, et al., <br><br> Defendants. | Case No.: 3:24-cv-08148-JJT <br><br> **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT [ECF NO. 18]** |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

    I.    Because Plaintiff Targets the Auction of Specific Horses on a Past Date, This Case is Moot ................................................................................ 1

    II.    Plaintiff Lacks Standing Because It Identifies No Injury in Fact ................. 3

    III.    Plaintiff Brings No Animal Cruelty Claim .................................................. 5

    IV.    The Court Lacks Jurisdiction Over Count II and, In Any Event, Plaintiff Fails to State a Claim for Relief ..................................................... 6

    V.    Plaintiff is Not Within the Zone of Interests of the Forest Service's Impoundment and Sale Regulation ............................................................... 8

CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Hughes v. Oklahoma*, 441 U.S. 322 (1979).................................................................. 11

*Int'l Soc. for Prot. of Mustangs and Burros v. U.S. Dep't of Agric.*, No. CV-22-08114-PHX-SPL, 2022 WL 3588223 (D. Ariz. July 28, 2022) ........................................... 3, 4

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)..................................... 6

*Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)................ 8, 9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................................ 3

*Nw. Immigrant Rights Project v. U.S. Citizenship & Immigr. Servs.*, 325 F.R.D. 671 (W.D. Wash. 2016).......................................................................................................... 9

*Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147 (9th Cir. 2015)......................... 8

*Rodriguez v. Profit Sharing Plan II Admin. Comm.*, No. 23-CV-2236 JLS, 2024 WL 3447521 (S.D. Cal. July 17, 2024) ............................................................................... 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)......................................................... 10

*W. Radio Servs. Co. v. Espy*, 79 F.3d 896 (9th Cir. 1996) ................................................ 9

**Statutes**

15 U.S.C. § 1125(a)............................................................................................................ 8

40 U.S.C. § 552 ................................................................................................................ 11

5 U.S.C. § 704 .................................................................................................................... 7

**Regulations**

36 C.F.R. § 222.60(b)(13) .................................................................................................. 3

36 C.F.R. § 262.10(a)-(c) ................................................................................................... 2

36 C.F.R. § 262.12............................................................................................................ 11

41 C.F.R. § 102-38.20(e).................................................................................................. 11

41 C.F.R. § 102-38.5 ........................................................................................................ 10

41 C.F.R. Part 102-38....................................................................................................... 10

**Other Authorities**

42 Fed. Reg. 2956-02 (Jan. 14, 1977) ......................................................................... 10, 11

79 Fed. Reg. 44293-01 (July 31, 2014)............................................................................ 11

BLACK'S LAW DICTIONARY (12th ed. 2024).................................................................................... 9

# INTRODUCTION

The Federal Defendants moved to dismiss Plaintiff's amended complaint. The arguments in Plaintiff's response lack merit. Thus, for the reasons below and in the Federal Defendant's motion, the Court should dismiss Plaintiff's amended complaint.

# ARGUMENT

## I. Because Plaintiff Targets the Auction of Specific Horses on a Past Date, This Case is Moot

The Court lacks subject matter jurisdiction over Plaintiff's complaint because this case is moot. Plaintiff brought this lawsuit to stop the auction of specific horses on a specific date that has now passed. Plaintiff claims its complaint is broader, but the complaint itself belies that argument.

Plaintiff opened its amended complaint by targeting the proposed July 2024 auction of certain horses. It was "bring[ing] this civil action for declaratory and injunctive relief . . . for violating the notice requirements **for a livestock auction of 13 horses recently removed from the Apache-Sitgreaves National Forest in Arizona**." Am. Compl. ¶ 1, ECF No. 18 (emphasis added). Plaintiff alleged that the Forest Service was planning to sell those horses "at **an** auction . . . to commence on **Wednesday, July 24, 2024**." *Id.* ¶ 3 (emphases added). Its only requests for relief relating to the Service's notices are directed at the July 2024 sale of these specific horses. *Id.* at 10. Plaintiff asked the Court to declare that the Service's notices for the planned July 2024 auction in Texas were inadequate and to enjoin the sale of the specific horses at issue until the Service issued proper notices. *See id.* Nowhere in Plaintiff's complaint does Plaintiff identify *any*

1

*other notice* that it alleges fails to comply with the Service's regulation. In fact, nowhere in Plaintiff's complaint does Plaintiff identify any other specific, final agency action it expects the Court to review. Its complaint is about the horses that were up for auction in July 2024. That date has passed and the horses have sold. This case is moot.

