**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, | No. CV-24-08148-PCT-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| United States Department of Agriculture, *et al.*, | |
| Defendants. | |

At issue is the Federal Defendants' Motion to Dismiss (Doc. 37, MTD) Plaintiff's First Amended Complaint (Doc. 18, FAC), to which Plaintiff filed a Response (Doc. 38, Resp.) and the Federal Defendants filed a Reply (Doc. 39, Reply), which was later joined by Defendant Rail Lazy H Contracting and Consulting LLC ("Rail") (Doc. 43). The Court resolves the Motion without oral argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court grants Defendants' Motion to Dismiss, but also grants Plaintiff leave to amend the FAC.

**I.   BACKGROUND**

This case involves a dispute between Plaintiff Salt River Wild Horse Management Group ("SRWHMG")[1] and Defendants the U.S. Department of Agriculture ("USDA") and its Secretary, the U.S. Forest Service ("USFS"), the Apache-Sitgreaves National Forest

---

[1] Originally, the case was brought by two Plaintiffs: SRWHMG and American Wild Horse Conservation ("AWHC"), but on September 10, 2024, Plaintiffs filed a notice voluntarily dismissing AWHC from the case. (Doc. 36.) In this Order, the Court uses the singular "Plaintiff" to refer to SRWHMG.

Supervisor, and the Regional Forester for the Southwestern Region, which are together responsible for the management, impoundment, and sale of horses from the Apache-Sitgreaves National Forests in Arizona. Plaintiff also names Rail as Defendant, which is under contract with the USFS to impound, capture, and sell horses. (FAC ¶ 5.)

Plaintiff is a non-profit organization dedicated to the protection and humane management of wild horses, particularly those in the Tonto National Forest and the Apache-Sitgreaves National Forest in Arizona. (FAC ¶ 20.) One of the primary ways Plaintiff seeks to protect these horses is by purchasing them at auctions organized by Defendants. (FAC ¶ 40.) These auctions, and the procedures surrounding them, are central to the present dispute.

On December 15, 2023, the USFS issued a notice of impoundment applicable to certain districts of the Apache-Sitgreaves National Forest, stating that unauthorized livestock within those areas would be impounded within the following twelve months. (Doc 3-1, Netherlands Decl. Ex. 1.) On July 18, 2024, the USFS subsequently posted and published a notice of sale for unauthorized horses that had been impounded. (Doc 3-3, Netherlands Decl. Ex. 3.)

On July 24, 2024, Plaintiff initiated this action by filing a Complaint seeking emergency relief to enjoin the sale of certain horses scheduled for auction at the Johnson County Livestock Exchange in Cleburne, Texas. (Doc. 2.) On the same day, District Judge Susan M. Brnovich granted the request, issued a temporary restraining order ("TRO") preventing such sale through August 2, 2024, and set a preliminary injunction hearing for that date. (Doc. 10.)

On July 29, 2024, Plaintiff filed the FAC, bringing the following claims: (1) an Administrative Procedure Act ("APA") violation under 5 U.S.C. § 706(2)(A), (D) for failure to comply with the notice requirements of 36 C.F.R. § 262.10, and (2) an APA violation under 5 U.S.C. § 706(2)(A), (D) for failure to comply with regulations and laws in conducting auctions. (FAC ¶¶ 41–46.) After further briefing and the August 2, 2024 hearing, the Court denied Plaintiff's request for a preliminary injunction, thereby allowing

the TRO to expire. (Doc. 25.) Consequently, the USFS proceeded with the sale of the impounded horses at a rescheduled auction on August 14, 2024. (Doc. 37-1, 2d Lever Decl. ¶¶ 5–6.)

In their Motion to Dismiss, Defendants contend the Court lacks subject matter jurisdiction over Plaintiff's claims based on Article III's standing and mootness requirements, 28 U.S.C. § 1491(b)(1), and 41 U.S.C. § 605(a), and Defendants therefore seek dismissal of those claims under Federal Rule of Civil Procedure 12(b)(1). Defendants also contend that Plaintiff fails to establish that its interests fall within the zone of interests protected by 36 C.F.R. § 262.10 and fail to state a claim with regard to Count II, and Defendants seek dismissal of those claims under Rule 12(b)(6).

