ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRIAN R. HERMAN (DC Bar No. 1044672)
Senior Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Salt River Wild Horse Management Group, | ) ) ) | Case No.: 3:24-cv-08148-JJT |
| Plaintiff, | ) ) ) | **FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 45] AND MEMORANDUM IN SUPPORT** |
| v. | ) ) | |
| U.S. Department of Agriculture, et al., | ) ) | |
| Defendants. | ) ) | |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 3

    I.    Because Plaintiff Has Suffered No Injury in Fact, and Because the Court
        Cannot, in Any Event, Redress Any of the Harms Alleged, Plaintiff Lacks
        Standing ............................................................................................... 3

        A.    Plaintiff Has Suffered No Injury in Fact .................................... 3

        B.    The Court Cannot Redress the Wrongs Plaintiff Asserts ........... 8

    II.    The Court Must Dismiss Count II for Lack of Subject Matter Jurisdiction
        Because Plaintiff Does Not Identify Final Agency Action .................... 13

CONCLUSION .................................................................................................. 17

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*27-35 Jackson Ave LLC v. United States,*
    127 F.4th 1314 (Fed. Cir. 2025) ................................................................. 11

4

*Ariz. All. for Retired Ams. v. Mayes,*
5
    117 F.4th 1165 (9th Cir. 2024) ................................................................... 6

6

*Bennett v. Spear,*
    520 U.S. 154 (1997) .................................................................................. 14

7

*Ctr. for Biological Diversity v. Haaland,*
8
    58 F.4th 412 (9th Cir. 2023) ...................................................................... 14

9

*Env't Prot. Info. Ctr. v. U.S. Forest Serv.,*
    No. C-02-2708, 2006 WL 2130905 (N.D. Cal. July 28, 2006) ................. 12

10

*Flast v. Cohen,*
11
    392 U.S. 83 (1968) ...................................................................................... 9

12

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) .......................................................................... passim

13

*Havens Realty Corp. v. Coleman,*
14
    455 U.S. 363 (1982) .................................................................................... 5

15

*Juliana v. United States,*
    947 F.3d 1159 (9th Cir. 2020) .................................................................... 8

16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
17
    572 U.S. 118 (2014) ............................................................................... 3, 8

18

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ............................................................................ 3, 4, 8

19

*M.S. v. Brown,*
20
    902 F.3d 1076 (9th Cir. 2018) ................................................................. 8, 9

21

*Norton v. S. Utah Wilderness All.,*
    542 U.S. 55 (2004) ............................................................................. 13, 15

22

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.,*
23
    465 F.3d 977 (9th Cir. 2006) ..................................................................... 14

24

*S.F. Herring Ass'n v. Dep't of Interior,*
    946 F.3d 564 (9th Cir. 2019) ..................................................................... 13

25

*Smith v. Pac. Props. & Dev. Corp.,*
26
    358 F.3d 1097 (9th Cir. 2004) ................................................................. 4, 7

27

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
   578 U.S. 590 (2016) .................................................................................. 14

*Ukiah Valley Med. Ctr. v. FTC*,
   911 F.2d 261 (9th Cir. 1990) ................................................................... 13

*United States v. Fruehauf*,
   365 U.S. 146 (1961) ............................................................................ 9, 11

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
   5 F.4th 997 (9th Cir. 2021) ............................................................... 13, 17

**Statutes**

5 U.S.C. § 551(4) ............................................................................................ 15

5 U.S.C. § 702 .................................................................................................. 9

5 U.S.C. § 704 ................................................................................................ 13

5 U.S.C. § 706 .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 12(h)(3) ................................................................................... 3

iii

**INTRODUCTION**

Plaintiff Salt River Wild Horse Management Group sued several federal and private defendants, including the U.S. Department of Agriculture and the U.S. Forest Service. It sought to enjoin the sale of certain horses impounded as unauthorized livestock from the Apache-Sitgreaves National Forests. The Court issued an ex parte temporary restraining order that halted the auction in late July 2024. After briefing and argument, the Court denied Plaintiff's motion for a preliminary injunction, the TRO dissolved, and the Forest Service sold the horses at issue.

