Troy B. Froderman (012717)
Rita M. Gara (037349)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 210
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
rgara@frlawgroup.com

Randall M. Weiner (CO Bar No. 23871)
Annmarie Cording (CO Bar No. 42524)
WEINER & CORDING
3100 Arapahoe Avenue, Suite 202
Boulder, Colorado 80303
(303) 440-3321
randall@randallweiner.com
annmarie@weinercording.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, | Case No. 3:24-cv-08148-JJT |
| Plaintiff, | |
| vs. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 49]** |
| U.S. Department of Agriculture, et al., | |
| Defendants. | |

i

# TABLE OF CONTENTS

PROCEDURAL POSTURE ..................................................................................... 1

INTRODUCTION ................................................................................................... 1

STANDARD OF REVIEW ...................................................................................... 2

ARGUMENT ........................................................................................................... 3

    I.    The Court Possesses Subject Matter Jurisdiction ........................................... 3

        A.    The Standing Requirement is Satisfied Because Plaintiff
                 Alleged Particularized Injuries and a Diversion of Resources
                 Related to its Core Activity of Protecting Wild Horses ...................... 3

        B.    The Court Can Redress Plaintiff's Injuries ......................................... 7

        C.    There Was Final Agency Action Under the APA; Defendants
                 Waived this 12(b)(6) Argument by Not Bringing It Up in the
                 First MTD ........................................................................................... 9

CONCLUSION ...................................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Ariz. All. for Retired Ams. v. Mayes,*
    117 F.4th 1165 (9th Cir. 2024) ................................................................5, 6, 7

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1990) ................................................................ 9

*Durning v. Citibank, N.A.,*
    950 F.2d 1419 (9th Cir. 1991).... ................................................................ 5

*Food & Drug Admin. v. All. For Hippocratic Med.,*
    602 U.S. 367 (2024) ................................................................ *passim*

*Havens Reality Corp. v. Coleman,*
    455 U.S. 363 (1981) ................................................................ 5, 6, 7

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ................................................................3

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) .. ................................................................4

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ................................................................9

*Share Our Selves v. City of Santa Ana,*
    No. 8:23-cv-00504-DOC-KES, 2024 U.S. Dist. LEXIS 216580, (C.D. Cal. 2024)......... 6

*Smith v. Pac. Props. & Dev. Corp.,*
    358 F.3d 1097 (9th Cir. 2004) ................................................................ *passim*

## Constitution, Statutes, Rules, and Other Authorities

U.S. Const., Art. III, § 2 ................................................................ 3

5 U.S.C. § 706 ................................................................10

Fed. R. Civ. P. 12 ................................................................ 2, 9, 10

Plaintiff, Salt River Wild Horse Management Group, Inc. ("SRWHMG"), respectfully submits this Response in Opposition to Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 49] and Joinder [ECF No. 50] and states as follows:

## PROCEDURAL POSTURE

On February 26, 2025, the Court addressed and dispatched the arguments of the Federal Defendants in their first Motion to Dismiss and provided Plaintiff with leave to amend its Complaint to address allegations regarding Plaintiff's diversion of resources. ECF No. 44 at 15. In its second amended complaint ("SAC"), Plaintiff added allegations describing how it diverted resources in response to Defendants' unlawful behavior, as invited by the Court. ECF No. 45, ¶¶ 21-24. In response, the Federal Defendants filed their second motion to dismiss ("2MTD") on April 4, 2025 [ECF No. 49] as joined by Defendant Rail Lazy H [ECF No. 50].

## INTRODUCTION

The Federal Defendants first argue that the Court erred by applying the standard set forth in *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) holding that Article III's injury in fact requirement can be shown by a "diversion of resources in response to" the frustration of the organization's purpose. Defendants erroneously state that *Smith* was overturned. It was not. More recent caselaw, including last year's *Hippocratic Medicine* case, hold that a diversion of resources sufficient to demonstrate an injury in fact should be in response to an injury to the organization's *core activities*, but there is no doubt that such a diversion is still sufficient to demonstrate standing. That is precisely the case

here, where the exclusion of Plaintiff from horse auctions (through improper notice and unlawful exclusionary practices) prevent it from fulfilling its "core mission -- rescuing and rehoming wild horses." Order [ECF No. 44] at 6.

Defendants also make two new arguments wholly unrelated to the diversion of resources allegations in the SAC (and thus go beyond the scope of an acceptable second motion to dismiss). They argue that Plaintiff does not have a current injury and that there was no final agency action. Even a cursory review of the SAC shows that Plaintiff alleges *continuing* injuries, not just those related to last summer's sales. And although Defendants now maintain there was no allegation of *final* agency action, an argument suspiciously like its previous argument that there was no Federal action, that is a Fed. R. Civ. P. 12(b)(6) argument that has been waived under Fed. R. Civ. P. 12(g)(2). It is not supportable, in any event, because allegations of final agency can be gleaned from Plaintiff's allegations concerning the inadequacy of the notice of impoundment and notice of sale, its exclusion from specific auctions, and the alleged specific incidents of animal cruelty.

