ADAM R.F. GUSTAFSON, Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

BRIAN R. HERMAN (DC Bar No. 1044672)
Senior Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov

*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, | Case No.: 3:24-cv-08148-JJT |
| Plaintiff, | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT [ECF NO. 45]** |
| v. | |
| U.S. Department of Agriculture, et al., | |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

    I.    The Diversion of Resources in Response to Government Action Does Not Create Standing ................................................................................. 1

    II.    Plaintiff Also Lacks Standing Because the Court Cannot Redress Plaintiff's Alleged Injuries ........................................................................ 7

    III.    The Lack of Final Agency Action is a Jurisdictional Defect ........................ 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006)................................................................................................ 10

*Ariz. All. for Retired Ams. v. Mayes*,
    117 F.4th 1165 (9th Cir. 2024)............................................................................. 2, 4

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)......................................................................................... 2, 4, 5

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).............................................................................................. 2, 3

*Miller v. Gammie*,
    335 F.3d 889 (9th Cir. 2003) ..................................................................................... 4

*S.F. Herring Assoc. v. Dep't of Interior*,
    946 F.3d 564 (9th Cir. 2019) ................................................................................... 10

*Smith v. Pacific Properties and Development Corp.*,
    358 F.3d 1097 (9th Cir. 2004) ................................................................................... 4

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009)............................................................................................. 5, 6

*Ukiah Valley Med. Ctr. v. FTC*,
    911 F.2d 261 (9th Cir. 1990) ................................................................................... 10

**Statutes**

5 U.S.C. § 704 ............................................................................................................ 10

5 U.S.C. § 706(2)........................................................................................................... 8

**Rules**

Fed. R. Civ. P. 12(h)(3) ............................................................................................... 10

# INTRODUCTION

The Federal Defendants have moved to dismiss Plaintiff's second amended complaint for lack of jurisdiction. The theory of standing on which Plaintiff amended its complaint is no longer good law: a diversion of resources in response to government action is not injury in fact. Plaintiff responds not by identifying direct harms sufficient for injury in fact, but by asserting that some diversions of resources can show standing. *Hippocratic Medicine*, however, says otherwise. Plaintiff also lacks standing because the Court cannot redress its alleged harms. Plaintiff responds that it has pleaded ongoing injury. But it alleges no live decision the Court can set aside under the APA, and the APA provides no relief for any harms from last year's auction. Finally, the Federal Defendants moved to dismiss Count II because Plaintiff alleged no final agency action. Plaintiff's retort is that this argument is a 12(b)(6) argument that the Federal Defendants have waived. But that's wrong under the text of the APA and Ninth Circuit precedent. So as discussed below and set out in the motion to dismiss, the Court lacks subject matter jurisdiction and must dismiss Plaintiff's complaint.

# ARGUMENT

### I. The Diversion of Resources in Response to Government Action Does Not Create Standing

The diversion of resources in response to government action does not create a sufficient injury in fact for standing. Because that is all Plaintiff alleges, it lacks standing. In response to the Federal Defendants' motion to dismiss on this ground, Plaintiff appears to misread *Hippocratic Medicine* to argue that a diversion of resources creates standing if

1

the diversion relates to core business activities. That argument deviates from the holding of *Hippocratic Medicine*, however. The Court lacks subject matter jurisdiction.

Plaintiff argues that under *Hippocratic Medicine*, a diversion of resources is enough for standing if it relates "to the organization's core activities." Pl.'s Resp. in Opp'n to Fed. Defs.' Mot. to Dismiss Pl.'s 2d Am. Compl. 3, ECF No. 51 (emphasis omitted) ("Pl.'s Resp.").[1] That is incorrect. The Supreme Court rejected the assertion that a diversion of resources in response to government action can support standing. In *Hippocratic Medicine*, the medical associations argued that they were harmed because they "incurr[ed] costs to oppose FDA's action." *Hippocratic Med.*, 602 U.S. at 394. They claimed that they took specific steps, with specific costs to the organizations, in response to the FDA's actions. *Id.* But that did not suffice. "[A]n organization that has not suffered a concrete injury *caused by a defendant's action* cannot spend its way into standing . . . ." *Id.* (emphasis added). The Court also responded to the medical associations' reliance on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), for the argument that "standing exists when an organization diverts its resources in response to a defendant's actions." *Id.*

---

[1] Plaintiff purports to quote *Hippocratic Medicine* as saying that diversion of resources "should not rest 'on vague claims that a policy hampers their mission.'" Pl.'s Resp. 3 (purporting to quote *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 1170 (2024)). But there is no page 1170 in the Court's opinion, nor does the decision contain the phrase "on vague claims that a policy hampers their mission." That page and language appear in the Ninth Circuit's *Arizona Alliance* decision. *Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024), *vacated for reh'g en banc*, 130 F.4th 1177 (9th Cir. 2025).

