WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>United States Department of Agriculture, *et al.*,<br><br>  Defendants. | No. CV-24-08148-PCT-JJT<br><br>**ORDER** |

At issue is the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 49, MTD), which was joined by Defendant Rail Lazy H Contracting and Consulting LLC ("Rail") (Doc. 50), and to which Plaintiff file a Response (Doc. 51, Resp.) and the Federal Defendants file a Reply (Doc. 52, Reply), which was again joined by Rail (Doc. 53). The Court finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f).

**I.    BACKGROUND**

This case involves a dispute between Plaintiff Salt River Wild Horse Management Group ("SRWHMG") and Defendants the U.S. Department of Agriculture ("USDA") and its acting Secretary, the U.S. Forest Service ("USFS"), the Apache-Sitgreaves National Forest Supervisor, and the Regional Forester for the Southwestern Region (collectively, "Federal Defendants") as well as Defendant Rail. Federal Defendants are together responsible for the management, impoundment, and sale of horses from the Apache-

1  Sitgreaves National Forest in Arizona, and Rail is under contract with the USFS to capture,
2  impound, and sell horses. (Doc. 45, Second Am. Compl. ("SAC") ¶ 28.)

3  The Court laid out the pertinent facts of this case in its previous Order granting in
4  part and denying in part Federal Defendants' Motion to Dismiss Plaintiff's First Amended
5  Complaint (Doc. 44, Order). The Court found that Plaintiff had not sufficiently alleged a
6  diversion of resources in response to a frustration of its organization's mission to
7  demonstrate the injury in fact necessary for Article III standing. (Order at 7.) The Court
8  gave Plaintiff leave to amend its First Amended Complaint ("FAC") to cure this deficiency.
9  (*Id.*)

10  On March 12, 2025, Plaintiff filed its SAC bringing the following claims: (1) an
11  Administrative Procedure Act ("APA") violation under 5 U.S.C. § 706(2)(A), (D) for
12  failure to comply with the notice requirements of 36 C.F.R. § 262.10; and (2) an APA
13  violation under 5 U.S.C. § 706(2)(A), (D) for failure to comply with regulations and laws
14  in conducting auctions. (SAC ¶¶ 44–49.)

15  Defendants filed the present Motion to Dismiss to argue the Court lacks subject
16  matter jurisdiction over Plaintiff's claims based on Article III standing because Plaintiff
17  has not suffered an injury in fact and the Court cannot redress the wrongs Plaintiff asserts.
18  (MTD at 3.) Defendants also contend that the Court lacks subject matter jurisdiction over
19  Count II of the SAC because Plaintiff fails to identify a final agency action as required to
20  state an APA claim in this context. (MTD at 13.) Defendants seek dismissal of all claims
21  under Federal Rule of Civil Procedure 12(b)(1).

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

"A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may attack either the allegations of the complaint as insufficient to confer upon the court subject matter jurisdiction, or the existence of subject matter jurisdiction in fact." *Renteria v. United States*, 452 F. Supp. 2d 910, 919 (D. Ariz. 2006) (citing *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). "Where the jurisdictional

1  issue is separable from the merits of the case, the [court] may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733; *see also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("With a 12(b)(1) motion, a court may weigh the evidence to determine whether it has jurisdiction."). The burden of proof is on the party asserting jurisdiction to show that the court has subject matter jurisdiction. *See Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). "[B]ecause it involves a court's power to hear a case," subject matter jurisdiction "can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

**B.     Rule 12(b)(6)**

Some of the relief Defendants now seek falls under Rule 12(b)(6), which is designed to "test[] the legal sufficiency of a claim," *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

. . .

1  "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed
2  factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief
3  requires more than labels and conclusions, and a formulaic recitation of the elements of a
4  cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted).
5  Legal conclusions couched as factual allegations are not entitled to the assumption of truth
6  and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*,
7  556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a
8  savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote
9  and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236
10 (1974)).

**III.   ANALYSIS**

    **A.   Standing**

To bring a justiciable lawsuit into federal court, Article III of the Constitution requires that a plaintiff have "the core component of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires the plaintiffs to show that they suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In the complaint, the plaintiffs must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 821 (9th Cir. 2002). If the plaintiffs fail to allege such facts, the Court should dismiss the complaint. *See, e.g.*, *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Here, Defendants once again mount a facial attack on the first prong of the Article III inquiry—whether Plaintiff's SAC adequately alleges a concrete and particularized injury sufficient to establish standing. (MTD at 3–8.) Defendants also argue that the Court cannot redress the wrongs Plaintiff asserts in the SAC, and Plaintiff thus fails to satisfy the third prong of the standing inquiry as well. (MTD at 8–13.)

