Troy B. Froderman (012717)
Scott C. Ryan (026791)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 310
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
sryan@frlawgroup.com

Randall M. Weiner (CO Bar No. 23871)
Annmarie Cording (CO Bar No. 42524)
WEINER & CORDING
3100 Arapahoe Avenue, Suite 202
Boulder, Colorado 80303
(303) 440-3321
randall@randallweiner.com
annmarie@weinercording.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| SALT RIVER WILD HORSE MANAGEMENT GROUP,<br><br>**PLAINTIFF**,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>**DEFENDANTS**. | CASE NO. CV-24-08148-PCT-JJT<br><br>**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MOTION TO SUPPLEMENT COMPLAINT** |

Pursuant to Fed. R. Civ. P. 65(b) and 15(d), Plaintiff, Salt River Wild Horse Management Group ("SRWHMG"), moves for a temporary restraining order and preliminary injunction to prevent Defendants from unlawfully gathering and selling up to

1

1800 wild horses from the Apache-Sitgreaves National Forest ("A-S Forest").[1] The roundup is currently underway. Plaintiff also moves to supplement its complaint pursuant to Fed. R. Civ. P. 15(d).

**INTRODUCTION**

Defendants are violating Federal law and regulations, including the same regulations that caused Plaintiff to commence this action almost two years ago – the improper use of notice of impoundment procedures, the exclusion of SRWHMG from auctions to preclude them from purchasing wild horses, and the violation of animal welfare regulations and standards.

Indeed, the attached declaration shows that Defendants have begun impounding (or allowing the impoundment of) horses on or before April 21, 2026, although its notice of impoundment lists its effective date as "on or after April 27, 2026." **Exhibit 3**; **Exhibit 4,** Declaration of Christian Fellhoelter ("Fellhoelter Decl."), ¶ 3. As this Court recognized on August 2, 2024, "Subsection 262.10(c) [of Title 36] … provides that the livestock subject to impoundment in the notice 'may be impounded without further notice any time within the 12-month period immediately following *the effective date* of the notice.'" ECF No. 25 (Order) at 2 (emphasis added). By commencing the current A-S Forest impoundments *before* the effective date, Defendant is blatantly violating this impoundment notice regulation. More long-term, Defendants have used an "unauthorized livestock"

---

[1] Plaintiff has tried numerous times to engage Brian Herman, counsel for Defendant USFS in this matter, on these issues, only to be repeatedly told that USFS will not "confer on prospective matters." **Exhibits 1** and **2**.

2

impoundment notice that is inapplicable because these horses are not unauthorized livestock but rather fully protected horses under the 1971 Wild Horse and Burro Act. *See* below.

Mr. Fellhoelter's declaration also demonstrates, through pictures, that Defendants or their agents are engaging in acts of animal cruelty by allowing the Heber Wild Horses to be caught in "holding corals" which contain "barbed wire and protruding tie wire in the fencing." Fellhoelter Decl. (**Exhibit 4**), ¶ 6 and exhibit 1 thereto. These types of sharp objects will undoubtedly pierce and harm the horses' skin and result in "a real bloodbath." Declaration of Simone Netherlands ("Netherlands Decl."), ¶¶ 12, 19.  These and other actions overseen by Defendants violate the Comprehensive Animal Welfare Program, which Defendant USFS agreed to abide by for "all operations which involve handling of horses." *Id.,* ¶ 7; **Exhibit 5** ("All operations which involve handling of horses will be conducted in accordance with the Comprehensive Animal Welfare Program found in the territory management plan."); **Exhibit 6** (Comprehensive Animal Welfare Program).

Significantly, the current and upcoming gather violates decades of precedent recognizing that the Heber Wild Horses are not "unauthorized livestock" but rather horses qualified as fully protected under the Wild Free-Roaming Horses and Burros Act (WHBA), 16 U.S.C. §§ 1331-1340, which was enacted 1971 to protect wild horses as "an integral part of the natural system of the public lands." *Id.* at § 1333. Notably, on January 29, 2026, Joshua Miller, Acting Forest Supervisor of the A-S Forest, recognized that the Heber Wild Horses fall under the WHBA by issuing a finding of no significant impact (FONSI) under the National Environmental Policy Act, 42 U.S.C. §§ 4321-4370(h) (NEPA), establishing an appropriate management level (AML) of 50 to 104 wild horses in the A-S Forest and

3

"adopting the Heber Wild Horse Final Territory Management Plan" (the "Management Plan") as the operative document for these horses. **Exhibit 7** at 2. In turn, the Management Plan was adopted to "maintain a *healthy herd* within a thriving natural ecological balance," **Exhibit 8** at 7 (emphasis added).

