ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

Ashley M. Carter
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Oregon State Bar No. 165397
Email: ashley.carter@usdoj.gov
Tel: (202) 532-5492

Gabriel Lopez
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
FL Bar No. 1017629
Email: Gabriel.lopez2@usdoj.gov
Tel: (202) 598-0881

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Salt River Wild Horse Management Group, | ) Case No.: 3:24-cv-08148-JJT |
| | ) |
| Plaintiff, | ) **FEDERAL DEFENDANTS'** |
| | ) **OPPOSITION TO PLAINTIFFS'** |
| | ) **APPLICATION FOR TEMPORARY** |
| v. | ) **RESTRAINING ORDER AND** |
| | ) **PRELIMINARY INJUNCTION AND** |
| U.S. Department of Agriculture, et al., | ) **MOTION TO SUPPLEMENT** |
| | ) **COMPLAINT [DKT. NO. 64] WITH** |
| Defendants. | ) **DECLARATIONS IN SUPPORT** |
| | ) |

**INTRODUCTION**

In this action, Plaintiff brings two claims that (1) Federal Defendants did not properly notice a July 16, 2024 Notice of Sale of unauthorized horses from the Apache National Forest and (2) the Forest Service and its contractor failed to comply with "federal procurement and other regulations" in the impoundment and sale of the unauthorized livestock removed under the July 16, 2024 Notice. 2d Am. Compl. ("Compl.") ¶¶ 1–4, 36–38, Dkt. No. 45. Now, after the Federal Defendants have already served the administrative record, Plaintiff is attempting to improperly shoehorn in a subsequent, unrelated alleged impoundment of horses on a different Forest alleging a new cause of action and violation of the Administrative Procedure Act with respect to the "relabeling" of unauthorized livestock by the U.S. Forest Service. Dkt. No. 64, at 7-10.

This Court should deny Plaintiff's motion to supplement these proceedings, as Plaintiff attempts to introduce a "separate, distinct and new cause of action" by its supplemental complaint, in violation of Federal Rule of Civil Procedure 15(d). *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (cleaned-up). Moreover, allowing Plaintiff to supplement the complaint would be prejudicial to the Federal Defendants, who have already lodged the applicable Administrative Record with this Court for the challenged July 16, 2024 Notice. Plaintiff essentially asks this Court for permission to litigate a separate, unrelated set of facts and corresponding Administrative Record and include new legal theories in this long-running case. The Court should deny Plaintiff's request.

Likewise, the Court should reject Plaintiff's request to enjoin actions not properly before itt. Plaintiff's improper supplemental claims also are not likely to succeed on the merits and Plaintiff will not suffer irreparable harm. And the balance of the equities and public interest weigh against such an injunction. The Court should deny Plaintiff's request.

**BACKGROUND**

**I.    The Apache-Sitgreaves National Forest and the Heber Wild Horse Territory**

While the Apache-Sitgreaves National Forests have been managed as a single administrative unit by the Forest Service since 1974, they are geographically distinct National Forests. U.S. Dep't of Agric., *Forests and Grasslands*, https://www.fs.usda.gov/r03/forests-grasslands. The Springerville and Alpine Ranger Districts are located on the Apache National Forest, where the July 16, 2024 Notice of Sale of Impounded Livestock, the challenged agency action in this litigation, gave notice that unauthorized livestock on these two districts would be impounded. In contrast, the April 2, 2026 Notice of Intent to Impound Unauthorized Livestock, which Plaintiffs are now attempting to challenge in this litigation, authorized impoundment of unauthorized livestock on the Black Mesa Ranger District and the Lakeside Ranger District, which are both on the Sitgreaves National Forest. As explained in Mr. Fink's Declaration, the horses on the Apache National Forest are distinct and separate from the horses on the Sitgreaves National Forest because of the 50 mile separation between the two populations, which includes separation by fences, communities, and other barriers to movement. Given this distinction, any action the Forest Service takes regarding horses on the Apache National

Forest is separate from any action the Forest Service takes regarding horses on the Sitgreaves National Forest.