Plaintiff's arguments about the impoundment notice do not change this conclusion. Plaintiff's complaint pleads no freestanding claim about a notice of impoundment. Rather, Plaintiff's allegations about the notice of impoundment are in service of its claims about the July 2024 auction planned for Cleburne, Texas. *See id.* at 10 (targeting "inadequate notice[] of impoundment . . . for the Cleburne Auction"). Thus, because its allegations about the notice of impoundment go only toward attempting to stop the planned July 2024 auction, those allegations present no separate live case or controversy.

Plaintiff also lacks standing to press any freestanding notice of impoundment claim. The Service's regulation is about giving livestock owners notice of a planned impoundment so they can remove or reclaim their livestock. *See* 36 C.F.R. § 262.10(a)–(c). Plaintiff does not own any livestock present on the Apache National Forest. Thus, Plaintiff cannot suffer any, and certainly hasn't pleaded any, specific, concrete, and imminent injury to its interests from an improper notice of impoundment. Because the livestock do not belong to it and because it has no right to redeem the livestock, Plaintiff is not harmed by an allegedly improper impoundment notice. It would thus lack an Article III injury to press claims based on the impoundment notice. *See Lujan v. Defs. of*

*Wildlife*, 504 U.S. 555, 560 (1992) (standing requires "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical" (cleaned up)).

There is no further case or controversy over the horses planned for sale in July 2024. The Court should dismiss Plaintiff's complaint for lack of subject matter jurisdiction.

## II.     Plaintiff Lacks Standing Because It Identifies No Injury in Fact

Even beyond a claim about the impoundment notice, Plaintiff lacks standing to bring any of its claims because it fails to identify a concrete and particularized injury that is actual or imminent. In response to the Federal Defendants' standing arguments, Plaintiff argues that it uses the phrase "wild horses" broadly and it implies that it is interested in preserving horses living in the Apache-Sitgreaves National Forests. Pl.'s Resp. in Opp'n to Fed. Defs.' Mot. to Dismiss 7, ECF No. 38. But that Plaintiff wishes to classify these horses differently does not change the fact that horses present on the Apache National Forest are not wild horses; they are unauthorized livestock. *See Int'l Soc. for Prot. of Mustangs and Burros v. U.S. Dep't of Agric.*, No. CV-22-08114-PHX-SPL, 2022 WL 3588223, at \*6–\*10 (D. Ariz. July 28, 2022). This means that the horses belong to other people. *See* 36 C.F.R. § 222.60(b)(13); *Int'l Soc. for Prot. of Mustangs and Burros*, 2022 WL 3588223, at \*6. And Plaintiff has failed to plead and show a concrete and particularized injury from any Forest Service actions directed at other persons' livestock.

Plaintiff's quote from the *Mustangs* case does not change this conclusion. *See* Pl.'s Resp. 7–8. In the *Mustangs* case, the plaintiffs sought to prevent the Service's removal of horses based on, among other things, the protections of the Wild Horses and Burros Act. *See* 2022 WL 3588223, at *1–*2, *3. Plaintiff brings no such challenge. *See, e.g.*, Pl.'s Resp. 6 ("[T]he WHA is neither mentioned in, nor implicated by, this lawsuit."). This case is not about stopping the removal of horses from the Forests. Rather, Plaintiff brings a challenge only to the Service's procedures for the removal of unauthorized livestock from the Forests. The horses will be removed; it's a matter of to whom the horses are sold. Thus, the *Mustangs* court's finding that allegations of improper removal showed an injury to the plaintiffs' interests in studying the horses in their natural habitat is irrelevant.