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

**B. Rule 12(b)(6)**

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

. . .

. . .

. . .

## III. ANALYSIS

### A. Subject Matter Jurisdiction

#### 1. Standing

To bring a justiciable lawsuit into federal court, Article III of the Constitution requires that a plaintiff have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires the plaintiffs to show that they suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In the complaint, the plaintiffs must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Ct. of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). If the plaintiffs fail to allege such facts, the Court should dismiss the complaint. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Here, Defendants mount a facial attack on the first prong of the Article III inquiry—whether Plaintiff's FAC adequately alleges a concrete and particularized injury sufficient to establish standing. (MTD at 3.)

Regarding the first prong, an organization may satisfy Article III's injury in fact requirement if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources in response to that frustration of purpose. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004). In considering a motion to dismiss for lack of standing at the pleading stage, the court accepts all allegations as true and interprets them in the plaintiff's favor. *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1089 (D. Ariz. 2011). Thus, general claims of injury caused by the defendant's conduct are deemed adequate, as they are presumed to contain the essential facts needed to support the claim. *Smith*, 358 F.3d at 1105–06.

Beginning with Plaintiff's organizational mission, in the FAC, Plaintiff alleges that its organizational mission—to protect wild horses, manage them humanely, and rescue them for placement in good homes—has been frustrated by Defendants' actions in

- 5 -

removing the horses from the forest without proper notice. (FAC ¶¶ 21, 36, 38.) Specifically, Plaintiff claims that it has been unable to rescue horses through its typical channels, namely the USFS auctions. (FAC ¶¶ 36, 38.) This disruption, as alleged, is directly tied to Plaintiff's core mission of rescuing and rehoming wild horses.

The fact, as Defendants stress, that the horses involved are classified as unauthorized livestock, not wild horses, does not preclude a finding that Plaintiff's organizational mission has been frustrated. (MTD at 9.) Defendants rely on *International Society for the Protection of Mustangs and Burros v. United States Department of Agriculture*, No. CV-22-08114-PHX-SPL, 2022 WL 3588223, at *2–3 (D. Ariz. July 28, 2022), to support their position, arguing that the classification of the horses as unauthorized livestock undermines Plaintiff's standing. (MTD at 9.) However, Defendants misread the core issue in that case. There, the court focused on whether the organization could demonstrate injury to its mission, not on the legal status of the horses themselves. *Mustangs & Burros*, 2022 WL 3588223, at *2–3. The Court agrees with Plaintiff that that decision makes clear that an organization can establish standing by showing how actions taken by the defendant *may* frustrate its mission and require it to divert resources, *regardless* of the animals' legal classification. *Id.* at *3 (finding that the defendants' removal of horses from the Apache National Forest frustrated the plaintiffs' organizational mission to protect and preserve wild horses and burros, despite there being a question of whether the horses were indeed wild, free-roaming horses).

Here, Defendants' argument that "even if Plaintiff could have an interest in other people's livestock, the only alleged harm is based on unfounded speculation that other purchasers will slaughter the horses" is similarly unavailing. (Reply at 4.) The core issue is not whether Plaintiff can predict the future actions of potential purchasers, but whether Defendants' conduct has frustrated Plaintiff's organizational mission. *Smith*, 358 F.3d at 1105. As noted earlier, Plaintiff has alleged that its core mission—rescuing and rehoming wild horses—has been directly impacted by the removal and sale of the horses without proper notice and in violation of the applicable regulations. (FAC ¶¶ 21, 36, 38.) Therefore,

1  Plaintiff has sufficiently alleged that its organizational mission has been frustrated by
2  Defendants' conduct.
3        However, in the FAC, Plaintiff has not sufficiently alleged a diversion of resources.
4  While general allegations of resource diversion can sometimes satisfy this prong, the FAC
5  fails to specify how resources were redirected or expended due to Defendants' alleged
6  disruption of its mission, and the Court finds no such allegations in the Complaint. *Smith*,
7  358 F.3d at 1105–06 (finding that plaintiff's allegation that it "divert[ed] its scarce
8  resources from other efforts" to monitor and educate the public on defendant's violations
9  was sufficient to establish diversion of resources). Nevertheless, if defects in a complaint
10 can be cured by amendment, a plaintiff is entitled to amend the complaint before it is
11 dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1127–30 (9th Cir. 2000). Because it is
12 possible that Plaintiff could allege facts that show how its resources were diverted because
13 of Defendants' conduct, the Court grants Plaintiff leave to amend the FAC to address this
14 deficiency.