The Federal Defendants then moved to dismiss Plaintiff's first amended complaint. The Court granted in part and denied in part the motion, finding that Plaintiff had not adequately alleged facts to support standing. It also gave Plaintiff leave to amend. Plaintiff then filed a second amended complaint, attempting to address the Court's standing concerns. Plaintiff's second amended complaint, however, still fails to show standing. This is mainly because the legal framework on which the Court based its decision and on which Plaintiff amended—the diversion of resources in support of organizational standing—is no longer good law. Plaintiff also fails to allege final agency action for Count II, necessary for the Court's jurisdiction under the Administrative Procedure Act ("APA"). For these reasons and as discussed below, the Federal Defendants move to dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction under Rule 12(b)(1).

1

1

**BACKGROUND**

2       Plaintiff is an organization "dedicated to the protection and humane management

3   of the Salt River wild horses who live in the Tonto National Forest, and the Alpine Wild

4   Horses who live in the Apache-Sitgreaves National Forest in Arizona." 2d Am. Compl.

5   ¶ 20, ECF No. 45. On July 24, 2024, Plaintiff filed a one-count complaint and motion for

6   a temporary restraining order and preliminary injunction. ECF Nos. 1, 2. Plaintiff sought

7   to enjoin the auction of horses impounded from the Apache-Sitgreaves National Forests

8   at a sale that was set to take place the evening of July 24. *See* ECF No. 2 at 2, 8; *see*

9   *generally* ECF No. 1.

10

11      Later that day, Judge Brnovich issued a temporary restraining order enjoining the

12  sale of the unauthorized livestock at issue. ECF No. 10. A few days later, Plaintiff filed

13  an amended complaint that, among other things, added a second cause of action relating

14  to the conduct of the horse auctions. *See* ECF No. 18. The parties fully briefed and

15  argued Plaintiff's request for a preliminary injunction. The Court then denied Plaintiff's

16  motion and the TRO dissolved. ECF No. 25. On August 14, the Forest Service sold the

17  horses at issue. *See* Fed. Defs.' Mot. to Dismiss Pl.'s Am. Compl. & Mem. in Supp. 5,

18  ECF No. 37.

19

20      The Federal Defendants then moved to dismiss Plaintiff's first amended

21  complaint. *See id.* at 2. They did so based on mootness, lack of standing, lack of subject

22  matter jurisdiction, and failure to state a claim. On February 26, 2025, the Court issued an

23  order "granting in part and denying in part the Federal Defendants' Motion to Dismiss

24

25

26  Plaintiff's Amended Complaint." Order 15, ECF No. 44. It stated that it "grants

27

2

Defendants' Motion to Dismiss, but also grants Plaintiff leave to amend the FAC." *Id.* at 1. The Court held that "[a]s a matter of standing, Plaintiff has not adequately alleged a diversion of its resources, but Plaintiff may amend the First Amended Complaint if it can cure this defect." *Id.* at 15 (citation omitted). On March 12, Plaintiff filed a second amended complaint, attempting to cure the defect the Court identified. *See* ECF No. 45. Under Rule 12(b)(1), the Federal Defendants now move to dismiss that second amended complaint.

**ARGUMENT**

**I.    Because Plaintiff Has Suffered No Injury in Fact, and Because the Court Cannot, in Any Event, Redress Any of the Harms Alleged, Plaintiff Lacks Standing**

Plaintiff fails to satisfy both the injury in fact and redressability prongs of the standing inquiry. As to the former, the Supreme Court has abrogated the organizational standing framework on which the Court's prior order was based and on which Plaintiff based its amendment. As to the latter, the Court cannot grant any effective relief considering the allegations in the Complaint. Plaintiff thus lacks standing and the Court must dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