In short, this 2MTD should be denied and Plaintiff should be given its "opportunity to fully litigate the questions at issue here on a full record, and [to] prevail once the [livestock] regulation is fully litigated." ECF No. 25 at 3.

## STANDARD OF REVIEW

The Court has previously provided the standard of review for a motion to dismiss under Rule 12(b)(1) and (6), *see* ECF No. 44 at 3-4, which Plaintiff adopts and incorporates herein.

1

**ARGUMENT**

2

**I.     The Court Possesses Subject Matter Jurisdiction**

3

4

      **A.     <u>The Standing Requirement is Satisfied Because Plaintiff Alleged
Particularized Injuries and a Diversion of Resources Related to its Core
Activity of Protecting Wild Horses</u>**

5

6

      In its Order allowing Plaintiff to file is SAC, the Court stated that "an organization

7

may satisfy Article III's injury in fact requirement if it can demonstrate: (1) frustration of its

8

organizational mission; and (2) diversion of its resources in response to that frustration of

9

10

purpose." Order at [ECF No. 44] at 5 (citing *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d

11

1097, 1105 (9th Cir. 2004)). The Court found that Plaintiff's organizational mission had

12

been frustrated by Defendant's alleged conduct. Order [ECF No. 44] at 5-7.

13

      The Court also gave Plaintiff the opportunity to allege a diversion of resources, and

14

15

Plaintiff amended it complaint to do so. SAC, ¶¶ 21-24. However, Defendants now argue

16

that a high-profile case from last year--*Food & Drug Admin. v. All. For Hippocratic Med.*,

17

602 U.S. 367, 393–94 (2024)*,* the mifepristone abortion drug case--makes *Smith* irrelevant

18

to the diversion of resources analysis*.* Actually, *Smith* has never been overturned, has been

19

20

cited 20 times in relation to the diversion of resources, including numerous cases this year.

21

The cases cited by Defendants uphold the proposition that a diversion of resources should

22

be in response to an injury to the organization's *core activities*, and should not rest "on

23

vague claims that a policy hampers their mission." *Hippocratic Medicine* at 1170.

24

      This proposition is, essentially, the same for *all* elements of standing. An alleged

25

26

injury must be sufficiently "particularized" to undergird a plaintiff's claims so as to insure it

27

has a stake in the litigation's outcome sufficient to confer jurisdiction. *Lexmark Int'l, Inc. v.*

28

*Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)) ("a plaintiff "must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.").

*Hippocratic Medicine* did not make new law or overturn *Smith*. It merely analyzed the pro-life medical associations' argument that it incurred costs in advocating against the relaxation of mifepristone regulations and found them insufficiently related to the core activities of those organizations to demonstrate an injury in fact. 602 U.S. at 394. The Supreme Court recognized that "the plaintiffs do not prescribe or use mifepristone. And FDA is not requiring them to do or refrain from doing anything." *Id.* at 373. The costs incurred by the plaintiff medical associations who did not prescribe, use or have anything to do with the abortion drug (except "want[ing] FDA to make mifepristone more difficult for other doctors to prescribe and for pregnant women to obtain," *id.*) contrast sharply with Plaintiff's particularized injuries whose very currency, wild horses, has been shut off by Defendants' actions in excluding it from auctions. Indeed, "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *Hippocratic Medicine* at 382.[1]

---

[1] "By contrast, when (as here) a plaintiff challenges the government's "unlawful regulation (or lack of regulation) of *someone else*," "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)).

The medical associations in *Hippocratic Medicine* also maintained that they had "incur[ed] costs to oppose FDA's actions," primarily by drafting citizen petitions to the FDA and through "public advocacy" to discourage use of the abortion drug. *Id.* at 394. The medical associations compared their costs to those incurred in *Havens Reality Corp. v. Coleman,* 455 U.S. 363, 368, 379 (1981), where the defendant realty company's racial steering "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income home-seekers." This "directly affected and interfered with [the plaintiff fair housing group's] core business activities." *Hippocratic Medicine* at 395. The Supreme Court rejected the comparison of the medical associations' costs with those incurred by the *Havens'* group, because the FDA's relaxation of mifepristone regulation was not found to have "imposed any [] impediment to the medical associations' advocacy businesses." *Id.* at 394. By contrast, here, Plaintiff's "core business activities," protecting wild horses, have been impeded by Defendants' impediments, just as in *Havens*. The costs they incurred were not informational; they were specific and personal to the organization's mission.