2

at 395. The Court was plain: "That is incorrect." *Id.* Spending money in response to government action does not create standing. *See id.*

Plaintiff's reference to "core business activities" does not help it. The Court did *not* conclude that the plaintiff in *Havens* had standing because any diversion of resources related to core business activities. *See id.* Rather, the Court observed that the plaintiff in *Havens* had standing because the defendant's "actions directly affected and interfered with [the plaintiff's] core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer." *Id.* The plaintiff there had standing because the defendant's provision of false information "impaired [the plaintiff's] ability to provide counseling and referral services," not because the plaintiff then chose to divert resources to respond to that interference. *Id.* (quoting *Havens Realty Corp.*, 455 U.S. at 379).

The Supreme Court's holding is fatal to Plaintiff's second amended complaint. The harms Plaintiff pleads are responsive: decisions it made to divert resources following the Forest Service's notices. *See* Fed. Defs.' Mot. to Dismiss Pl.'s 2d Am. Compl. 7, ECF No. 49 ("Defs.' Mot."). Plaintiff alleges, for instance, that it "has had to divert its scarce resources *in response to Defendants' unlawful actions*." 2d Am. Compl. ¶ 21, ECF No. 45 (emphasis added); *see also id.* ¶ 24 (alleging that if Plaintiff had "not had to divert its resources *in response to Defendants' unlawful actions*" it could have spent those funds elsewhere (emphasis added)). That necessarily means its alleged harms arise not from the underlying actions themselves, but from Plaintiff's decisions to divert resources in

3

response. *See, e.g., id.* ¶¶ 22–23 (discussing payments to third parties to purchase horses after auctions or payments to third parties to bid at auctions). That is not enough.[2]

To have standing, a plaintiff itself must suffer a concrete and particularized injury in fact. *Hippocratic Med.*, 602 U.S. at 381, 393–94. Plaintiff pleads none as to the Forest Service's notices. While in its response Plaintiff refers generally to "Defendants' actions in excluding it from auctions," Pl.'s Resp. 4, its complaint does not support that claim. The only mention in the complaint of a specific instance in which Plaintiff was excluded from any auction is a single instance in which Rail Lazy H excluded Plaintiff from an online auction. *See* 2d Am. Compl. ¶ 22. That is neither federal action nor does it relate to the in-person Cleburne auction in July 2024 at the heart of this case. *See id.* Plaintiff never pleads, nor could it, that the Forest Service's notices of impoundment and sale

---

[2] The Ninth Circuit's vacated panel opinion in *Arizona Alliance* supports this conclusion: "*Hippocratic Medicine* clarified that the distinctive theory of organizational standing reflected in *Havens Realty* extends *only* to cases in which an organization can show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action." *Ariz. All.*, 117 F.4th at 1170. Contrary to Plaintiff's arguments, the Federal Defendants never argued that despite being vacated, the panel opinion is still binding precedent. *See* Pl.'s Resp. 5. Rather, the decision may serve as persuasive authority. In any event, the Supreme Court in *Hippocratic Medicine* was clear. The Ninth Circuit, even sitting en banc, cannot overrule Supreme Court precedent, which is also binding on this Court. For this reason, *Smith v. Pacific Properties and Development Corporation* also cannot form the basis of any holding that Plaintiff has standing. In *Smith*, the Ninth Circuit expressly relied on *Havens* for a two-part standing test looking at frustration of mission and diversion of resources. 358 F.3d 1097, 1105–06 (9th Cir. 2004). But in *Hippocratic Medicine*, the Supreme Court said it was "incorrect" that an organization has standing when it diverts resources in responses to a defendant's actions. 602 U.S. at 395. *Smith* can no longer be applied to the contrary. *See Miller v. Gammie*, 335 F.3d 889, 892–93, 899–900 (9th Cir. 2003) (en banc) (lower courts bound by intervening higher authority when prior appellate authority is "clearly irreconcilable").

4

exclude Plaintiff (or anyone else for that matter) from any auction. The notices do no such thing. In fact, they never mention Plaintiff at all. They merely shared information about the impoundment and sale. While Plaintiff asserts those notices were insufficient, Plaintiff is not the object of or regulated by those notices. It suffered no direct harm from them.