…

### 1. Injury in Fact

Regarding the first prong, an organization may satisfy Article III's injury in fact requirement if it can demonstrate that the defendant's "actions directly affected and interfered with [the organization's] core business activities." *F.D.A. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). In the context of an organization, akin to an injury in fact to an individual, this effect or interference can be measured by financial impact on the organization, that is, money lost within the organization's core business. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *cf. Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011) (holding the individual plaintiffs' claims that, "as a result of defendants' actions, they paid more for their homes," were "actual and concrete economic injuries," a "quintessential injury-in-fact" sufficient to demonstrate Article III standing). In considering a motion to dismiss for lack of standing at the pleading stage, the court accepts all allegations as true and interprets them in the plaintiff's favor. *We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1089 (D. Ariz. 2011). Thus, general claims of injury caused by the defendant's conduct are deemed adequate, as they are presumed to contain the essential facts needed to support the claim. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105–06 (9th Cir. 2004).

Upon the Court's prior Order (Doc. 44) granting Plaintiff leave to amend the First Amended Complaint ("FAC"), Plaintiff added allegations to the SAC going to its organizational standing, and in particular the financial injury the organization suffered as a result of Defendants' alleged actions. Specifically, Plaintiff now alleges that, "when the auctions are not properly noticed and conducted, as in this case, [Plaintiff] loses the opportunity to participate in the auctions," so it "is forced to purchase the Alpine Wild Horses from third party purchasers (who *weren't* effectively excluded from the auctions), at a sometimes exorbitant premium." (SAC ¶ 22.) Moreover, Plaintiff alleges it "has had to expend resources to monitor the health, and provide veterinary care, for impounded Alpine Wild Horses that were transported to Cleburne, Texas by [Rail] in violation of federal animal welfare laws." (SAC ¶ 23.)

In their Motion, Defendants essentially argue that the Court should not consider Plaintiff's allegations that it suffered financial injury on account of Defendants' alleged actions in determining whether Plaintiff suffered an injury in fact. But contrary to Defendants' arguments (*e.g.*, Mot. at 4), no case law, including *Alliance for Hippocratic Medicine*, has held that a financial impact to an organization cannot serve as a measure of injury in fact to the organization. Monetary expenses or loss, whether to an individual—even as a measure of a physical injury to the individual—or to an organization has always served as a measure of injury in fact, so long as the financial damage is concrete, particularized, and fairly traceable to the defendant's actions. *See Havens Realty*, 455 U.S. at 379. The *Alliance for Hippocratic Medicine* Court simply pointed out that it is not enough for an organization to show "'a setback to the organization's abstract social interests'" to establish Article III standing; the injury the organization suffers thus cannot simply be a diversion of its resources motivated by those abstract social interests and in reaction to a policy. 602 U.S. at 394 (quoting *Havens Realty*, 455 U.S. at 379).

While the Supreme Court refocused the organizational injury in fact inquiry in the case before it, the Court disagrees with Defendants that *Alliance for Hippocratic Medicine* fundamentally changed the inquiry, especially as applied to the present case. None of the allegations in the SAC lead to the plausible inference that Plaintiff tried to "spend its way into standing simply by expending money to gather information and advocate against the defendant's action," as the Court found the organizational plaintiffs did in *Alliance for Hippocratic Medicine*. *Id.* at 394–95. Here, Plaintiff alleges its core mission is "to protect wild horses, manage them humanely, and rescue them for placement in good homes." (SAC ¶ 21.) It alleges it suffered financial injury in fact when it had to spend more of its money to rescue horses—that is, hire someone else at a premium to buy them at auctions organized by Defendants—due to the alleged inadequate notice Defendants provided. (SAC ¶ 22.) And it alleges it suffered financial injury in fact when it had to spend its money to treat horses' injuries resulting from the alleged inadequate care Defendants provided for the horses. (SAC ¶ 23.) Those allegations are sufficient to establish Plaintiff's injury in fact

under the controlling case law, including *Alliance for Hippocratic Medicine*. Indeed, "[t]his is a quintessential injury-in-fact." *Maya*, 658 F.3d at 1069.