Five weeks later, without the "reasoned explanation" required under the Administrative Procedure Act ("APA"), Mr. Miller relabeled the 1800 Heber Wild Horses and changed their legal status to "unauthorized livestock," stripping them of their WHBA protections and allowing USFS agents to directly ship them to slaughter rather than to the adoption facilities required under the WHBA. **Exhibit 9;** Netherlands Decl. ¶ 13.

A removal of all Heber Wild Horses, utilizing procedures for "unauthorized livestock" rather than for WHBA-protected horses, fully contradicts the USFS promise to "manage the Heber Wild Horse Territory in compliance with the Act and the Apache-Sitgreaves National Forests Land Management Plan, allowing for horses to occupy the territory in accordance with the Act and Heber Wild Horse Management Plan." **Exhibit 10** at 2. The planned removals also allow the Heber Wild Horse numbers to fall below the 50 to 104 AML established in the January, 2026 FONSI. **Exhibit 7** at 2; **Exhibit 8** at 7.

To allow the Court to address the alleged relabeling issues for the Heber Wild Horses more thoroughly, the Court should allow Plaintiff to supplement its Second Amended Complaint with the Supplemental Complaint attached hereto as **Exhibit 11**, pursuant to Fed. R. Civ. P. 15(d).

In short, Should the ongoing unlawful roundup not be halted, Plaintiff's Court-recognized "organizational mission – to protect wild horses, manage them humanely, and

4

rescue them for placement in good homes…," ECF. No. 44 at 5, will be fully undercut by Defendants' unlawful conduct. Netherlands Decl., ¶ 15. Indeed, there may be no sales for Plaintiff to participate in, since these 1800 horses are, upon information and belief, going to be sent directly to slaughter by Defendants and/or their agents.

## FACTUAL BACKGROUND

The Heber Wild Horses live on federal land in the A-S Forest. Netherlands Decl., ¶ 16.

On June 24, 2024, SRWHMG brought a civil action ("Action") for declaratory and injunctive relief against the United States Forest Service (the "Forest Service" or "USFS") for violating notice requirements related to the livestock auction of horses removed from the Apache-Sitgreaves National Forest in Arizona.[2] ECF Nos. 1 and 18. SRWHMG alleged that USFS notice violations prevented Plaintiff and its members and affiliates from meaningfully participating in such horse auctions. *Id.* SRWHMG has also alleged that Defendant Rail Lazy H Contracting and Consulting LLC d/b/a Rail Lazy H ("Lazy H"), which is under contract with the USFS to impound, capture and sell horses in the Apache-Sitgreaves National Forest, has unlawfully prevented SRWHMG from meaningfully participating in its auctions and has engaged in unlawful animal cruelty during the capture, transport, loading and auction of the horses they impound from the Apache-Sitgreaves National Forest. *Id.* SRWHMG further alleged that Lazy H violated federal procurement

---

[2] Plaintiff subsequently filed its Second Amended Complaint for Declaratory Judgment and Injunctive Relief ("Complaint") filed March 12, 2025.

regulations related to the method and manner in which it executes the sale/auction of the horses. *Id.*

During the pendency of this case, the Court rejected **two** separate attempts to dismiss this action. ECF Nos. 44 (2/26/25) and 54 (1/20/26). Subsequent to the filing of this Action, SRWHMG learned of further USFS and Lazy H violations of federal law related to the capture, impoundment, notice, and sale of horses from the Apache-Sitgreaves National Forest.