The Forest Service designated the Heber Wild Horse Territory on the Sitgreaves National Forest in 1974. U.S. Dep't of Agric., *Apache-Sitgreaves Nat'l Forests Unauthorized Livestock Hist.* 7 (2021), https://www.fs.usda.gov/sites/nfs/files/legacy-media/apache-sitgreaves/Unauthorized%20Livestock%20History%20on%20the%20Apache-Sitgreaves%20National%20Forests.pdf, at 11. The entire known wild horse herd on the territory at that time consisted of just seven horses—six mares and one stallion. *Id*. That small group never developed into a sustainable population. *Id.* Forest Service records indicate the herd remained stagnant for years, with little to no reproduction. *Id.*

Since 1997, the horses on the Heber Wild Horse Territory have not been considered wild horses nor the progeny of wild horses but formed largely from horses that moved into the forest from surrounding areas after fence failures and environmental changes reshaping the landscape, as the original herd did not survive. *Id.* (citing U.S. Dept. of the Interior & U.S. Dep't of Agric., A Report to Congress by the Secretary of the Interior and the Secretary of Agriculture on Administration of the Wild Free-Roaming Horse and Burro Act, Pub. L. No. 92-195 (1997).

## II.    The Wild Free-Roaming Horses and Burros Act and Unauthorized Livestock

In 1971, Congress enacted the Wild Free-Roaming Horses and Burros Act ("Wild Horses Act"). Pub. L. No. 92-195, 85 Stat. 649 (1971). The Act provided for the protection and management of wild horses "in the area where presently found, as an integral part of

the natural system of the public lands." 16 U.S.C. § 1331. It defined wild and free-roaming horses as "all unbranded and unclaimed horses . . . on public lands of the United States." *Id.* § 1332(b). Thus, Congress intended to protect established herds as they were found in 1971. *See Fallini v. Hodel*, 725 F. Supp. 1113, 1114 (D. Nev. 1989), *aff'd*, 963 F.2d 275 (9th Cir. 1992).

On those public lands administered by the Secretary of Agriculture, the United States Forest Service has responsibility for managing wild free-roaming horses and burros. *See* 16 U.S.C. §§ 1332(a), 1333(a). The Forest Service has promulgated regulations carrying out its responsibilities under the Act. Horses introduced onto lands of the National Forest System on or after December 15, 1971, are not wild horses. 36 C.F.R. § 222.60(b)(13). Rather, they are unauthorized livestock. "Unauthorized livestock" include "any . . . equine not defined as a wild free-roaming horse or burro" that is "not authorized by permit to be upon the land." *Id.* § 261.2.

Unauthorized livestock are subject to impoundment under Forest Service regulations. If a Forest Service officer determines that unauthorized livestock use is occurring, but does not know the owner of the livestock, the Forest Service can impound the unauthorized livestock "any time 15 days after the date a notice of intent to impound livestock is first published in a local newspaper and posted at the county courthouse and in one or more local post offices. The notice will identify the area in which it will be effective." *Id.* § 262.10(b). Once such notice is posted, unauthorized livestock "may be impounded without further notice any time within the 12-month period immediately

4

following the effective date of the notice." *Id.* § 262.10(c). If the Forest Service impounds unauthorized livestock, it may sell the livestock, subject to additional notice requirements. "[A] notice of sale of impounded livestock will be published in a local newspaper and posted at the county courthouse and in one or more local post offices." *Id.* § 262.10(d). The notice should "describe the livestock and specify the date, time, and place of the sale." *Id.* It must be posted and published at least five days before the sale. *Id.*

## LEGAL STANDARD

### I.       Motion to Supplement Complaint

Federal Rule of Civil Procedure 15(d) provides that the Court may, "on motion and reasonable notice" as well as "just terms," permit a plaintiff to supplement a complaint to set out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

When evaluating Rule 15(d) motions to supplement, courts often consider the five factors used to evaluate Fed. R. Civ. P. 15(a) motions: (1) undue delay, (2) evidence of delay or bad faith on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178 (1962). Of these factors, "consideration of prejudice to the opposing party...carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Although courts generally favor granting leave for plaintiffs to file supplemental pleadings, a plaintiff cannot seek to "introduce a separate, distinct and new cause of

action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal citations and quotation marks omitted). The goal of Rule 15(d) is "judicial efficiency," determined by assessing "whether the entire controversy between the parties could be settled in one action." *Id.* (internal quotations and citation omitted).