Plaintiff also ignores that, even if Plaintiff could have an interest in other people's livestock, the only alleged harm is based on unfounded speculation that other purchasers will slaughter the horses. *See* Federal Defs.' Mot. to Dismiss 9 n.4, ECF No. 37; Pl.'s Resp. 6–8. Plaintiff alleges no actual or imminent, concrete and particular injury based on the Service's notices.[1] It lacks standing.

---

[1] Plaintiff's admissions also reflect an overall lack of harm from any claimed procedural irregularities. They state that they had previously purchased 392 horses sold at auction, Pl.'s Resp. 7, and admit that they purchased all the horses at issue when the Service held an auction after the TRO expired. *See id.* at 4. So all that Plaintiff is really asserting is that if Plaintiff does not purchase additional horses in future, they will be slaughtered. That reinforces that this case is moot and shows Plaintiff fails to identify a concrete and imminent injury. It also reflects a lack of redressability, further undermining standing: even if the Court issues an injunction addressing the notices, Plaintiff has no guarantee or right to purchase the horses.

4

### III. Plaintiff Brings No Animal Cruelty Claim

No animal cruelty claims can survive the Federal Defendants' Motion to Dismiss because Plaintiff brings none. Plaintiff argues that it has alleged "ongoing animal cruelty in the rounding up and transportation of the Alpine wild horses for the auction." Pl.'s Resp. 2. It continues that because the Federal Defendants did "not address[]" "[t]hese animal cruelty allegations," that part of its case cannot be dismissed. *Id.* But the Federal Defendants did not move to dismiss any animal cruelty claims because Plaintiff has not brought any; no such claims exist in the first place.

In Plaintiff's amended complaint, it pleads two causes of action, which it titles "Claims for Relief." Am. Compl. at 9. Its first claim for relief is an alleged "violation of APA," in which Plaintiff asserts that "[t]he Forest Service's failure to comply with the notice requirements" was arbitrary and capricious and otherwise failed to satisfy the APA. *Id.* (capitalization altered). Plaintiff's second claim for relief is another "violation of APA," based on the "Forest Service's and Lazy H's failure to comply with the Federal procurement and other regulations and laws in the conduct of its auctions." *Id.* at 9–10 (capitalization altered). None of those raise actionable claims against the Federal Defendants relating to animal cruelty. The conclusory allegations in Plaintiff's introduction that "Defendants have also engaged in unlawful animal cruelty during the capture, transport, loading and auction of the Alpine Wild Horses" does not state a claim against the Federal Defendants based on animal cruelty. *Id.* ¶ 11. And Plaintiff nowhere else alleges any actions by the Federal Defendants that would present a cause of action for animal cruelty. At most, Plaintiff sets forth its assertions about federal law. *See id.*

5

¶¶ 13–14. Plaintiff's complaint contains no claim against the Federal Defendants based on animal cruelty.

### IV.  The Court Lacks Jurisdiction Over Count II and, In Any Event, Plaintiff Fails to State a Claim for Relief

Putting aside that this action is moot, the Court lacks jurisdiction over Count II because it raises procurement violations. And if Count II could be read as alleging non-monetary contract claims, the Court would still lack subject matter jurisdiction. Plaintiff's arguments amount to an assertion that the Court should ignore the words of its own complaint. *See* Pl.'s Resp. 8–9. It argues that even though it said procurement, it really meant the sale of goods, something Plaintiff contends falls outside the Court of Federal Claims' exclusive jurisdiction. *Id.* Plaintiff's arguments fail.

To begin, a party cannot amend its pleading through a responsive brief. *Rodriguez v. Profit Sharing Plan II Admin. Comm.*, No. 23-CV-2236 JLS, 2024 WL 3447521, at *6 n.5 (S.D. Cal. July 17, 2024). And Plaintiff has alleged that "[t]he Forest Service's . . . failure to comply with the Federal procurement and other regulations and laws in the conduct of its auctions" is "arbitrary and capricious," "an abuse of discretion," and "contrary to law." Am. Compl. ¶ 45.