### 2. Mootness

16 Because the horses included in the July 2024 Auction have already been sold,
17 Defendants also contend this case is now moot. (MTD at 5–6.) Defendants characterize
18 Plaintiff's claims as a narrow suit "to stop the auction of specific horses on a specific date
19 that has now passed." (Reply at 1.) Therefore, Defendants reason, effective relief is no
20 longer available. (MTD at 8.) Plaintiff rejects this contention, characterizing the case as a
21 broader challenge to Defendants' compliance with the Federal Procurement Regulations,
22 including Notice of Impounds and Notice of Sales, as well as their treatment of Alpine
23 horses. (*See* Resp. at 4–6.)
24       Defendants have a heavy burden in demonstrating mootness. *Bayer v. Neiman*
25 *Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). "An action 'becomes moot only
26 when it is impossible for a court to grant any effectual relief whatever to the prevailing
27 party.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165 (2013)). Thus, "the question is not
28 whether the precise relief sought at the time the application for an injunction was filed is

still available. The question is whether there can be *any* effective relief." *Headwaters, Inc. v. Bureau of Land Mgmt.*, 893 F.2d 1012, 1015 (9th Cir. 1989); *see also Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002). The Court answers in the affirmative.

Although the sale of horses at the July 2024 Auction was final, the Court can grant Plaintiff relief on other grounds. For instance, the Court could order Defendants to implement appropriate safeguards to ensure the humane treatment and care of horses throughout the impoundment and sale process. Or, if warranted, the Court may order the parties to formulate a decree providing for adequate notice to the public of any planned actions regarding the sale, impoundment, or transport of the Alpine Wild Horses, including but not limited to notice of sale, and give Plaintiff a reasonable opportunity to challenge such actions before they proceed. Because effective relief might still be available to address the effects of the alleged violation, the controversy remains live and present.

The Ninth Circuit's decision in *American Horse Protection Association, Inc. v. Watt*, 679 F.2d 150 (1982), is not to the contrary. There, the plaintiffs sought to prevent a specific wild-horse roundup scheduled for September 15, 1980, but by the time the appeal was filed, the roundup had already been completed. *Id.* at 151. Notably, the district court had already issued a decree requiring the parties to ensure proper notice and an opportunity for judicial review before any future actions. *Id.* The Ninth Circuit found the case moot because no effective relief could be granted for that specific event since it had already occurred. *Id.* In contrast to *American Horse Protection,* Plaintiff here is challenging broader issues of Defendants' compliance with Federal Procurement Regulations, and relief—such as implementing safeguards or requiring notice for future actions—remains available. Thus, these two cases are distinguishable.

Furthermore, Plaintiff requests the type of broad relief described in *Neighbors*. 303 F.3d at 1066 (noting that where a plaintiff makes "a broad request for such other relief as the court deemed appropriate," the Ninth Circuit has found that courts may construe such requests for relief "broadly to avoid mootness"). In addition to a preliminary injunction,

1  Plaintiff has also requested various forms of relief aimed at addressing the alleged ongoing
2  violations of Federal Procurement Regulations and ensuring the humane treatment of
3  Alpine Wild Horses in the future. Specifically, Plaintiff seeks declarations of violations,
4  the imposition of safeguards, and the establishment of transparency measures, all of which
5  are aimed at preventing further harm and ensuring compliance with the law. Because the
6  alleged violations at issue may still be addressed through a variety of relief measures, the
7  case remains live and capable of resolution, and the Court therefore declines to dismiss on
8  mootness grounds.[2]

### 3. Jurisdiction under the ADRA and CDA

Defendants also argue the Court lacks subject matter jurisdiction because Plaintiff's claims consist of alleged procurement violations, such that they arise under the Tucker Act, as amended by Administrative Dispute Resolution Act ("ADRA"), 28 U.S.C. § 1491(b)(1), and the Contracts Dispute Act ("CDA"), 41 U.S.C. § 605(a), for which exclusive jurisdiction is vested in the United States Court of Federal Claims ("CFC"). (MTD at 10–12.) The Court disagrees.