A.    Plaintiff Has Suffered No Injury in Fact

The Article III limitation of the judicial power to cases and controversies includes the "irreducible constitutional minimum of standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To have standing, a plaintiff "must have suffered or be

imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Id.*

Plaintiff fails to meet this requirement. In the Court's order, it wrote that "an organization may satisfy Article III's injury in fact requirement if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources in response to that frustration of purpose." Order 5 (citing *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004)). The Court found that "Plaintiff ha[d] sufficiently alleged that its organizational mission has been frustrated by Defendants' conduct," but that "Plaintiff ha[d] not sufficiently alleged a diversion of resources." *Id.* at 6–7. It granted leave to amend to allow Plaintiff to allege facts showing a diversion of resources, *id.* at 7, and Plaintiff filed a second amended complaint attempting to do so. *See, e.g.*, 2d Am. Compl. ¶¶ 21–24. But Plaintiff's attempt fails. An alleged diversion of resources does not establish an organization's standing.

Just last term, in a unanimous decision, the Supreme Court held that organizations asserting standing on their own behalf "must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). There, medical associations asserted standing based on allegations that the FDA had "impaired their ability to provide services and achieve their organizational missions." *Id.* at 394. The Court rejected their argument. It held that such an "argument does not work to demonstrate standing." *Id.*

Among other things, the Court observed that organizations' interests alone are insufficient. The "intensity" of one's interest or "strong opposition to the government's conduct" cannot establish standing. *Id.* "[S]incere legal, moral, ideological, and policy objections" "do not establish a justiciable case or controversy in federal court." *Id.* at 396. Nor can an organization "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 394. It was not enough that the medical associations allegedly incurred costs opposing the FDA's actions. *Id.* The associations had pointed to studies they conducted in response to the FDA's actions and asserted that the FDA had forced them to spend time, energy, and resources engaging in advocacy and education "to the detriment of other spending priorities." *Id.* But that did not establish standing. "An organization cannot manufacture its own standing in that way." *Id.*

The Court rejected the medical associations' reliance on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). The medical associations had argued that under *Havens*, "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.* at 395. The Court rejected that argument in simple fashion, stating "[t]hat is incorrect." *Id.* Such a "theory would mean that all organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.* But "*Havens* does not support such an expansive theory of standing." *Id.* Rather, "*Havens* was an unusual case, and th[e] Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at 396.

5

1     Organizations must show a traditional injury in fact and cannot rely on alleged diversion

2     of resources. *See id.* at 396–97.

3          *Hippocratic Medicine* thus rejects the very premise on which the Court thought

4     Plaintiff might have standing and on which Plaintiff amended its complaint. The Ninth

5

6     Circuit has recognized as much. Following *Hippocratic Medicine*, it had held that the

7     Supreme Court "has . . . put a halt" to the Ninth Circuit's cases construing *Havens*. *Ariz.*

8     *All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1169–70 (9th Cir. 2024), *vacated for*

9

10    *rehearing en banc*, No. 22-16490, 2025 WL 843314 (9th Cir. Mar. 18, 2025).[1] The court

11    described *Hippocratic Medicine* as holding "that neither the frustration of a mission nor

12    the diversion of resources confers standing under Article III, making our precedents

13    clearly irreconcilable with *Hippocratic Medicine*." *Id.* at 1170. The Ninth Circuit thus

14    held that "[o]rganizations can no longer spend their way to standing based on vague

15

16    claims that a policy hampers their mission." *Id.*

17         That the Ninth Circuit has vacated its *Arizona Alliance* panel opinion for rehearing

18    en banc does not change what that court recognized: the Supreme Court has abrogated the

19

20    diversion of resources organizational standing framework. And this Court, of course, is

21    bound by the Supreme Court's decision in *Hippocratic Medicine*. What's more, the

22    Supreme Court's cabining of *Havens* directly bears on this Court's order. As noted

23    above, this Court relied on *Smith* for its statements on organizational standing. Order 5.