Defendants also reference a *vacated* Ninth Circuit case, *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1169–70 (9th Cir. 2024), *vacated for rehearing en banc*, No. 22-16490, 2025 WL 843314 (9th Cir. Mar. 18, 2025). Defendants acknowledge the case was vacated but argue "that does not change what that court recognized," which is nonsense. 2d Motion at 6. A vacated case does not serve as precedent. *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 (9th Cir. 1991) ("Although the Authority contends that the decision was 'vacated on other grounds,' we find that contention curious. A decision may be reversed on

other grounds, but a decision that has been vacated has no precedential authority whatsoever").

Even if *Ariz. All.* had precedential value, that case, just as in *Hippocratic Medicine*, acknowledged that organizational standing exists whenever "a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the Plaintiff's response to that governmental action." *Id.* at 1170 (emphasis in original). By alleging that Defendants were "deliberately preventing SRWHMG from participating in those Forest Service wild horse auctions," SAC, ¶ 21, Plaintiff alleged a particularized injury to its pre-existing "core activities" apart from its response to Defendants' actions. *See also* 2d Am. Compl, ¶¶ 22-23 (describing other harms to its "core mission -- rescuing and rehoming wild horses." Order [ECF No. 44] at 6.

In a 2024 decision, a California court applied *Havens* rather than *Hippocratic Med* in analyzing a change in zoning laws that caused a diversion of resources. The court found that where plaintiffs "lost the right to purchase, consequently harming their project plans and resulting in a loss of significant funds; this concrete injury bypasses the Supreme Court's concerns in *Hippocratic Medicine*." *Share Our Selves v. City of Santa Ana*, No. 8:23-cv-00504-DOC-KES, 2024 U.S. Dist. LEXIS 216580, at *15 (C.D. Cal. 2024). The court cited *Smith* to emphasize that "the fact that Plaintiff had to divert 50% of the costs of the failed acquisition from their mission demonstrates that their resources were redirected in a way that emerged from the alleged injurious behavior of Defendant, thereby establishing organizational standing." *Id.* at 16.

This Court previously recognized Plaintiff's core activities: "[o]ne of the primary ways Plaintiff seeks to protect these horses is by purchasing them at auctions organized by Defendants." ECF No. 44 at 2. It also recognized that Plaintiff's "organizational mission— to protect wild horses, manage them humanely, and rescue them for placement in good homes—has been frustrated by Defendants' actions in removing the horses from the forest without proper notice." *Id.* at 5-6. It further recognized that Plaintiff's mission of protecting wild horses extended to protecting them from violations of federal animal welfare laws. *Id.* at 14. As in *Havens* and *Smith*, all of these "core" activities have been injured by Defendants' actions causing it to divert resources, as alleged in its 2d Am. Compl. (EDF No. 45), ¶¶ 21-23.

In short, the U.S. Supreme Court rulings in *Smith*, *Havens* and *Hippocratic Medicine*, and even the vacated Ninth Circuit *Ariz. All.* decision, fully support Plaintiff's standing where it has alleged a particularized injury to its core activities, and a resulting diversion of resources.

## B. **The Court Can Redress Plaintiff's Injuries**

The Federal Defendants next argue that Plaintiff solely "targets *last summer's* impoundment and sale of unauthorized livestock," suggesting that Plaintiff's harms are not redressable. Def's Second Motion, ECF No. 49 at 13. Defendants misread the Second Amended Complaint. Plaintiff has alleged that its injuries continue far beyond a single sale last summer:

> These regulatory violations *prevent* and have previously prevented Plaintiff and its members and affiliates from meaningfully participating in the Cleburne Auction and other auctions. Plaintiff has participated in every past Alpine wild

7

horse auction it was admitted to in order to purchase such horses and find them good homes.

SAC, ¶ 4 (emphasis added).

> This action is brought, for among other purposes, *to require* USFS to publish proper notices of its impoundment and sale of wild horses for each impoundment and sale, with proper descriptions of the horses.

SAC, ¶ 15 (emphasis added).

> It is also brought to restrain and enjoin Defendants from (1) taking any action that improperly prevents Plaintiff from participating in USFS and/or Lazy H auctions and/or (2) conducting auctions without complying with "full and open competition" and "maximum return at minimum cost" requirements and/or (3) violating animal cruelty requirements and laws as described herein.

SAC, ¶ 15. And finally:

> Defendants' actions have frustrated (and unless proper notice and participation occurs in future auctions) *will continue to frustrate* SRWHMG's organizational mission to protect wild horses, manage them humanely, and rescue them for placement in good homes.