At the very least, Plaintiff lacks standing to seek prospective relief because Plaintiff pleads no likelihood of imminent harm. "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Hippocratic Med.*, 602 U.S. at 381; *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (a plaintiff "bears the burden of showing that he has standing for each type of relief sought"). Requiring an imminent injury "assures that there is a real need to exercise the power of judicial review" and ensures the "properly limited . . . role of the courts in a democratic society." *Summers*, 555 U.S. at 493 (internal quotations and citation omitted). Plaintiff asks the Court for a prospective injunction but shows no likelihood of an imminent injury. Both the notice of impoundment and notice of sale have expired. The horses at issue have sold. And despite the opportunity to amend, Plaintiff alleges no facts about subsequent notices of impoundment or sale and does not complain about any notice for any upcoming auction. Indeed, Plaintiff's attempt to rely on the Forest Service's website for statements about future planning only makes the point. *See* Pl.'s Resp. 8. Despite those statements, Plaintiff makes no allegations about future

5

impoundments or sales. Nothing in Plaintiff's complaint shows that it is reasonably likely Plaintiff will suffer an imminent injury, so it lacks standing to seek an injunction.

      The Supreme Court's decision in *Summers* is instructive. There, a group of plaintiffs challenged the Forest Service's approval of a timber salvage sale without notice and comment and without an administrative appeal process. *Summers*, 555 U.S. at 491. The plaintiffs alleged that the Service failed to comply with regulations requiring both of those. *Id.* The parties settled their dispute about the specific project at issue, but the plaintiffs continued to press a more general challenge to the Service's regulations. *Id.* at 491–92. The Court held the plaintiffs lacked standing to do so. *See id.* at 492–97, 500–01. Because the regulations required nothing of the plaintiffs nor forbid any action on their part, they needed to show how application of the regulations inflicted on them a sufficient injury in fact. *Id.* at 493–94. They failed to do so because the main declaration on which the plaintiffs relied supported an injury in fact only as to the past project, a resolved dispute. *Id.* at 494. The Court knew "of no precedent for the proposition that when a plaintiff has sued to challenge the lawfulness of certain action . . . but has settled that suit, he retains standing to challenge the basis for that action (here, the regulation in the abstract), apart from any concrete application that threatens imminent harm to his interests." *Id.* Similarly, the Court found another affidavit insufficient because, among other things, "it relate[d] to past injury rather than imminent future injury that is sought to be enjoined." *Id.* at 495.

Plaintiff's assertions are just like those of the plaintiffs in *Summers*. As there, the Service's unauthorized livestock regulations require nothing of Plaintiff nor forbid Plaintiff from taking any action. Like the dispute over the timber salvage sale, here the main dispute has passed—the July 2024 auction has come and gone and the horses have been sold. Plaintiff lacks standing to continue challenging the Forest Service's regulations in the abstract, without any pending notices or pending auctions. Any alleged past injury does not suffice for prospective injunctive relief; imminent future injury is necessary. Plaintiff's conclusory assertion that the "Defendants' actions . . . will continue to frustrate [Plaintiff's] organizational mission," Pl.'s Resp. 8 (quoting 2d Am. Compl. ¶ 21) (emphasis omitted), is not enough. Plaintiff pleads no reasonably likely imminent injury and lacks standing to seek prospective relief.

In short, Plaintiff pleads no sufficient injury in fact. Its second amended complaint identifies only diversion of resources in response to government action. Plaintiff does not argue otherwise but disputes the holding of *Hippocratic Medicine*. The Supreme Court rejected such a theory for organizational standing, however. And Plaintiff alleges no reasonably likely, imminent injury so it cannot seek a prospective injunction. The Court should dismiss Plaintiff's second amended complaint.

II. **Plaintiff Also Lacks Standing Because the Court Cannot Redress Plaintiff's Alleged Injuries**

Standing requires not only an injury in fact, but also the possibility for judicial relief. A court must be able to redress the harms a plaintiff alleges. Here, even if Plaintiff

7

has alleged sufficient injury, the Court cannot redress its harms. For this reason, too, Plaintiff lacks standing. Plaintiff's response fails to show otherwise.