### 2. Redressability

For Plaintiff to have standing, judicial relief must be possible to redress the claimed wrongs. In a recharacterization of the mootness argument Defendants made in their prior Motion to Dismiss (Doc. 37, Mot. at 6–8; Order at 8–9), Defendants contend that Plaintiff's claims rest on events of the past and the Court cannot grant relief because Plaintiff has not adequately alleged a "reasonable likelihood of imminent injury." (MTD at 8–12; Reply at 8–9.) As the Court already found, based on Plaintiff's allegations, relief is possible to redress the wrongs Plaintiff claims, including among other things orders that Defendants "ensure the humane treatment and care of horses throughout the impoundment and sale process" in compliance with the applicable statutes and regulations, or that Defendants provide "adequate notice to the public of any planned actions regarding the sale, impoundment, or transport of the Alpine Wild Horses" under the applicable statutes and regulations. (Order at 8.) Any such ruling would not be hypothetical or an advisory opinion, as Defendants now argue, because Defendants' actions regarding the sale, impoundment, or transport of horses from the Apache-Sitgreaves National Forest are ongoing—a proposition with which Defendants do not disagree. (*See* Resp. at 8 & Ex. 1 (evidence that the Forest Service continues to remove feral horses from the National Forest and make them available for sale).)

And Plaintiff's allegations are sufficient for the Court to plausibly infer that, considering Defendants' past acts and ongoing procedures, injuries to Plaintiff—such as a higher cost to buy horses due to Defendants' alleged inadequate notice procedure—are ongoing and it is reasonably likely they will continue imminently. (*E.g.*, SAC ¶¶ 4, 15, 21.) As the Court already ruled with regard to Defendants' mootness argument (Order at 8–9), Plaintiff's controversy "remains live and present," and if Plaintiff prevails, the Court can grant it relief that is not hypothetical or advisory. *See Fleming v. Charles Schwab Corp.*, 878 F3d 1146, 1151 (9th Cir. 2017) (finding the plaintiffs' allegations of continuing

adverse effects from the challenged actions were sufficient to demonstrate redressability by way of injunctive relief); *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059, 1066 (9th Cir. 2002) (finding that, although a "case becomes moot when it loses its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law" and when "no effective relief for the alleged violation can be given," the plaintiffs' claims were not moot simply because the alleged violations already occurred because the Court could still grant effective relief to address the continuing effects of the violative procedures, including an order to adjust future plans). For all these reasons, Plaintiff has standing to bring its claims and the Court will deny Defendants' Motion to Dismiss on this basis.

### B. Final Agency Action

Lastly, Defendants argue that Plaintiff has not adequately alleged a final agency action as required to bring its APA claim premised on the alleged failure to comply with applicable regulations related to their auction of feral horses. (SAC ¶¶ 48–49 (Count 2), Requests for Relief 3–6; MTD at 13–17.) This is essentially an argument that Plaintiff fails to state a claim in Count 2, which falls under Rule 12(b)(6).[1] As Defendants state, final agency action "requires a decision-making process that results in an outcome directly affecting the allegedly aggrieved party," and to that end, courts consider "whether the agency has issued a 'definitive statement' of its position, whether the action 'has a direct and immediate effect on the day-to-day operations of the subject party,' or whether 'immediate compliance is expected.'" (MTD at 14 (quoting *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)).)

Plaintiff has adequately alleged a final agency action with regard to Defendants' APA claim premised on Defendants' alleged failure to comply with the notice requirements—a conclusion that is uncontested by Defendants, who did not move to dismiss Count 1 on this basis. And in its previous Order, the Court found that, when taking

---

[1] Although Defendants could have made this argument in their initial Motion to Dismiss, the Court addresses Defendants' argument here as a matter of completeness. (*See* Resp. at 9.)

1  Plaintiff's non-conclusory allegations as true, Plaintiff stated an APA claim in both Counts
2  1 and 2. (Order at 15.) With regard to Count 2, Plaintiff alleges that, among other things,
3  Defendants violate a "maximum return at minimum cost" statutory and regulatory
4  requirement and statutory requirements prohibiting animal cruelty in conducting the
5  subject auctions by engaging in animal cruelty resulting in injury to the horses through
6  their processes in the capture, transport, loading, and auction of the horses. (SAC ¶¶ 11–
7  14.) And Plaintiff alleges that Defendants violate the "maximum return at minimum cost"
8  and "full and open competition" statutory and regulatory requirements by permitting self-
9  dealing. (SAC ¶¶ 9, 16.) These and other allegations, when taken as true, are sufficient for
10 the Court to infer final agency actions on the part of Defendants. As a result, Plaintiff
11 adequately alleges facts to support its APA claims in both Counts 1 and 2.

**IT IS THEREFORE ORDERED** denying the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 49). Defendants shall file an Answer to the Second Amended Complaint within the time prescribed by the Federal Rules of Civil Procedure, and the Court will set a Scheduling Conference by separate Order.

Dated this 20th day of January, 2026.

Honorable John J. Tuchi
United States District Judge