## ARGUMENT

### I.    The *Winter v. Natural Res. Def. Council* test

A temporary restraining order is an "extraordinary remedy that may be awarded upon a clear showing that the Plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standards for evaluating a request for a temporary restraining order and a preliminary injunction are the same. *Alliance for Wild Rockies v. Pierson*, 550 F. Supp.3d 894, 898 (D. Idaho 2021). The relevant factors that Plaintiff must establish are (1) that Plaintiff is likely to succeed on the merits; (2) absent the requested relief, Plaintiff is likely to suffer irreparable harm; (3) the balance of equities tips in Plaintiff's favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In balancing the four factors, and in particular, in evaluating whether a plaintiff is likely to succeed on the merits, courts have utilized the "serious questions" test whereby a temporary restraining order or preliminary injunction has been found appropriate where "serious questions" exist relative to the merits of the case, the balance of hardships tips

6

sharply towards the plaintiff and the remaining two elements have been met. *See Alliance For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-1132 (9th Cir. 2011).

## II.      Plaintiff is likely to succeed on the merits

### A.  The Current Impoundment Notice is Being Violated

In a stunning display of illegality regarding wild horses in the A-S Forest, Defendants commenced their roundup of up to 1800 wild horses on or before April 21, 2026, approximately a week before the *effective date* of its impoundment notice of April 27, 2026. **Exhibit 4**, ¶ 3. By commencing the impoundment *before* the effective date, Defendant is violating 36 C.F.R. § 262.10(c) ("Unauthorized livestock … may be impounded without further notice any time within the 12-month period immediately following *the effective date* of the notice") (emphasis added). The Notice's effective date is April 27, 2026. **Exhibit 3.** An order preventing further unlawful impoundments prior to the effective date should be issued before additional roundups are undertaken this week and through the weekend. A proposed Order to this effect is attached.

### B.  USFS is Violating its Requirement to Treat "the Handling of Horses" in the A-S Forest Pursuant to the Comprehensive Animal Welfare Program

The current wild horse roundup involves Defendants' agents who are impounding the horses in "holding corals" which contain "barbed wire and protruding tie wire in the fencing." Fellhoelter Decl. (**Exhibit 4**), ¶ 6 and exhibit 1 thereto. This will undoubtedly pierce the horses' skin. Netherlands Decl., ¶ 12.  This violates the Comprehensive Animal Welfare Program that Defendant USFS agreed to follow. **Exhibit 5** ("All operations which involve handling of horses [in the A-S Forest] will be conducted in accordance with the Comprehensive Animal Welfare Program found in the territory management plan.");

7

**Exhibit 6** (Comprehensive Animal Welfare Program, as highlighted). Commitments by an agency in a NEPA document are binding. *Tyler v. Cisneros,* 136 F.3d 603, 608 (9ᵗʰ Cir. 1998) (agency must comply with measures agreed to by agency in NEPA review process); *Friends of Animals v. Sparks*, 200 F. Supp. 3d 1114, 1125 (D. Mont. 2016) (BLM's failure to adhere to commitment in NEPA documents is a violation of process prohibited by NEPA).

An order preventing the placement of the horses in these dangerous holding corals should be issued forthwith. The order should also prevent violations of the other animal cruelty provisions raised by Plaintiff, specifically 49 U.S.C. § 80502. *See* ECF No. 45, ¶ 13-14 (alleging animal transportation violations by Defendant Rail Lazy H). A proposed Order to this effect is attached.

### C. USFS Has Arbitrarily and Capriciously Relabeled Wild Horses as "Stray Livestock" Thereby Avoiding Its Responsibilities under the WHBA

On January 29, 2016, the USFS issued its FONSI under NEPA and adopted the Management Plan to treat the Heber Wild Horses as fully protected under the WHBA. **Exhibit 7** at 2, 15. On March 9, 2026, five weeks later, Mr. Miller made a 180-degree turn and issued a letter declaring that the Heber Wild Horses were "unauthorized livestock," and not protected under the WHBA. **Exhibit 9** at 2. However, a decision to change a wild horse designation cannot occur in the absence of specific criteria inapplicable here. *See* 16 U.S.C. § 1333(d).

In changing the wild horse designation, Mr. Miller provided no "reasoned explanation . . . for disregarding facts and circumstances that underlay" the prior policy. USFS' sudden relabeling of the Heber Wild Horses other than citing the same sources he

8

did five weeks earlier. *Compare* **Exhibit 9** ("the horses present on the Sitgreaves National Forest are not wild horses nor the progeny of wild horses and have not intermingled with wild horses…") *with* **Exhibit 10** at 15 ("there is no conclusive information from which to determine the horses on the Sitgreaves National Forest are not the progeny of wild free-roaming horses which utilized what was established as the Heber Wild Horse Territory after the passage of the Act").