## II.    A Preliminary Injunction is an Extraordinary Remedy.

As the movant, Plaintiff bears the burden of demonstrating (1) it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm absent the preliminary injunction, (3) that the balance of equities tips in its favor, and (4) that the injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1576 (2024). A deficiency in any one of the required elements precludes extraordinary relief. *Winter*, 555 U.S. at 24. Because a "preliminary injunction is an extraordinary and drastic remedy," *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted), the party seeking an injunction must make a "clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

The first two factors are the threshold, most critical factors. *Id.* For a party to demonstrate that it is likely to prevail on the merits, "[i]t is not enough that the chance of success on the merits be 'better than negligible'" and "more than a mere 'possibility' of relief is required." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal citation omitted).

Even if a court issues a temporary restraining order, at the subsequent hearing it is the party seeking the injunction who must demonstrate his right to a preliminary injunction; there is no burden on the restrained party to prove a preliminary injunction should not issue.

*See* Fed. R. Civ. P. 65(b)(3) ("At the hearing, the party who obtained the order must proceed with the motion . . . ."); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters and Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 441 (1974) (if a TRO is issued, then at preliminary injunction hearing "the party seeking the injunction would bear the burden of demonstrating the various factors justifying preliminary injunctive relief").

**ARGUMENT**

Plaintiff's request to supplement its complaint should be denied. Plaintiff attempts to shoe-horn its new, distinct claims into the existing case. A close look at the operative claims as well as the proposed supplemental claims reveals that Plaintiff's allegations concern notices, claimed impoundments, and agency actions that differ in their geographic region, affected horses, administrative records, and statutes. Precedent directs that the distinct claims be filed in a separate action (indeed, one has already been filed by another organization). The Court should deny Plaintiff's attempt to add completely different, unrelated claims to this case, one that has been pending for almost two years and stems from a July 2024 challenged agency action involving a different forest. And because denial of Plaintiff's Motion to Supplement is proper, the Court should also deny Plaintiff's request for an injunction on claims not properly before the Court.

But even if the Court were to entertain the new allegations in Plaintiff's supplemental complaint, Plaintiff fails to meet its burden to obtain preliminary injunctive relief. Plaintiff is not likely to succeed on the merits as Federal Defendants have not impounded horses in holding corals with barbed and protruding wire. In fact, no

impoundment has occurred at all, let alone before the April 27 effective date of the April 2, 2026 impoundment notice. Nor is any impoundment of horses on the Sitgreaves National Forest going to occur before July 15. Plaintiff therefore fails to demonstrate any irreparable harm would result absent an injunction. For these reasons, Federal Defendants ask the Court to deny Plaintiff's application for a preliminary injunction and motion to supplement the complaint.

> **I.    The Court should reject Plaintiff's supplemental complaint because it would introduce new causes of action that are distinct from its current claims.**

The Court should deny Plaintiff's request to "supplement" its complaint because Plaintiff improperly seeks to add new, separate claims, rather than adding facts or related claims to the challenged July 16, 2024 Notice of Impoundment and Sale on the Apache National Forest. Any claims related to the Heber Wild Horse Territory Management Plan Environmental Assessment and Finding of No Significant Impact issued on January 29, 2026, the March 9, 2026 determination from the Apache-Sitgreaves National Forest Supervisor finding that the horses on the Sitgreaves National Forest are unauthorized livestock, or the April 2, 2026 impoundment notice for the Black Mesa and Lakeside Ranger Districts on the Sitgreaves National Forest belong in a separate action. Indeed, challenges to these recent Sitgreaves actions will be addressed in pending litigation before this district court. Further, Plaintiff did not amend its complaint with these claims before requesting a preliminary injunction, and Plaintiff cannot obtain an injunction on claims not

before the Court. For these reasons, Plaintiff's request to supplement its complaint and for a preliminary injunction based on those claims should be denied.

Plaintiff's operative complaint challenges the Forest Service's July 16, 2024 Notice of Sale of Impounded Livestock on the Alpine and Springerville Ranger Districts on the Apache National Forest. Compl. ¶¶ 1–4. As the Court has recognized, Plaintiff alleges harm by way of the removal and sale of the horses without proper notice and in violation of applicable Federal Procurement Regulations. Dkt. No. 44. On April 10, 2026, the Federal Defendants served a copy of the Administrative Record for the prior impound and sale notices on all parties, and lodged the index with the Court. *See* Dkt. No. 63.