What's more, even if the substance of Plaintiff's allegations did not set forth procurement or contract claims, Plaintiff fails to establish this Court's jurisdiction over its "auction conduct" claim. This is fatal because Plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Plaintiff claims the Court has jurisdiction over Count II based

on the Administrative Procedure Act ("APA"). *See* Am. Compl. ¶¶ 17, 44–46; *see also* Pl.'s Resp. 11. The APA primarily provides for judicial review of final agency action. 5 U.S.C. § 704. Plaintiff, however, identifies no final agency action. Nothing in its complaint identifies specific final agency action by the Forest Service in the conduct of any specific auction. Rather, Plaintiff either complains about a private party or simply states what it believes to be the law. *See* Am. Compl. ¶¶ 6–10. It identifies no final agency action that can give this Court jurisdiction under the APA.

For that same reason, even if the Court had jurisdiction, Count II fails to state a claim. Plaintiff never identifies an applicable law or federal action allegedly in violation of such law. Defs.' Mot to Dismiss 15–17. It does not identify the action it expects this Court to review. Plaintiff claims that the Federal Defendants ignored certain paragraphs of its complaint, highlighting paragraphs 6, 7, 11, and 16. Pl.'s Resp. 15–16. But the Federal Defendants addressed those paragraphs. Defs.' Mot. to Dismiss 15–17. Nothing in paragraphs 6, 7, 11, or 16 identifies any particular action by a federal defendant. Nor do those paragraphs provide a plausible factual basis to conclude that the Forest Service has violated a law or regulation. Paragraph 6 speaks only to Rail Lazy H. Am. Compl. ¶ 6. Paragraph 7 is a partial quote of a regulatory provision. *Id.* ¶ 7. Paragraph 11 is a conclusory paragraph without any factual support that only identifies "Defendants" generally. *Id.* ¶ 11. Lastly, Paragraph 16 lacks any factual content; it is Plaintiff's characterization of its case. *Id.* ¶ 16. Nothing in Plaintiff's complaint presents a plausible second claim for relief.

## V. Plaintiff is Not Within the Zone of Interests of the Forest Service's Impoundment and Sale Regulation

Plaintiff's complaint is based on a Forest Service regulation about the impoundment and sale of unauthorized livestock. But because Plaintiff's alleged interest is in protecting wild horses, Plaintiff is not within the zone of interests of the regulation. Plaintiff therefore fails to state a claim on which relief can be granted.

Plaintiff responds to this straightforward argument in two ways. First, Plaintiff argues that the zone of interests test applies only to statutes, not regulations. Pl.'s Resp. 12. Second, Plaintiff claims that the Surplus Property Act of 1944 is the relevant underlying statute, and that Plaintiff falls within its zone of interests. *Id.* at 12–15. Plaintiff is incorrect on both accounts.

While it is true that in *Lexmark* the Court identified as a starting principle that "a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked," that does not dispose of the present question. *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (cleaned up). The Court there referred to the "law *invoked*"—the premise for the plaintiff's lawsuit. *Id.* (emphasis added). In *Lexmark*, the plaintiff sued under the Lanham Act, 15 U.S.C. § 1125(a). *Id.* at 120. Similarly, in *Pit River*, the plaintiffs' claims were based on several statutes. *Pit River Tribe v. Bureau of Land Mgmt.*, 793 F.3d 1147, 1148 (9th Cir. 2015).

Here, however, Plaintiff's complaint is based on regulatory violations. *See, e.g.*, Am. Compl. ¶¶ 1–4. The "law invoked" is therefore the regulation Plaintiff identified in

8

the complaint—a regulation has the force and effect of law. *See Regulation*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 900 (9th Cir. 1996). It would defy common sense to say that when a plaintiff sues claiming the violation of a regulation, a court cannot look to whether the plaintiff falls within the class of persons whose interests the regulation is designed to protect. Indeed, at least one district court judge has concluded that when a plaintiff brings claims based on regulations, the court should consider the interests underlying the regulation. *See Nw. Immigrant Rights Project v. U.S. Citizenship & Immigr. Servs.*, 325 F.R.D. 671, 686–87 & n.13 (W.D. Wash. 2016).