As a preliminary matter, "[t]he United States, as sovereign, is immune from suit save as it consents. . . ." *MD Helicopters Inc. v. United States*, 435 F. Supp. 3d 1003, 1007 (D. Ariz. 2020) (internal quotations omitted). Therefore, when a plaintiff sues the federal government, Congress's consent to suit is a "prerequisite for jurisdiction" and must be "unequivocally expresse[d] in its statutory text." *Id.* at 1007–08 (internal quotations omitted).

The APA provides that a lawsuit filed in a court of the United States seeking non-monetary relief against a federal agency, officer, or employee for an official action or failure to act under color of legal authority shall not be dismissed, nor relief denied, solely because it is against the United States. 5 U.S.C. § 702. In the FAC, Plaintiff seeks only declaratory and injunctive relief, not monetary damages. Therefore, the FAC falls within

---

[2] Plaintiff argues that even if its case is moot, the "capable of repetition but evading review" exception applies. (Resp. at 5.) However, the Court declines to analyze the applicability of this exception because it finds that Plaintiff's case is not moot.

- 9 -

the APA's waiver of sovereign immunity, provided the APA's limitations on that waiver do not apply.

In that regard, the APA's waiver of sovereign immunity does not apply if any other statute that grants consent to suit expressly or impliedly forbids the relief that is sought. 5 U.S.C. § 702; *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). Because Defendants contend Plaintiff's claims are procurement claims, they argue this Court lacks subject matter jurisdiction because both the Tucker Act, as amended by the ADRA and a related sunset provision, and the CDA give the CFC exclusive jurisdiction over such claims. *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1081 (Fed. Cir. 2001) (noting Congress terminated district court jurisdiction over procurement claims effective January 1, 2001, as part of the ADRA); 28 U.S.C. § 1346(a)(2) (divesting district court of jurisdiction over claims against the United States founded on express or implied contract). Defendants also argue that, to the extent that Plaintiff's claim is a procurement claim arising under the Tucker Act, Congress has not waived the federal government's sovereign immunity as to such claims when the relief sought is declaratory and injunctive relief, as Plaintiff seeks here. *See Tucson Airport Auth.*, 136 F.3d at 646.

[T]o determine whether a claim is contractually-based, courts look to "the source of rights upon which the plaintiff bases its claims, and … the type of relief sought." *Gabriel v. Gen. Serv. Admin.*, 547 Fed. App'x 829, 831 (9th Cir. 2013). Therefore, the determination of whether the Tucker Act and CDA divest the Court of jurisdiction depends on whether Plaintiff's claim is properly understood as a procurement claim founded on a federal contract.

Given that the core of Plaintiff's claims, while rooted in regulatory violations, are not raised in connection with a procurement or a proposed procurement under 28 U.S.C. § 1491(b), the Tucker Act does not bar jurisdiction over this case. Likewise, Plaintiff's claims are not based on an express or implied contract with a government agency under the CDA, 41 U.S.C. § 7102(a). Although Plaintiff referenced federal procurement

regulations in its FAC, the mere fact that resolving the claims requires some reference to procurement does not transform the action into a contractual one or deprive the Court of jurisdiction it otherwise has. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). Procurement is defined as including "all stages of the process of acquiring property or services, beginning with the process for determining a need for property or services and ending with contract completion and closeout." 41 U.S.C. § 403(2); *see also Distrib. Sols., Inc. v. United* States, 539 F. 3d 1340, 1345 (Fed. Cir. 2008) (holding that the ADRA borrows the definition of "procurement" from 41 U.S.C. § 403(2)). Plaintiff's allegations focus on the failure by the USFS and Rail to adhere to statutory notice requirements, animal welfare laws, and other regulations—issues that are distinct from the contract between the USFS and Rail and the USFS's procurement process itself. (FAC ¶¶ 8–16.) As such, these claims do not fall within the Tucker Act's or CDA's jurisdictional reach. Accordingly, the Court retains jurisdiction under the APA and may proceed to address the merits of Plaintiff's claims.