24

25

26    _____

27    [1] Oral argument before the en banc court is set for the week of June 23, 2025. Order, *Ariz.*
      *All. for Retired Ams.*, No. 22-16490 (Mar. 18, 2025), ECF No. 100.

But in *Smith*, the Ninth Circuit assessed the organizational plaintiff's standing based on *Havens*. *Smith*, 358 F.3d at 1101, 1104–06. Citing *Havens* directly, the Ninth Circuit set out and relied on the two-part test looking at frustration of mission and diversion of resources. *Id.* at 1105–06. Yet as the Supreme Court recently made clear, "[t]hat is not correct." *Hippocratic Med.*, 602 U.S. at 395. The court's decision in *Smith* provides no basis to find Plaintiff has standing.

The Court must thus dismiss Plaintiff's complaint because Plaintiff pleads no concrete and particularized injury in fact. The only allegations of injury sound in diversion of resources. For instance, Plaintiff pleads that it "has had to divert its scarce resources in response to Defendants' unlawful actions." 2d Am. Compl. ¶ 21. It asserts that the Defendants' actions "frustrate SRWHMG's organizational mission to protect wild horses, manage them humanely, and rescue them for placement in good homes." *Id.* Plaintiff claims that because of the Defendants' alleged actions, it is "forced to purchase the Alpine Wild Horses . . . at a sometimes exorbitant premium." *Id.* ¶ 22. Plaintiff also alleges that it has expended resources monitoring horses it has purchased at auction. *See id.* ¶ 23. And if it had not had to divert such resources, Plaintiff alleges it could have spent those funds elsewhere. *Id.* ¶ 24.

These are the same types of allegations the Supreme Court rejected in *Hippocratic Medicine*. An alleged impairment of an organization's ability to achieve its mission "does not work to demonstrate standing." *Hippocratic Med.*, 602 U.S. at 394. Nor can incurring expenses to respond to government action, even "to the detriment of other spending

7

priorities," show injury in fact. *See id.* The choice to spend money would allow any organization to create its own standing; it is not enough. *Id.* at 394–95.

Plaintiff thus pleads no concrete and particularized injury in fact. This is especially so given that Plaintiff is not regulated at all by the Forest Service's notices. *See Lujan*, 504 U.S. at 561–62 (distinguishing between when "plaintiff is himself an object of the action" and when "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," for which "much more is needed"). Plaintiff lacks standing and the Court must dismiss Plaintiff's complaint for lack of subject matter jurisdiction.

B.    The Court Cannot Redress the Wrongs Plaintiff Asserts

Plaintiff also lacks standing because it cannot obtain redress through any judicial decision. To have standing, not only must a plaintiff suffer an injury in fact, but also any injury in fact must be "likely to be redressed by a favorable judicial decision." *Lexmark Int'l, Inc.*, 572 U.S. at 125. Here, there is a mismatch between the wrongs and harms asserted in the complaint and the relief Plaintiff seeks. The Court cannot remedy the wrongs Plaintiff challenges, nor can it grant the relief it seeks. For this separate reason Plaintiff lacks standing.

The redressability aspect of standing reflects the Constitution's separation of powers. *See Juliana v. United States*, 947 F.3d 1159, 1169–73 (9th Cir. 2020). "[N]ot all meritorious legal claims are redressable in federal court." *Id.* at 1170 (quoting *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018)). A plaintiff "must show that the relief they

seek is both (1) substantially likely to redress their injuries; and (2) within the district court's power to award." *Id.*

The APA allows courts to provide two types of relief: (1) "compel[ling] agency action unlawfully withheld or unreasonably delayed"; and (2) "hold[ing] unlawful and set[ting] aside agency action, findings, and conclusions" if they are, among other things, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706. The APA does not provide for money damages. *See* 5 U.S.C. § 702. Nor do federal courts have jurisdiction to issue advisory opinions. *Flast v. Cohen*, 392 U.S. 83, 95–97 (1968) ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." (internal quotation omitted)). Courts cannot give "advance expressions of legal judgment" on issues not yet pressed before them. *United States v. Fruehauf*, 365 U.S. 146, 157 (1961). And "when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Hippocratic Med.*, 602 U.S. at 381.