SAC, ¶ 21 (emphasis added).

Thus, Plaintiff alleges continuing wrongs, and the facts on the ground show that the alleged harms are continuing. For instance, the Federal Defendant's current website states "[t]he Forest Service *continues to plan* for the necessary removal of a number of unauthorized livestock, commonly referred to as feral horses, on the Apache National Forest." **Exhibit 1** (emphasis added). In a March, 2025 update on this same webpage, the Forest Service acknowledges that "we will continue to make available for public sale small groups of feral horses to qualified buyers." *Id.* The Federal Defendants have not terminated this horse removal program. Rather, they are engaged in an active and aggressive plan to rid the Apache Forest of all its Alpine horses – without fair participation by Plaintiff.

### C. **There Was Final Agency Action Under the APA; Defendants Waived this 12(b)(6) Argument by Not Bringing It Up in the First MTD**

The Federal Defendants' final argument is that, for purposes of Count II, Plaintiff has not alleged final agency action under the APA. Motion at 17. This is similar to the argument it made in their prior motion to dismiss -- that Plaintiff "does not identify the laws or regulations … the federal actions allegedly violate." Motion to Dismiss (ECF No. 37 at 19).

At the outset, this is a 12(b)(6) argument, not the 12(b)(1) subject matter jurisdiction argument that Defendants have speciously couched it.[2] *See* Motion at 13. Indeed, in addressing Rule 12(b)(6) in its prior Order, the Court restated the established principle that:

> Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Order [ECF No. 44] at 4. That is essentially the Federal Defendants' argument here, that Plaintiff has not made "sufficient factual allegations" to support its APA theory in Count II.

Defendants should have raised this argument in their first motion to dismiss (ECF No. 37) along with the numerous other arguments (5) they made at the time, and they do not get a second chance to make it. *See* Fed. R. Civ. P. 12(g)(2) (a party making a motion "must not make another motion under this rule raising a defense or objection that was available to

---

[2] In its first motion to dismiss, the Federal Defendants did not mask the fact that its APA challenge was a Rule 12(b)(6), not a standing, argument: "Count II Fails to State a Claim on Which Relief Can Be Granted." ECF No. 37 at 19.

the party but omitted from its earlier motion.") Moreover, the Court allowed Plaintiff to amend its complaint *solely* to cure the defect of "not adequately alleg[ing] a diversion of its resources." ECF No 44 at 15. Defendants should be similarly limited to that subject.

In any event, the Court rejected Defendants' previous APA argument, finding that "at this stage, the Court must accept Plaintiff's well-pleaded factual allegations as true and determine only whether they plausibly state a claim for relief." ECF No. 44 at 15. The Court found that Count II "sufficiently alleged a claim under 5 U.S.C. § 706(2)(A) and (D). *Id.*

That is the case here. Plaintiff has alleged "final" agency action, beginning with the alleged improper notice of impoundment and the improper notice of sale. SAC ¶¶ 36, 38. *See also* SAC ¶ 3-4 (Federal Defendants' "regulatory violations [on July 24, 2024 and beyond] prevent and have previously prevented Plaintiff and its members and affiliates from meaningfully participating in the Cleburne Auction and other auctions."); ¶ 11 ("Defendants have also engaged in unlawful animal cruelty during the capture, transport, loading and auction of the Alpine Wild Horses."), ¶ 16 (case "brought to enjoin Defendants from … conducting auctions without complying with 'full and open competition'"). All of these are final agency actions.

Accordingly, Defendants' APA argument should not be considered under either Fed. R. Civ. P. 12(g)(2) or because it goes beyond the bounds of the Court's Order [ECF No. 44]. This argument is, in any event, without merit.

1

**CONCLUSION**

2

3

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the

Federal Defendants' Second Motion to Dismiss and Joinder.

4

5

RESPECTFULLY SUBMITTED this 2nd day of May, 2025.

6

7

WEINER & CORDING

8

By: /s/ Randall M. Weiner, Esq.
    Randall M. Weiner, Esq.
    Annmarie Cording, Esq.

9

10

11

FR LAW GROUP PLLC

12

13

By:_____

14

    Troy B. Froderman, Esq.
    Rita M. Gara, Esq.

15

16

*Attorneys for Plaintiff*

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 2, 2025, I electronically transmitted the

foregoing document (Plaintiff's Response in Opposition to Federal Defendants' Motion to

Dismiss Plaintiff's Second Amended Complaint [ECF NO. 49]) to the Clerk's Office using

the ECF System for filing and caused a copy to be electronically transmitted to all parties

of record.


 /s/ *Tamber Diefenbach*