Plaintiff's response consists primarily of the assertion "that its injuries continue far beyond a single sale last summer." Pl.'s Resp. 7. It quotes four portions of its second amended complaint that it believes show ongoing harm. *See id.* at 7–8. None do. As discussed above, Plaintiff alleges no ongoing federal action and no reasonable likelihood of imminent injury. Its quotes are not to the contrary. What's more, paragraph four of Plaintiff's second amended complaint states only that the alleged "regulatory violations prevent and have previously prevented Plaintiff . . . from meaningfully participating in the Cleburne Auction and other auctions." 2d Am. Compl. ¶ 4. And the regulatory violations Plaintiff refers to are its claims about the expired notices of impoundment and sale. *See id.* ¶¶ 2–4. Also, the reference to the Cleburne Auction reinforces that Plaintiff's complaints are about last year's auction. This allegation fails to support redressability because Plaintiff identifies no specific future auction that it cannot access, nor does it identify any federal action preventing such access that the Court could set aside under the APA. Nor can the Court rectify any harms Plaintiff allegedly suffered because of last year's notices. The relief available under the APA is the setting aside of the challenged action. *See* 5 U.S.C. § 706(2). Setting aside the expired notices will remedy nothing. They will not allow Plaintiff to have easier access to last summer's auction. And setting aside expired notices will not give Plaintiff access to (unspecified) future auctions because they do not apply to any.

At bottom, Plaintiff's response fails to overcome the disconnect in its complaint between the harms alleged, relief sought, and the current situation. The crux of Plaintiff's complaint is that the notices the Service issued last year infringed on Plaintiff's ability to participate in the Service's auction. But because that auction has passed and because the notices have expired, the APA provides Plaintiff with no effective relief. The Court cannot set aside past action, nor would doing so remedy the past harms Plaintiff alleges from being unable to timely access the auction. The APA also does not provide for money damages. And declaring the notices "inadequate" or contrary to law, *see* 2d Am. Compl. at 11, would be an improper advisory opinion because the notices are no longer in effect and there is no live adversarial dispute before the Court. Lastly, because Plaintiff alleges no ongoing federal action and no reasonably likely imminent injury, granting prospective relief would remedy no injury in fact. Granting prospective relief would not, in other words, remedy Plaintiff's alleged harms about last year's auction, and it would remedy no ongoing or future injury because Plaintiff fails to plead one. It lacks standing.

**III.     The Lack of Final Agency Action is a Jurisdictional Defect**

The Federal Defendants also moved to dismiss Count II for lack of subject matter jurisdiction because Plaintiff failed to identify final agency action. Plaintiff responds by claiming that the "Defendants have speciously couched" the argument as jurisdictional, rather than as a test of the merits under Rule 12(b)(6). Pl.'s Resp. 9. Plaintiff is wrong. The "final agency action" requirement is a condition of the Court's jurisdiction, a point the Federal Defendants made in their motion with citation to precedent. Defs.' Mot. 13.

Begin with the statute's text. As relevant here, only "final agency action" is "subject to judicial review." 5 U.S.C. § 704. This means that the judicial power—jurisdiction—extends only to final agency action. Congress has granted the district courts no jurisdiction under the APA to review anything other than "final agency action."

The Ninth Circuit has been clear: "the final agency action requirement has been treated as jurisdictional." *S.F. Herring Assoc. v. Dep't of Interior*, 946 F.3d 564, 571 (9th Cir. 2019). There, the court discussed a prior related case in which the federal defendants never raised the issue of final agency action before the district court. *Id.* On appeal, the federal defendants argued for the first time that there was no final agency action and that the district court lacked subject matter jurisdiction. *Id.* Rather than finding any waiver, the Ninth Circuit agreed and vacated the district court's judgment, remanding for dismissal for lack of subject matter jurisdiction. *Id.*; *see also Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990). Plaintiff's claim that the Federal Defendants have "speciously couched" the argument as jurisdictional is incorrect. The argument is not waived, and, in any event, courts must always assure themselves of their jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see also* Fed. R. Civ. P. 12(h)(3).

Plaintiff offers no other meaningful response. All it can muster is that it "has alleged 'final' agency action, beginning with the alleged improper notice of impoundment and the improper notice of sale." Pl.'s Resp. 10. But Plaintiff's claims about improper notices are Count I, not Count II. The Federal Defendants moved to dismiss Count II for lack of final agency action. As to that count, Plaintiff does not

10

respond to any of the Federal Defendants' arguments. It does not, for example, identify any allegations of a decision-making process or explain how the various actions it incorporates into Count II reflect the consummation of any decision-making process. So too Plaintiff fails to engage with the definition of final agency action under the APA. Plaintiff all but concedes the argument. Because Plaintiff identifies no final agency action underlying Count II, the Court lacks subject matter jurisdiction and must dismiss it.

## CONCLUSION

For the reasons discussed in the Federal Defendants' Motion to Dismiss and above, the Court should dismiss Plaintiff's second amended complaint for lack of subject matter jurisdiction.

Respectfully submitted this 19th day of May, 2025,

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General

 /s/Brian R. Herman
BRIAN R. HERMAN
Senior Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 305-0422
Email: brian.herman@usdoj.gov