Mr. Miller's letter relabeling the Heber Wild Horses as "unauthorized livestock" is thus arbitrary and capricious. "The absence of a reasoned explanation for disregarding previous factual findings violates the APA." *Organized Village of Kake v. United States Dep't of Agric.*, 795 F.3d 956, 969 (9th Cir. 2015) ("An agency cannot simply disregard contrary or inconvenient factual determinations that it made in the past, any more than it can ignore inconvenient facts when it writes on a blank slate."):

> a policy change complies with the APA if the agency (1) displays "awareness that it is changing position," (2) shows that "the new policy is permissible under the statute," (3) "believes" the new policy is better, and (4) provides "good reasons" for the new policy, which, if the "new policy rests upon factual findings that contradict those which underlay its prior policy," must include "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." (citation omitted)

*Id.* at 966. *See also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (permitting change where the agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action."

Here, the proposed gather of Heber Wild Horses violates the USFS obligation to maintain an appropriate management level ("AML") of Heber Wild Horses of 50-104 horses on the Heber Wild Horse Territory (territory), as established during the January

NEPA process. **Exhibit 7** at 3 ("This decision establishes the lower and upper limits of the AMLs for the territory at 50 to 104 horses based on an in-depth analysis of the resources available within the territory.").[3] *See Am. Wild Horse Preservation Campaign v. Jewel*, 847 F.3d 1174, 1185-86 (10th Cir. 2016) (finding violation of federal law where "removal will likely reduce the wild horse populations … below the AMLs…"). Likewise, The USFS horse management manual does not allow the USFS to remove "excess" horses below the "acceptable population range identified in the management plans." USFS, *Forest Service Manual 2200 – Rangeland Management, Chapter 2260 - Wild Free-Roaming Horses and Burros* ("FS Manual"), 2265.3 (Jan. 24, 2003), https://www.fs.usda.gov/about-agency/regulations-policies/manual/2260-wild-free-roaming-horses-and-burros.[4]

### D. The Court Should Accept Plaintiff's Supplemental Complaint under Fed. R. Civ. P. 15(d)

In order to allow the Court to address the alleged relabeling issues for the Heber Wild Horses more thoroughly, the Court should allow Plaintiff to file a supplemental complaint regarding the failure of Defendants to comply with the WHBA and NEPA for the roundup of the Heber Wild Horses. It should also extend the restraining Order until the Court can address these additional allegations. The Supplemental Complaint is being filed as **Exhibit 11**.

---

[3] Plaintiff's Second Amended Complaint alleges violations of the Administrative Procedure Act. ECF No. 45, ¶¶ 30, 31, 45 and 48.

[4] The FS Handbook codifies USFS's "policy, practice, and procedure . . . ; serves as the primary administrative basis for the internal management and control of all programs; and is the primary source of administrative direction to Forest Service employees." 36 C.F.R. § 200.4(b)(1).

Courts should freely allow the supplementation of complaints when new events occur. Under Fed. R. Civ. P. 15(d), "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

In *Keith v. Volpe*, when plaintiffs sought an injunction and to add plaintiffs, the court found that "allowing the supplemental complaint was well within the district court's discretion under Fed. R. Civ. P. 15(d), which is designed to permit expansion of the scope of existing litigation to include events that occur after the filing of the original complaint." *Keith v. Volpe*, 858 F.2d 467, 471 (9th Cir. 1988). That case also found: "[t]he rule is a tool of judicial economy and convenience. Its use is therefore favored." *Id.* at 473.

The Supreme Court has also stated that "Rule 15(d) of the Federal Rules of Civil Procedure plainly permits supplemental amendments to cover events happening after suit… Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice." *Griffin v. County School Board*, 377 U.S. 218, 227 (1964) (allowing a supplemental complaint 10 years after the original complaint was filed). The Court reasoned that "[t]he amended complaint [was] not a new cause of action but merely part of the same old cause of action…" *Id.* at 226.