Now Plaintiff seeks to supplement its complaint by introducing new, unrelated causes of action. As an initial matter, Plaintiff no longer addresses horses found on the Apache National Forest. Instead, Plaintiff's supplemental claims concern horses in the Heber Wild Horse Territory (HWHT) and on the Sitgreaves National Forest. *See* Suppl. Compl. at ¶ 13. But that territory is over fifty miles from any horses on the Apache National Forest. *See* Ex. 1, Fink Decl. at ¶ 6. To be sure, the Sitgreaves and Apache National Forests are managed as a single administrative unit by the Forest Service and are often referred to together, as they often have been throughout this litigation. But the two national forests are distinct geographically.

Consistent with that significant distance between the HWHT and the horses on the Apache National Forest, the allegations Plaintiff seeks to introduce concern a completely separate alleged impoundment that Plaintiff claims occurred almost two years after the

allegedly defective notice at issue in this case. Plaintiff avers the new impoundment improperly commenced on April 21, 2026, "before the effective date" of April 27, 2026, thereby "violating 36 C.F.R. § 262.10(c)." Pl.'s Mot. at 7. Plaintiff further alleges that the Forest Service is "impounding the horses in 'holding corals' which contain 'barbed wire and protruding tie wire in the fencing'," in violation of the Heber Wild Horse Territory Final Management Plan. *Id.* at 7-8. Plaintiff also claims that the Forest Service has acted arbitrarily and capriciously in designating horses on the Sitgreaves National Forest as "unauthorized livestock." *Id.* at 8-9. Plaintiff contends that these actions are a direct violation of the Wild Horses Act, whereas it brought no such claims under the Wild Horses Act in its operative complaint. Finally, Plaintiff contends that Federal Defendants violated NEPA with the January 29, 2026 Final Decision Notice "relating to the management of horses protected under" the Wild Horses Act or by failing to issue an Environmental Impact Statement for the impoundment issued under the Heber Wild Horse Territory Management Plan in the March 9, 2026 memorandum related to horses on the Sitgreaves National Forest.

These allegations are new, completely separate causes of action and should not be introduced in this matter. Plaintiff's operative claims are discrete and limited to challenging a notice of impoundment and sale of horses from the Apache National Forest[1].

---

[1] Further, Plaintiff named Rail Lazy H as a Defendant in this lawsuit, who is the Forest Service's contractor to remove horses from the Apache National Forest under the challenged July 16, 2024 Notice. *See* USFS-0028 (providing a "Statement of Work" for the contractor to remove unauthorized livestock "from the Alpine, Clifton, and Springerville Ranger Districts of the Apache National Forest"). Rail Lazy H has not been contracted by the Forest Service to remove horses on the Sitgreaves National Forest under (Cont'd)

At bottom, Plaintiff's proposed supplemental allegations challenge completely separate administrative decisions stemming from the Heber Wild Horse Territory Management Plan Environmental Assessment and Finding of No Significant Impact, which is a new cause of action. Review of the supplemental claims would require entirely separate administrative records. This prejudices Federal Defendants. Because the Plaintiff's supplemental complaint challenges a completely separate decision with its own distinct administrative record, it should be the subject of a separate action. *See Ctr. for Food Safety v. Vilsack,* No. C-10-04038-JSW, 2011 WL 672802, at *3 (N.D. Cal. Feb. 18, 2011) (determining that plaintiffs' claims that challenged a new decision and required a separate administrative record should be in a separate action and denying Plaintiffs' motion to file a supplemental complaint).

Indeed, the April 2, 2026 impoundment notice is the subject of ongoing litigation in this Court in the matter of *International Society for the Protection of Mustangs and Burros et al. v. United States Government et al.*, Case No. 3:26-cv-08092, before Judge Lanham. Like Plaintiff's proposed supplemental complaint, the plaintiff there alleges that the April 2, 2026 impoundment notice and related agency actions violate the Wild Horses Act and that Federal Defendants violated NEPA with its final management plan, EA for the Heber Wild Horse Territory, and FONSI issued in January 2026. *See* Ex. 2 (ISPMB complaint). Allowing Plaintiff to supplement its complaint here with the overlapping

---

the April 2, 2026 Notice.  This further demonstrates why it would be procedurally and substantively improper to allow Plaintiff to supplement its claims here as related to horses on the HWHT or Sitgreaves National Forest.