Considering the interests underlying the regulation on which a plaintiff brings suit also fits with Supreme Court cautions about third party standing and generalized grievances. *See Lexmark*, 572 U.S. at 126 (identifying "general prohibition on a litigant's raising another person's legal rights [and] the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches"). The regulation here is about the impoundment and sale of unauthorized livestock and providing notice to potential owners of those livestock. Plaintiff does not own any unauthorized livestock present in the Apache National Forest. It thus has no interests protected by the regulation and has no basis to bring suit under it. This necessarily means that its suit is either an attempt to air generalized grievances about government compliance with regulations or a disguised attempt to bring the claims of others who might own unauthorized livestock present on the Apache National Forest. Indeed, Plaintiff appears to admit the former:

"Plaintiff has a strong interest in assuring that the Alpine wild horse livestock auctions are administered in an even-handed manner and that participants are being reasonably informed and fairly treated, just as the auction regulations require." Pl.'s Resp. 15. But Plaintiff has no right or basis to ensure that federal agencies are generally following regulations or that others' rights are enforced. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021).

In any event, even if the Court must consider an underlying statute, Plaintiff's reliance on the Surplus Property Act of 1944 is mistaken and fails to save its complaint. The impoundment and sale regulation does not stem from that statute. The Forest Service first issued the regulation (then codified at § 262.2) in 1977. 42 Fed. Reg. 2956-02, 2961 (Jan. 14, 1977). The Forest Service listed the authorities for Part 262 as: (1) "30 Stat. 35, as amended (16 U.S.C. 551)"; (2) "Sec. 1, 33 Stat. 628 (15 U.S.C. 472)"; (3) "50 Stat. 526, as amended (7 U.S.C. 1011(f))"; and (4) 58 Stat. 736 (16 U.S.C. 559r)." *Id.* The Surplus Property Act—58 Stat. 765—is not listed. And its absence makes sense: a statute for the sale of surplus war property to aid in returning the economy to a peacetime footing would not be the basis for a regulation on the impoundment and sale of unauthorized livestock on National Forest lands.

Nor does 41 C.F.R. Part 102-38 help Plaintiff because it does not apply. As the Federal Defendants already pointed out, that part of the Code of Federal Regulations applies to "the sale of Federal personal property." 41 C.F.R. § 102-38.5; Defs.' Mot. to Dismiss 16. Unauthorized livestock are not federal personal property, Plaintiff's citation

to *Hughes v. Oklahoma*, 441 U.S. 322 (1979) notwithstanding. *See* Pl.'s Resp. 16. The question of ownership of wild animals is irrelevant. The unauthorized livestock present on the Apache National Forest are livestock that belong to other persons. They are neither wild animals nor federal personal property. And of course, Part 102-38 also provides that its regulations do not apply to "sales procedures which are mandated or authorized under laws other than Title 40 United States Code." 41 C.F.R. § 102-38.20(e). As seen above and as stated in the Federal Defendants' motion to dismiss, the impoundment and sale regulation is not authorized under Title 40.[2]

In short, Plaintiff fails to demonstrate that it is within the zone of interests of the impoundment and sale regulation or any other authority on which its claims are based.

**CONCLUSION**

The Court should dismiss Plaintiff's amended complaint.

Respectfully submitted this 5th day of November, 2024,

TODD KIM, Assistant Attorney General

/s/ Brian R. Herman
Brian R. Herman
Senior Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov

---

[2] In 2014, 40 U.S.C. § 552 was added as an authority for Part 262 because it is the basis for 36 C.F.R. § 262.12, providing for the impoundment of *personal* property. *See Law Enforcement Support Activities*, 79 Fed. Reg. 44293-01, 44294 (July 31, 2014); *see also* 36 C.F.R. § 262.12. That statute is not the basis for § 262.10. 42 Fed. Reg. at 2961.

11