### B. Failure to State a Claim

#### 1. Zone of Interests

Defendants next argue that even if Plaintiff has Article III standing, Plaintiff's interests fall outside the zone of interests protected by the relevant regulation, 36 C.F.R. § 262.10. (MTD at 13.) Specifically, Defendants argue that (1) the inquiry should be narrowly focused on the regulation itself and (2) Plaintiff's interest—the protection of wild horses—is not covered by § 262.10 because "the regulation is designed to ensure that owners of the unauthorized livestock have notice and an opportunity to redeem their livestock before they are sold." (MTD at 13–14.) In response, Plaintiff asserts that the zone of interests must be evaluated in the broader context of the Surplus Property Act, which it contends is the statute under which § 262.10 was promulgated. Neither party's approach fully captures the appropriate standard.

Under the APA, a plaintiff may only bring a claim if the interest it is seeking to protect is "arguably within the zone of interests to be protected or regulated by the statute

in question." *Nw. Requirements Utils. v. F.E.R.C.*, 798 F.3d 796, 807 (9th Cir. 2015). "This test is not meant to be especially demanding," and "do[es] not require any indication of congressional purpose to benefit the would be plaintiff." *Id.* (internal quotations omitted). The benefit of the doubt goes to the plaintiff, and "[t]he test forecloses suit only when the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* District courts within the Ninth Circuit have found that "[w]here, as here, the purported substantive right arises from the regulation itself, it is appropriate to look to *both* the statute and the regulation that underlies it." *Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 325 F.R.D. 671, 686 n.13 (W.D. Wash. 2016); *see also Cox Cable Tucson, Inc. v. Ladd*, 795 F.2d 1479, 1484–86 (9th Cir. 1986) (applying the zone of interests test to the challenged regulation).

Here, Plaintiff's interest in protecting wild horses is consistent with the applicable statutory and regulatory purpose. Starting with the regulation itself, by its express terms § 262.10 regulates how the USFS may remove livestock from the National Forest System, including providing notice to the owners of unauthorized livestock. 36 C.F.R. § 262.10. However, providing notice to owners is not the regulation's only purpose; the regulation is equally concerned with ensuring the proper management of livestock on public lands. For example, section (b) of the regulation allows impoundment of livestock even when the USFS lacks full knowledge of the livestock's identity or the owner's information, provided public notice is made. Similarly, section (c) reflects the regulation's broader focus by permitting the impoundment of livestock without further notice when ownership is unknown, reinforcing that the regulation is designed not only to facilitate notice to owners but also to address situations where ownership is unclear. Therefore, Defendants' interpretation is overly narrow and does not fully capture the broader scope of the regulation's intent.

The Court agrees with the District of New Mexico's interpretation in *New Mexico Cattle Growers' Association v. United States Forest Service*, No. CIV 23-0150 JB/GBW,

2025 WL 327265 (D.N.M. Jan. 29, 2025). There, the plaintiff, Humane Farming, a non-profit organization dedicated to protecting farm animals, was found to have interests that fall within the zone of interest of § 262.10. *Id.* at *74–75. That court recognized that Humane Farming's advocacy for the humane treatment of animals, including rescuing those at risk, fell within the regulation's broader purpose of managing and protecting livestock on public lands because "[h]ow the Forest Service removes unauthorized livestock impacts Humane Farming's ability to rescue those animals." *Id.* at *76.