Here, Plaintiff still targets *last summer's* impoundment and sale of unauthorized livestock. It alleges that the Forest Service "recently removed" thirteen horses from the Apache-Sitgreaves National Forests, and it seeks declaratory and injunctive relief as to the removal and auction of those horses because of the Service's alleged violation of its notice requirements. 2d Am. Compl. ¶ 1. Plaintiff still pleads that the Forest Service "plans to sell" these horses at an auction "to commence on Wednesday, July 24, 2024." *Id.* ¶ 3. It claims that the Forest Service's alleged regulatory violations have interfered

with Plaintiff's ability to participate in the July 24, 2024 auction of the thirteen

impounded horses. *Id.* ¶¶ 3–4. Plaintiff asks the Court to "h[o]ld unlawful and set aside"

the relevant Forest Service notices. *See id.* ¶¶ 45–46.

The horses at issue, however, have been sold. And both the notice of

impoundment and notice of sale have expired. The notice of impoundment Plaintiff

challenges issued December 15, 2023. Van der Salm Decl. Ex. 1, ECF No. 3-1. It allowed

for the impoundment of unauthorized livestock "within twelve months after publication."

*Id.* It thus expired in mid-December 2024. Likewise, the notice of sale issued June 11,

2024, identified the impoundment of livestock between May 1, 2024 and December 15,

2024, and stated that the sale would take place between June 11, 2024 and December 15,

2024. Van der Salm Decl. Ex. 2, ECF No. 3-2.

As a result, there is nothing for the Court to "set aside" under the APA. Whether

the expired notices complied with Forest Service regulations is not a justiciable case or

controversy because any decision would have no real-world effect. Money damages are

unavailable, and the Court cannot set aside past and expired action. And even if it could,

setting aside the expired notices would not redress any harms Plaintiff allegedly suffered

in its ability to participate in last year's auction. Nor would setting aside the notices

provide Plaintiff any relief going forward. First, Plaintiff alleges no likelihood of future

injury, discussed below. Second, these notices do not apply to any future impoundment or

auction, so setting them aside would have no effect. The relief available under the APA

would not redress anything.

Of course, Plaintiff asks the Court "to require USFS to publish proper notices of its impoundment and sale of wild horses for each impoundment and sale, with proper descriptions of the horses." 2d Am. Compl. ¶ 15. And in its prior order, the Court wrote that it "could order Defendants to implement appropriate safeguards to ensure the humane treatment and care of horses" or it could "order the parties to formulate a decree providing for adequate notice." Order 8. But the Court cannot order the relief Plaintiff requests or the relief the Court hypothesized. Doing so would be an advisory opinion.

Plaintiff fails to identify, much less challenge, any non-expired notice of impoundment or notice of sale. There is no adversarial presentation before the Court on live issues for which a ruling would have any real-world effect. Rather, if the Court issued a decision finding that the Forest Service's past, expired notices were contrary to law, and directed the Service to take specific action in the future, the Court would be "express[ing] . . . legal judgment" on an issue not yet before it—the legality of hypothetical future Forest Service action. *See Fruehauf*, 365 U.S. at 157. Indeed, the Court would have to presume specific, *improper* future action by the Forest Service and cast judgment before such action occurs. Not only would that be inconsistent with the presumption of good faith, *27-35 Jackson Ave LLC v. United States*, 127 F.4th 1314, 1324 (Fed. Cir. 2025), but the Court lacks jurisdiction to reach out and decide future disputes that Plaintiff has not raised and that may never arise. It lacks jurisdiction to issue an advisory opinion.