The 9th Circuit echoes (and quotes) the Supreme Court's reasoning. As long as supplemental complaints are not being used to introduce a "separate, distinct, and new cause of action," *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997), or amendment would be futile, *Arnold v. Metlife Auto & Home*, 834 Fed. Appx. 365, 366 (9th Cir. 2021), neither of which are the case at present, it is well within the Court's

11

rights to allow a supplemental pleading and is indeed encouraged to facilitate judicial economy and convenience.

**E.  Absent the requested relief, Plaintiff is likely to suffer irreparable harm**

There is no doubt that irreparable harm will be done absent relief in this case. The horses are already being impounded. **Exhibit 4, ¶** 3. Upon information and belief, the horses will not even be sent to auction, but will be purchased by "kill buyers" and sent directly to slaughterhouses in Mexico. Netherlands Decl., ¶¶ 3, 17. This is not an issue whereby monetary damages would sufficiently address Plaintiff's claims. Since the mission of Plaintiff's organizations is to protect these wild horses from inhumane treatment, suffering and death, Plaintiff will suffer irreparable harm if the roundup continues without proper notices. Netherlands Decl., ¶ 21. Indeed, Plaintiff, and other interested members of the public, will be unable to participate in any auction if Defendant's agents, including Defendant Rail Lazy H, sells the impounded horses directly to slaughterhouses from the unlawful impoundments. Netherlands Decl., ¶ 17. Plaintiff will also suffer irreparable harm if all the protected horses are removed. ECF. No. 44 at 5.

**F.  The balance of equities tips in Plaintiff's favor**

Given the severity of consequences absent relief, and in consideration of the fact that the law requires Defendants to protect and manage these horses as part of their duties, Plaintiff asserts that the balance of equities easily and heavily tips in its favor.

**G. An injunction is in the public interest**

Granting Plaintiff's request for a temporary restraining order and preliminary injunction is in the public interest. One only has to google "wild horses in Arizona" to

12

discover the fierceness of and widespread public interest in the preservation of these animals. Wild horses are a representation of the West and a beloved part of the historic and cultural fabric of Arizona. Indeed, the Salt River Horse Act, A.R.S. § 3-1491, was enacted in 2017 to protect the Salt River wild horses in the Tonto National Forest, which borders the Apache-Sitgreaves National Forest.

**III.    No Bond or a Nominal Bond is Appropriate**

Plaintiff, in the underlying action and this Motion, is seeking enforcement of regulations that benefit and promote the public interest. Plaintiff is a non-profit organization whose ability to pursue judicial review in this case would be hindered by a substantial bond. This Court has discretion to waive a bond order a nominal amount. *See People of State of Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1325-26 (9th Cir. 1985) (affirming **no bond** for an environmental non-profit because "special precautions to ensure access to the courts must be taken where Congress has provided for private enforcement of a statute"); *Friends of Earth, Inc. v. Brinegar*, 518 F.2d 322, 323 (9th Cir. 1975) (**$1000 bond** warranted where plaintiffs were seeking to vindicate NEPA and other statutes and recognizing a private organization's limited resources against a governmental entity). Plaintiff requests that the bond be waived or ordered in a nominal amount.

**CONCLUSION**

For the foregoing reasons, Plaintiff requests that (1) the Court enjoin any impoundment and gather of the Heber Wild Horses until Defendant USFS provides proper notice and demonstrates that they will be kept in safe and legally required holding pens, and

(2) the supplemental complaint attached as **Exhibit 11** be accepted by the Court so that the legality of the USFS relabeling of the Heber Wild Horses from "wild horses" to "unauthorized livestock" can be adequately determined.

Dated this 23rd day of April, 2026.

Respectfully submitted,

WEINER & CORDING

By:    /s/ Randall M. Weiner
       Randall M. Weiner (CO Bar No. 23871)
       Annmarie Cording (CO Bar No. 42524)

       FR LAW GROUP PLLC
       Troy B. Froderman (012717)
       Rita M. Gara (037349)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 23, 2026, I electronically transmitted the foregoing document and its exhibits to the Clerk's Office using the ECF System for filing and caused a copy to be electronically transmitted to all parties of record.

 /s/ Randall M. Weiner
Randall M. Weiner

14