11

allegations could lead to inconsistent judgments as well as duplication and waste of judicial resources. *See id.* at \*4.

As Plaintiff admits, supplemental complaints cannot be used to introduce a separate, distinct and new cause of action. Pl.'s Mot. at 11 (citing *Neely*, 130 F.3d at 402). Yet that is precisely what Plaintiff attempts to do here. At this late stage of this case, after Plaintiff has already amended the complaint, after motions practice relating to that amended complaint, and after the Federal Defendants have served the Administrative Record, the prejudice to the Federal Defendants is high and the Court should not countenance essentially sending this case back to square one. The Court should reject Plaintiff's attempt to tack on distinct causes of action to this case that has been pending for two years.

Also, because the Court should deny the motion to supplement, it should deny the motion for a preliminary injunction. Plaintiff's request for a preliminary injunction is unrelated to its operative complaint. Rather, Plaintiff asks the Court to enjoin actions related to its proposed supplemental claims. But while "new assertions of misconduct might support additional claims against a defendant, they do not support preliminary injunctions entirely unrelated to the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). Plaintiff's request to enjoin a potential gather in April 2026 in the Sitgreaves National Forest is unrelated to its claims in the complaint about a 2024 impoundment and sale of horses on the Apache National Forest.

12

A preliminary injunction is inappropriate if it grants different relief from that which could be granted after a decision on the merits. Rather, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint. This requires a sufficient nexus between the claims raised in the motion for injunctive relief and the claim set forth in the underlying complaint itself. . . . Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id.* Amendment of a complaint should precede the motion for the preliminary injunction. *See, e.g.*, *San Carlos Apache Tribe v. United States Forest Serv.*, No. CV-21-00068-PHX-DWL, 2025 WL 1618410, at *5 (D. Ariz. June 9, 2025).

Because Plaintiff's supplemental complaint contains distinct claims for a distinct group of horses, the Court should deny Plaintiff's motion to supplement and deny the request to enjoin actions that are not properly before it.

**II.    Even if the Court were to entertain Plaintiff's request for a PI on its supplemental claims, the Court should deny Plaintiff's request because it is unlikely to succeed.**

A.  Plaintiff lacks standing.

Plaintiff claims that the Forest Service failed to comply with 36 C.F.R. § 262.10(c) because horses are being impounded before the effective date of the relevant notice. Pl.'s Mot. at 7-10. But Plaintiff lacks standing to press this claim. Among other things, Article III standing requires an injury in fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Here, Plaintiff has not sufficiently alleged an injury in fact. To begin, the horses at issue in the proposed supplemental complaint are unauthorized livestock, i.e., they are not wild horses. And Plaintiff does not assert it owns the horses at issue. It lacks standing to complain about impoundment notices for horses it does not own.

Second, Plaintiff generally alleges that the supposedly mislabeled horses may be sold to slaughter houses—complete speculation. Pl.'s Mot. at 12. And Plaintiff has not adequately alleged that its interest in the Salt River wild horses is concretely harmed by the Forest Service's future impoundment of other's horses. Because Plaintiff lacks standing, the Court should deny the request for an injunction.

B.  Plaintiff is unlikely to prevail on the merits of the supplemental claims.

Plaintiff has not shown likelihood of success on the merits. Plaintiff alleges that the Forest Service violated 36 C.F.R. § 262.10(c) by rounding up wild horses on April 21, 2026, before the effective date of an impoundment notice, April 27, 2026. Pl.'s Mot. at 7. Plaintiffs also allege that the re-labeling of horses on the Sitgreaves National Forest as "unauthorized livestock" and any subsequent gather and removal would violate NEPA. Pl.'s Mot at 9-10. But the claim that Federal Defendants have begun gathering before the

14

notice's effective date is wrong. *See* Ex. 3, Miller Decl. at ¶ 11. No gather activity has occurred and none took place before the effective date. Further, Plaintiff's argument regarding gathering before the effective date is now moot because of a stipulation the Forest Service entered in to in other pending litigation. *Infra* 14-15.