Furthermore, considering § 262.10 was promulgated under the authority of several statutory provisions that fall within the Forest Service Organic Act, including (1) 30 Stat. 35, as amended (16 U.S.C. § 551); (2) Sec. 1, 33 Stat. 628 (16 U.S.C. § 472); (3) 50 Stat. 526, as amended (7 U.S.C. § 1011(f)); and (4) 58 Stat. 736 (16 U.S.C. § 559r), Congress intended 36 C.F.R. § 262.10 to serve a broader purpose of managing and protecting livestock on public lands. 42 Fed. Reg. 2956-02, 2961 (Jan. 14, 1977); *N.M. Cattle Growers' Ass'n*, 2025 WL 327265 at *75. The Forest Service Organic Act is designed to manage how the public occupies and uses public and national forests. *See* 16 U.S.C. § 551. Specifically, the Act empowers the Agriculture Secretary to "make provisions for the protection against destruction by fire and depredations upon the public forests and national forests," and to "make such rules and regulations and establish such service as will ensure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction." *Id.* In this context, 36 C.F.R. § 262.10 is part of Congress's broader intent to manage and protect public lands from various threats, including unauthorized livestock. In sum, the regulation's purpose is not limited to providing notice to livestock owners but is also aligned with the broader statutory objective of preserving and maintaining public lands. Accordingly, Plaintiff's injuries are within § 262.10's zone of interests.

. . .

. . .

. . .

- 13 -

### 2. Count II – Violation of the APA

Having concluded that Plaintiff's injuries are within 36 C.F.R. § 262.10's zone of interests, the Court now turns to Defendants' final argument that Count II fails to state a claim on which relief can be granted. (MTD at 15.) In Count II of the FAC, Plaintiff alleges:

> The [USFS's] and [Rail's] failure to comply with the Federal procurement and other regulations and laws in the conduct of its auctions as discussed herein constitutes arbitrary and capricious agency action, is an abuse of discretion, and is contrary to law and to procedures required by law. 5 U.S.C. § 706(2)(A), (D).

(FAC ¶ 45.)

Defendants argue that Count II fails to state a claim because (1) Plaintiff does not identify any specific federal actions or laws that were violated and (2) the FAC lacks the necessary factual support to show that the USFS's actions deviated from lawful procedures or regulations. (MTD at 15–16.) However, Defendants' argument overlooks key portions of the FAC that, when read in its entirety, provide a sufficiently detailed factual basis to state a claim under the APA.

Plaintiff identifies several ways in which Defendants allegedly failed to adhere to legal and regulatory mandates. First, Plaintiff asserts that Defendants did not conduct the auctions in a manner that ensured full and open competition, as required under 41 C.F.R. § 102-38.80(a). (FAC ¶ 7.) That regulation mandates that government auctions must be publicly advertised and conducted in a way that maximizes return and minimizes cost. (FAC ¶ 7.) Plaintiff alleges that Defendants, instead of adhering to these principles, engaged in exclusionary practices that prevented full participation in the bidding process. (FAC ¶¶ 4, 8, 36.) Second, Plaintiff contends that Defendants' handling and transportation of the impounded horses violated federal animal welfare laws, including 49 U.S.C. § 80502, which sets minimum standards for humane treatment during transport. (FAC ¶¶ 11–16.) Specifically, the FAC alleges that Defendants confined the horses for more than 28 consecutive hours in violation of § 80502. (FAC ¶¶ 11–14.)

. . .

- 14 -

Such allegations, if true, would violate the principles underlying the applicable laws and regulations. Defendants discount these claims as speculative, but at this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and determine only whether they plausibly state a claim for relief. Accordingly, the Court finds that Count II sufficiently alleges a claim under 5 U.S.C. § 706(2)(A) and (D) and denies Defendants' motion to dismiss on this ground.

**IT IS THEREFORE ORDERED** granting in part and denying in part the Federal Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 37). As a matter of standing, Plaintiff has not adequately alleged a diversion of its resources, but Plaintiff may amend the First Amended Complaint (Doc. 18) if it can cure this defect. All other aspects of Defendants' Motion are denied.

**IT IS FURTHER ORDERED** granting Plaintiff leave to file a Second Amended Complaint within 14 days of this Order, only if and to the extent it can cure the defect identified in this Order.

Dated this 26th day of February, 2025.

Honorable John J. Tuchi
United States District Judge