1    Nor does Plaintiff allege *any* facts supporting a likelihood of future injury. Yet

2    when a plaintiff seeks prospective injunctive relief, it "must establish a sufficient

3    likelihood of future injury." *Hippocratic Med.*, 602 U.S. at 381. Plaintiff's failure to show

4    any likely future injury means Plaintiff has no standing to seek, and the Court has no

5    jurisdiction to issue, a prospective injunction as to future impoundments or sales. Such a

6    forward-looking, mandatory injunction would, in any event, be inconsistent with the

7    APA. Plaintiff bases its causes of action on APA § 706(2). *See* 2d Am. Compl. ¶¶ 45, 48.

8    
9    That provision allows courts to set aside agency action contrary to law. It does not, in the

10   face of expired, past action, provide the Court jurisdiction to order an agency to take

11   specific affirmative steps in future. Plaintiff has not brought any claim under § 706(1).

12   

13        Because the Court cannot redress the only harms Plaintiff alleges—past harms

14   relating to its ability to participate in an auction last summer based on notices that have

15   expired—the Court can grant no effective judicial relief. Plaintiff lacks standing.

16   

17                            *    *    *

18        Plaintiff's second amended complaint boils down to a sincerely concerned

19   organization requesting that the Court issue an injunction that the Forest Service comply

20   with the law. But the Forest Service is already obligated to do so; no injunction is

21   required. *Env't Prot. Info. Ctr. v. U.S. Forest Serv.*, No. C-02-2708, 2006 WL 2130905,

22   at *12 (N.D. Cal. July 28, 2006). And no citizen has standing to sue because he "believes

23   
24   that the government is acting illegally" or "based only on an asserted right to have the

25   Government act in accordance with law." *Hippocratic Med.*, 602 U.S. at 381 (internal

26   

27

quotation omitted). Article III's standing limitations do not allow citizens to "come to federal court whenever they believe that the government is acting contrary to the Constitution or other federal law." *Id.* at 382. Plaintiff has suffered no injury in fact and, in any event, the Court cannot redress past harms stemming from expired notices. Plaintiff lacks standing and the Court must dismiss the complaint.

## II.   The Court Must Dismiss Count II for Lack of Subject Matter Jurisdiction Because Plaintiff Does Not Identify Final Agency Action

Even if Plaintiff had standing, the Court would still lack subject matter jurisdiction over Count II. Plaintiff's second cause of action alleges an APA violation. The APA provides district courts with jurisdiction over final agency action. Plaintiff fails to identify final agency action. The Court thus lacks subject matter jurisdiction and must dismiss Count II for this separate reason.

"[T]he APA does not give federal courts general supervisory authority over executive agencies . . . ." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1011 (9th Cir. 2021). Rather, the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The final agency action requirement is a condition of the Court's jurisdiction. *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990); *see also S.F. Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 571 (9th Cir. 2019).

"'Agency action' is defined . . . to include 'the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("*SUWA*") (quoting 5 U.S.C.

13

§ 551(13); emphasis omitted). To be final, agency action "must mark the consummation of the agency's decisionmaking process" and "be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). Final agency action thus requires a decision-making process that results in an outcome directly affecting the allegedly aggrieved party. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) ("*ONDA*").

Courts consider whether the agency has issued a "definitive statement" of its position, whether the action "has a direct and immediate effect on the day-to-day operations of the subject party," or whether "immediate compliance . . . is expected." *Id.* (internal quotations omitted). The Ninth Circuit has also emphasized asking "whether the agency has rendered its last word on the matter." *Id.* at 984 (internal quotation omitted). In short, the APA requires a final decision that "impose[s] an obligation, den[ies] a right, or fix[es] *some* legal relationship." *See Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 419 (9th Cir. 2023) (quoting *ONDA*, 465 F.3d at 987).