Plaintiff also alleges that around up on April 21 occurred involving impounding wild horses in "holding corals" which had bard wire and protruding tie wire for fencing. Pl.'s Mot. at 7. But Federal Defendants have not gathered or impounded any horses on the Sitgreaves Forest in these or any other corrals. Ex. 3, Miller Decl. at ¶ 11. Rather, it appears that the pictures Plaintiff attached to their motion show empty corrals or holding pens on the Sitgreaves National Forest, which are used by Forest Service permittees for gathering and holding livestock for transport, administering medicine, or other actions. *Id.* For these reasons, Plaintiff has failed to show that any impoundment of horses on the Sitgreaves has occurred and cannot succeed on the merits. Therefore, its request for a preliminary injunction should be denied.

### III.    Plaintiff will not suffer irreparable harm absent an injunction.

Because Plaintiff has not shown a likelihood of success on the merits, the Court can deny the injunction on that basis alone. *See, e.g.*, *Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that plaintiff is entitled to such relief." (citation omitted)). But Plaintiff also fails on the second prong.

Plaintiff claims that it will be irreparably harmed if horses continue to be impounded without proper notice and it is unable to participate in any auction for the horses. Pl.'s Mot. at 12. But Plaintiff cannot show that it will suffer clear, irreparable harm absent an injunction. As Federal Defendants identified in its Notice regarding Plaintiff's request for a preliminary injunction, Dkt No. 65, the Forest Service will not conduct any gathers or other on-the-ground removal of horses on the Sitgreaves before July 15, 2026. Dkt. No. 65 at 2. Nor has the Forest Service authorized any third parties to gather or remove horses on its behalf. *Id.* The Forest Service has issued the following notice on its website and will issue the same in a modified impoundment notice:

> "Private parties that attempt to reclaim their private livestock on National Forest Lands mut comply with all applicable law, policy, and procedures. No non-privately-owned horse may be removed from the Black Mesa and Lakeside Ranger District on the Apache-Sitgreaves National Forests without compliance with applicable state and federal law, and until the below-specified motion for preliminary injunction in above-captioned lawsuit is resolved on or before July 15, 2026. From now until July 15, 2026, all non-privately-owned horses will be subject to all provisions and protections of the Wild Free-Roaming Horse and Burros Act. Federal law prohibits causing or allowing the inhumane treatment or harassment of and the unauthorized removal or attempted removal of any wild horse from the Apache-Sitgreaves National Forests by third parties, subject to criminal penalties."

> *See* U.S. Dep't of Agric., Feral Horses & Unauthorized Livestock, https://www.fs.usda.gov/r03/apache-sitgreaves/natural-resources/forest-management/feral-horses-unauthorized-livestock; *see also* Ex. 4 (*ISPMB v. USDA*, Joint Stipulation).

Plaintiff fails to show irreparable harm if the TRO is not extended into a PI. *See* Dkt. No. 25 (determining Plaintiff failed to show irreparable harm if the TRO was not extended to a PI because the sale of horses was already halted). Because Plaintiff's supplemental claims

and motion for a preliminary injunction are based on allegations that Federal Defendants are rounding up horses before the effective date of the notice, yet the Forest Service has agreed not to impound any horses until several months from now and issue a modified notice, Plaintiff will suffer no harm absent an injunction.

### IV.     The balance of the equities and the public interest weigh against an injunction.

The public interest favors denying Plaintiff's motion. A party seeking a preliminary injunction must demonstrate both "that the balance of the equities tips in its favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. These final two factors for injunctive relief merge when, like here, the defending party is a government entity. *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Here, they weigh against issuing extraordinary injunctive relief.

Injunctive relief even when the Forst Service has not gathered horses before the effective date of the notice and when it is revising the notice to hold off on any gather activity until July would improperly prevent Federal Defendants from carrying out their mission and meeting statutory obligations, including protecting endangered species and managing the National Forest System lands to protect against degradation, without a basis. *See In Def. of Animals v. U.S. Dep't of Interior*, 737 F. Supp. 2d 1125, 1134 (E.D. Cal. 2010) (finding the public interest does not favor enjoining a gather where the agency was legally required to remove excess horses). And the equities do not support injunctive relief because Plaintiff does not own these horses and will be provided notice of any auction of horses impounded in the future in accordance with the Forest Service's regulations.

**CONCLUSION**

For the reasons above, the Federal Defendants request that the Court deny Plaintiff's motion to supplement its complaint and application for a preliminary injunction.

Respectfully submitted this 28th day of April, 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

/s/ Ashley M. Carter
Ashley Carter
Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5492
Email: ashley.carter@usdoj.gov