In Count II, Plaintiff alleges that "[t]he Forest Service's and Lazy H's failure to comply with the Federal procurement and other regulations and laws in the conduct of its auctions" was "arbitrary and capricious agency action . . . an abuse of discretion, and . . . contrary to law." 2d Am. Compl. ¶ 48. While providing no factual detail, this allegation reveals Plaintiff is attempting to shoehorn disparate actions by federal and private actors into APA review. Yet nothing in the complaint identifies a federal

decision-making process that resulted in final agency action affecting Plaintiff's rights. For instance, Plaintiff alleges that "Lazy H often prevents Plaintiff and other horse advocates from participating in, or meaningfully participating in, its Alpine Wild Horse auctions." *Id.* ¶ 8. It also claims that "Lazy H has . . . taken Alpine Wild Horses captured pursuant to contract but failed to offer them in a public auction, as required." *Id.* Plaintiff accuses Lazy H of engaging "in self-dealing, shill bidding," and working "for personal gain at the expense of the Forest Service." *Id.* ¶ 9. Lastly, Plaintiff alleges that "Defendants have also engaged in unlawful animal cruelty during the capture, transport, loading and auction of the Alpine Wild Horses." *Id.* ¶ 11.

Conspicuously absent is any allegation about the Forest Service. But even reading Plaintiff's reference to "Defendants" in paragraph eleven broadly, nothing in Plaintiff's complaint identifies final agency action by the Forest Service. Plaintiff identifies no decision-making process, much less a decision with legal consequences for it.

Agency action under the APA is "circumscribed [and] discrete." *SUWA*, 542 U.S. at 62. It is "'an agency statement of . . . future effect designed to implement, interpret, or prescribe law or policy' (rule); 'a final disposition . . . in a matter other than rule making' (order); a 'permit . . . or other form of permission' (license); a 'prohibition . . . or . . . taking [of] other compulsory or restrictive action' (sanction); or a 'grant of money, assistance, license, authority,' etc., or 'recognition of a claim, right, immunity,' etc., or 'taking of other action on the application or petition of, and beneficial to, a person' (relief)." *Id.* (quoting 5 U.S.C. § 551(4), (6), (8), (10), (11)) (alteration and ellipses in

original). Plaintiff's allegations fit none of these definitions. The conduct of a private

party in conducting auctions, or the conduct of private parties and, allegedly, federal

employees in the transport, loading, and auction of unauthorized livestock, is neither a

rule, an order, a license, a sanction, nor relief. And rather than being circumscribed and

discrete, the actions Plaintiff appears to target are indefinite and undertaken by different

persons, at different times, in varying locations, and include several different phases.

They are not "agency action" under the APA.

    Nor, in any event, are such actions *final* agency action. As noted above, final

agency action is the consummation of an agency decision-making process from which

legal consequences or obligations flow. The actions Plaintiff appears to challenge fail that

test at every turn. To begin, Plaintiff identifies no federal decision-making process at all

as to Lazy H's conduct of its auctions or the capture, transport, and auction processes

more generally. For instance, it does not allege (nor could it) that the Forest Service

undertook a decision-making process to decide whether Lazy H should be allowed to

violate federal law and regulations. Plaintiff does not allege that the Forest Service

undertook a decision-making process to decide whether Lazy H or its employees should

treat unauthorized livestock contrary to animal cruelty laws. And because there was no

such decision-making process, Plaintiff fails to allege any consummation of that process

in the form of an actual decision that Lazy H or its employees should engage in any such

actions. It points to no "last word" of the Forest Service and fails to allege any Forest

Service final decision imposing an obligation on Plaintiff, denying a right to Plaintiff, or fixing a legal relationship with Plaintiff.

Plaintiff's claim thus fails to satisfy the APA's jurisdictional requirement. At best, Plaintiff is attempting to use the APA to have the Court exercise "general supervisory authority over" the Forest Service, something the APA does not permit. *See Whitewater Draw Nat. Res. Conservation Dist.*, 5 F.4th at 1011. Because Plaintiff has failed to identify final agency action, the Court lacks jurisdiction and must dismiss Count II.

**CONCLUSION**

For the reasons above, the Court should dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction.

Respectfully submitted this 4th day of April, 2025,

<div style="margin-left:40%">

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

*/s/ Brian R. Herman*
BRIAN R. HERMAN
Senior Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov

</div>

17