Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Defendant Rail Lazy H*
*Contracting and Consulting LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, <br><br> Plaintiff, <br><br> vs. <br><br> United States Government, Department of Agriculture, Tom Vilsack as acting United States Secretary of Agriculture; United States Forest Service, Robert Lever, acting in his official capacity as Forest Supervisor, Apache-Sitgreaves National Forest and Michiko Martin, acting in her official capacity as Regional Forester, Southwestern Region; Rail Lazy H Contracting and Consulting LLC d/b/a Rail Lazy H; and Johnson County Livestock Exchange, <br><br> Defendants. | Case No.: CV-24-08148-PCT-JJT <br><br> **RAIL LAZY H AND JACQUELYN HUGHES' RESPONSE TO PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION AND MOTION TO SUPPLEMENT COMPLAINT** <br><br> (Assigned to the Honorable John J. Tuchi) |

## I.   INTRODUCTION

Plaintiff has filed a sweeping Application that asks the Court to convert a tightly pleaded notice-and-procurement case about thirteen Alpine feral Horses into a sprawling NEPA/WHBA challenge to the Forest Service's management of 1,800 horses across the Apache-Sitgreaves National Forest, brought against a private contractor that, by Plaintiff's own declarant's admission, "may" or "may not" have any role in the conduct sought to be enjoined. *See* DOC. No. 64-12 ¶¶ 10, 17 (alleging only "upon information and belief" and

that impoundments may have been by "contractors, agents or private individuals and permittees"). The Federal Defendants, the only parties who could conceivably have authorized the conduct Plaintiff complains of, have informed the Court that "[t]he Forest Service . . . has not authorized any third parties to gather or remove horses on its behalf," and that no on-the-ground gather will occur before July 15, 2026. DOC. No. 65 ¶¶ 3–4.

That alone is dispositive of any preliminary injunction against Rail Lazy H. Plaintiff cannot enjoin Rail Lazy H from conducting an *agency*-authorized gather it is not conducting and has not been authorized to conduct. Plaintiff cannot enjoin Rail Lazy H from violating regulations (*e.g.*, 36 C.F.R. § 262.10) that govern *USFS* impoundments and have nothing to do with private retrievals of privately owned livestock. And Plaintiff cannot enjoin Ms. Hughes, a non-party who is not even named in the Second Amended Complaint, the Application, or the proposed Supplemental Complaint.

Plaintiff's Rule 15(d) motion fares no better. The Second Amended Complaint is a notice-of-impoundment, notice-of-sale, and federal-procurement case about the *Alpine* feral Horses (13 horses sold at the *Cleburne, Texas* auction). The proposed supplement injects (i) entirely new horses (the Heber feral Horses; up to 1,800), (ii) entirely new statutes (NEPA and the Wild Free-Roaming Horses and Burros Act), (iii) entirely new agency actions (the January 2026 FONSI and the March 9, 2026 status determination letter), and (iv) entirely new factual predicates (a forthcoming, post-July 15, 2026 USFS gather under a different regulatory framework). That is not supplementation; it is a new lawsuit. The Ninth Circuit has been clear that Rule 15(d) "cannot be used to introduce a 'separate, distinct and new cause of action.'" *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997).

For the reasons set forth below, the Application should be denied as to Rail Lazy H and Ms. Hughes, the TRO should be dissolved as to them, and the Rule 15(d) motion should be denied.

## II.    BACKGROUND

### A.    The operative pleading: thirteen Alpine Wild Horses, the Cleburne Auction, and Rail Lazy H's role as the USFS auction contractor.

Plaintiff filed this case on June 24, 2024. DOC. No. 1. The operative pleading is the Second Amended Complaint, filed March 12, 2025. DOC. No. 45. It frames the entire controversy as one about *thirteen* "Alpine Wild Horses" "recently removed from the Apache-Sitgreaves National Forest" and scheduled to be auctioned at the "Cleburne Auction" on July 24, 2024. *Id.* ¶¶ 1, 3, 28–29. The two APA claims allege only (i) inadequate notice of impoundment and notice of sale under 36 C.F.R. § 262.10(b), DOC. No. 45 ¶¶ 2, 35–39, 44–46, and (ii) violations of "Federal procurement and other regulations" governing the conduct of those auctions, *id.* ¶¶ 6–10, 47–49. Rail Lazy H is described as a "third-party contractor with the United States Forest Service that impounds, captures, and sells horses from the Apache-Sitgreaves National Forest at auctions." *Id.* ¶ 28.

### B.    The April 23, 2026 Application: a different herd, different statutes, different agency actions.

Almost two years later, Plaintiff filed the Application now before the Court. DOC. No. 64. The Application targets a different group of horses (the *Heber* feral Horses, of which Plaintiff alleges there are "up to 1800"), a different geographic focus (the broader Sitgreaves National Forest, not just the Heber feral Horse Territory), and different agency actions: the January 29, 2026 Final Decision Notice and FONSI, Ex. 7 to DOC. No. 64, and Acting Forest Supervisor Joshua Miller's March 9, 2026 letter classifying horses outside the Heber feral Horse Territory as "unauthorized livestock" under 36 C.F.R. § 222.60(b)(13) and 36 C.F.R. § 261.2, Ex. 9 to DOC. No. 64. The Application brings claims for the first time under NEPA, the Wild Free-Roaming Horses and Burros Act ("WHBA"), and an alleged "Comprehensive Animal Welfare Program" commitment housed in the Heber Wild Horse Territory Final Management Plan. DOC. No. 64 at 6-13.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

### C. The Federal Defendants' position: no gather, no third-party authorization, no emergency.

The Federal Defendants (the USDA, USFS, the Secretary, the Forest Supervisor, and the Regional Forester), have informed the Court that "the agency is still in the planning phase of any horse removal activity alleged to be at issue in Plaintiff's motion," that "the earliest the Forest Service will conduct any gathers or other on-the-ground removal activity involving these horses is July 15, 2026," and, most importantly for present purposes, that "[t]he Forest Service . . . has not authorized any third parties to gather or remove horses on its behalf." DOC. No. 65 ¶¶ 3–4. The April 2, 2026 impoundment notice, the Federal Defendants explained, is intended to alert "private owners of horses or livestock" to "retrieve their animals before Forest Service operations begin," and "[t]hose private retrieval efforts are not being undertaken by the Forest Service, and the Forest Service has not authorized the removal of any non-privately owned horses on its behalf." *Id.* ¶ 4.

### D. The TRO Order and the present briefing.

On April 24, 2026, the Court entered a TRO enjoining Defendants and "any person acting in concert or participation with them or acting at their direction or control" from "conducting, allowing, or authorizing the impoundment, movement, or sale of the Heber Wild Horses (or any reclassification thereof)." DOC. No. 66 at 4. The Court provisionally accepted the Supplemental Complaint for the limited purpose of resolving the TRO Application, expressly reserving Defendants' right to oppose Rule 15(d) supplementation in this responsive brief. *Id.* ¶ 4. The Court set responsive briefing for April 28, 2026, and a hearing on the Application for Preliminary Injunction for May 1, 2026. *Id.* ¶¶ 5–6.

## II. ARGUMENT

### A. Plaintiff's burden is heavy and is heightened where, as here, the requested injunction is mandatory and would alter the status quo.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The plaintiff must establish each of the following four elements: (1) likelihood of success on the merits; (2) likelihood

4

of irreparable harm absent relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Id.* at 20.

When, as here, the requested injunction would not merely preserve the status quo but would compel affirmative conduct, the standard is more exacting still. A mandatory injunction "goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored," and "should not issue in doubtful cases." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (cleaned up). In general, mandatory relief "[is] not granted unless extreme or very serious damage will result and [is] not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.* (quoting *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1980)). To the extent Plaintiff seeks an order compelling Rail Lazy H to do anything other than refrain from conduct it is not undertaking, that heightened standard applies.

### B.    Plaintiff cannot show a likelihood of success against Rail Lazy H.

Plaintiff's Application advances five theories: (A) violation of the impoundment-notice regulation, 36 C.F.R. § 262.10(c); (B) violation of the Comprehensive Animal Welfare Program; (C) violation of the APA's "reasoned explanation" requirement in connection with the March 9, 2026 letter; (D) violation of NEPA in connection with the same letter; and (E) entitlement to Rule 15(d) supplementation. None of those theories supports preliminary injunctive relief against Rail Lazy H, and several of them have no plausible connection to Rail Lazy H at all.

#### 1.    The 36 C.F.R. § 262.10(c) "early impoundment" theory does not run against Rail Lazy H.

##### a.    Section 262.10 governs Forest Service impoundments, not private livestock retrievals.

36 C.F.R. § 262.10 governs *Forest Service* impoundments. By its plain terms, the regulation prescribes the procedure by which "[t]he Forest officer" issues notices and impounds livestock, including the requirement that such livestock "may be impounded

without further notice any time within the 12-month period immediately following the effective date of the notice." 36 C.F.R. § 262.10(b)–(c). The regulation's text and structure are directed at agency conduct. Plaintiff's contention that any pre-April 27 activity *by Rail Lazy H or anyone else* violates that regulation conflates Forest Service action with the conduct of private parties.

The Federal Defendants have removed any doubt about the scope of agency action here: USFS has not begun an impoundment; the earliest gather will be July 15, 2026; and "[t]he Forest Service . . . has not authorized any third parties to gather or remove horses on its behalf." DOC. No. 65 ¶¶ 3–4. The pre-April 27 activity Plaintiff describes is, by USFS's own characterization, "private retrieval efforts" by private owners reclaiming their own animals. *Id.* ¶ 4. Section 262.10(c) does not regulate, prohibit, or even speak to that conduct.

        b.      <u>Frank Despain and Larry Nelson are not, and have never been, Rail Lazy H contractors.</u>

Plaintiff's *only* evidence ostensibly tying Rail Lazy H to the April 21, 2026 activity is paragraph 4 of the Fellhoelter Declaration, which asserts: "Two of Defendant Rail Lazy H's contractors, Frank Despain and Larry Nelson, working for Nelson Churley of Black Canyon Cattle, ran several Wild Horses into a holding corral off Forest Service Road 51 and then loaded them into a trailer and drove off with the Wild Horses." DOC. No. 64-4 ¶ 4.

That statement is a lie. Frank Despain and Larry Nelson are not, and have never been, contractors, employees, agents, subcontractors, or representatives of Rail Lazy H Contracting and Consulting LLC. *See* Hughes Decl. ¶¶ 5-7. Mr. Fellhoelter offers no foundation for his assertion that Despain and Nelson are "Rail Lazy H's contractors," and the assertion is wrong. Mr. Fellhoelter's own declaration in fact says Despain and Nelson were "working for Nelson Churley of Black Canyon Cattle", a third party with no relationship to Rail Lazy H. *Id.* Mr. Fellhoelter does not explain how he came to know who any of these individuals work for, what entity owned or controlled the trailer he saw, or

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

what authority (if any) underlay the activity he observed. The legal conclusion that those individuals were "Rail Lazy H's contractors" was apparently made up out of whole cloth.

Plaintiff's own organizational declarant tellingly does not even *try* to make the connection: Ms. Netherlands acknowledges she has no personal knowledge of who is conducting any impoundment, stating only, and on information and belief, that activity has begun "whether by contractors, agents or private individuals and permittees." DOC. No. 64-12 ¶ 10. That hedging language is fatal in a Court asked to enjoin a private party.

A preliminary injunction cannot rest on a foundation this thin. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Plaintiff offers nothing but speculation, and demonstrably mistaken speculation at that, to suggest that Rail Lazy H has any connection to the conduct it asks the Court to enjoin.

<blockquote>
c.   The Fellhoelter Declaration also impermissibly opines on legal conclusions.
</blockquote>

The Fellhoelter Declaration goes well beyond stating facts within its declarant's personal knowledge: it tells the Court what federal law means and announces that conduct the declarant did not personally observe "violates" federal regulations and standards. *See, e.g.*, DOC. No. 64-4 ¶ 7 ("These holding corrals violate the Comprehensive Animal Welfare Program (CAWP), which Defendant USFS agreed to abide by … Under the CAWP, the holding corrals cannot have 'holes, gaps or openings, protruding surfaces, or sharp edges"). Mr. Fellhoelter is a private citizen who watches horses near his cabin, *id.* ¶ 2; nothing in his declaration establishes any expertise in the Forest Service's CAWP, the BLM's IM-2015-151, the Heber Wild Horse Territory Final Management Plan, the regulatory framework governing wild horse and unauthorized livestock impoundments, or the standards by which compliance is judged. The same is true of Plaintiff's other declarant: Ms. Netherlands repeatedly asserts that the conduct at issue "violates" the WHBA, NEPA, the CAWP, and 36 C.F.R. § 262.10, *see* DOC. No. 64-12 ¶¶ 12, 13, 14, 17, 19, 20, again without any foundation that would qualify her to render legal conclusions to this Court.

A declaration in support of injunctive relief is competent evidence only to the extent it rests on personal knowledge and sets forth admissible facts. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (declarations not based on personal knowledge or containing inadmissible hearsay must be disregarded). Bare legal conclusions, particularly conclusions about whether a regulatory regime has been "violated," are not facts and warrant no evidentiary weight.

The Court should give no weight to Mr. Fellhoelter's or Ms. Netherlands's assertions that any party, let alone Rail Lazy H, has "violated" any provision of federal law. Stripped of those conclusions, the declarations show only that (a) somebody is moving some horses on the Forest, (b) the declarants are unhappy about it, and (c) the declarants believe, without foundation, contrary to the Federal Defendants' representation to the Court, DOC. No. 65 ¶¶ 3–4, and contrary to fact, that Rail Lazy H is responsible.

> **2. The Comprehensive Animal Welfare Program theory likewise turns on agency conduct, and Plaintiff offers no admissible evidence connecting Rail Lazy H to the corrals depicted in Exhibit 1.**

The cited Heber Wild Horse Territory Final Management Plan requires that "[a]ll operations which involve handling of horses will be conducted in accordance with the Comprehensive Animal Welfare Program" and identifies the "Forest Service range or horse program manager" as the responsible party. DOC. No. 64-5 at 2 (Horse-1). Plaintiff cites *Tyler v. Cisneros*, 136 F.3d 603, 608 (9th Cir. 1998), and *Friends of Animals v. Sparks*, 200 F. Supp. 3d 1114 (D. Mont. 2016), for the proposition that NEPA-document commitments are binding. Both of those cases hold federal agencies to commitments they made in NEPA documents – they do not extend such commitments to private contractors who never made them.

Plaintiff has offered no evidence, and certainly no admissible evidence, that Rail Lazy H built, owns, controls, or even uses the corrals depicted in Exhibit 1 to the Fellhoelter

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Declaration. The pictures show fencing in the National Forest. They do not identify Rail Lazy H. They do not identify any party. They are dated March 28, 2026, nearly a month before any of the conduct Plaintiff seeks to enjoin, DOC. No. 64-4 ¶ 6, and there is no evidence that the corrals were used for any horse-related impoundment in connection with the events at issue. Rail Lazy H did not build, install, control, or use these corrals. *See* Hughes Decl. ¶ 11.

Plaintiff's invocation of 49 U.S.C. § 80502 also fails to support an injunction against Rail Lazy H. Plaintiff also asks the Court to "prevent violations of the other animal cruelty provisions raised by Plaintiff, specifically 49 U.S.C. § 80502," and cross-references paragraphs 13 and 14 of the Second Amended Complaint, "alleging animal transportation violations by Defendant Rail Lazy H." DOC. No. 64 at 8. That request fails for three reasons.

First, 49 U.S.C. § 80502 is the federal "Twenty-Eight Hour Law" governing the transport of livestock. *See* 49 U.S.C. § 80502(a)(1). The statute commits enforcement to the United States: "On learning of a violation, the Attorney General shall bring a civil action to collect the penalty in the district court of the United States for the judicial district in which the violation occurred or the defendant resides or does business." 49 U.S.C. § 80502(c). The statute provides no private cause of action and no private remedy. Plaintiff therefore cannot use § 80502 as a basis to enjoin Rail Lazy H on its own initiative; it is the Attorney General's province, not Plaintiff's.

Second, even if § 80502 supported a private claim, the operative pleading allegations Plaintiff cites (DOC. No. 45 ¶¶ 13–14, 23) concern the 2024 transport of the Alpine Wild Horses to the Cleburne, Texas auction. Those allegations have no connection to the Heber Wild Horses, the conduct alleged in the Application, or the relief Plaintiff now seeks. Plaintiff cannot piggyback a 2024 transport-law dispute about thirteen Alpine horses onto a 2026 motion seeking emergency relief about up to 1,800 Heber horses. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (preliminary injunction requires a showing of "immediate threatened injury").

Third, Rail Lazy H is not currently transporting any of the Heber Wild Horses and has not been engaged to do so. *See* Hughes Decl. ¶¶ 12-16. There is no extant transport and no scheduled transport for the Court to enjoin under § 80502.

**3.      The APA "reasoned explanation" theory depends on agency conduct that has nothing to do with Rail Lazy H, and Plaintiff has misread the FONSI in any event.**

a.      The "reasoned explanation" requirement runs against agencies, not contractors.

The doctrine on which Plaintiff relies, that an agency must provide a "reasoned explanation" when it changes a policy that rests on prior factual findings, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016); *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 966 (9th Cir. 2015) (en banc), applies to agency action under the APA. It does not subject private contractors to APA scrutiny. The proper defendants for that claim are the Federal Defendants, not Rail Lazy H.

b.      In any event, Plaintiff has misread the FONSI: Mr. Miller did not "180-degree" his prior position.

Even setting aside that this argument has no application to Rail Lazy H, Plaintiff's underlying premise is wrong. The January 29, 2026 FONSI established an Appropriate Management Level "of 50 to 104 horses" for the *Heber Wild Horse Territory*, a roughly 19,700-acre area "centered about 5 miles southwest of Heber-Overgaard, Arizona." DOC. No. 64-7 at 1, 3. The FONSI on its face contemplates that horses *outside the Territory* may not be wild horses at all: "On the Sitgreaves National Forest, horses not meeting the definition of wild horse as defined in 36 CFR 222.60(b)(13) would be ***considered unauthorized livestock*** and removed per 36 CFR 222.63 and state law." *Id.* at 5 (emphasis added). The March 9, 2026 letter does precisely what the FONSI contemplated: it documents the responsible official's status determination, for horses outside the Territory, under the very regulation the FONSI cited. DOC. No. 64-9 at 2 ("the unclaimed horses

currently found on the Sitgreaves National Forest are 'unauthorized livestock' in accordance with Forest Service regulations per 36 CFR 261.2").

Mr. Miller's letter is, far from a reversal of the January 29 FONSI, a faithful implementation of it. Plaintiff cannot show "factual findings that contradict those which underlay [the] prior policy," *Fox*, 556 U.S. at 515, there are no contradictory findings, because the two documents address two different populations of horses (those inside the Territory and those outside it). And Mr. Miller's letter does provide a "reasoned explanation," citing: the 1974 Territory inventory of seven horses; the documented zero-population finding for 1994 and 1996 in the 10th and 11th Reports to Congress; the 2002 Rodeo–Chediski Fire damage to 54 miles of fenceline that allowed unauthorized livestock onto the Forest; and the 2017 Forest Service ethnographic study concluding the current horses are not related to the original herd. DOC. No. 64-9 at 1–2. *Kake* required no more. *See* 795 F.3d at 966. Plaintiff is unlikely to succeed on this theory even on the merits, much less to compel an injunction against a contractor that has nothing to do with the policy at issue.

### 4.    The NEPA theory in the Supplemental Complaint runs against the agency, not Rail Lazy H, and is itself substantively defective.

The proposed Fifth Claim for Relief alleges that USFS "failed to prepare or issue an Environmental Impact Statement in connection with its March Notice." DOC. No. 64-11 ¶ 47. NEPA imposes process obligations on federal agencies. *See* 42 U.S.C. § 4332(2)(C). It is not a vehicle for enjoining a private contractor. The proper defendants for any NEPA claim are the federal agencies and officials, who are already in the case. Rail Lazy H has no NEPA obligations.

Substantively, USFS *did* conduct a NEPA analysis: the Heber Wild Horse Territory Management Plan EA culminated in the Final Decision Notice and FONSI of January 29, 2026, after a formal scoping period in 2020 (1,206 comment letters), a draft EA comment period in 2021 (1,424 comment letters), and Tribal consultation. DOC. No. 64-7 at 7–9. The March 9, 2026 letter is a status determination contemplated by that very NEPA-

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

supported decision; it does not require its own EIS. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891–94 (1990) (rejecting programmatic challenges to agency conduct that does not constitute discrete final agency action with an actual or immediately threatening affect).

### 5. Plaintiff cannot establish irreparable harm, and certainly not as against Rail Lazy H.

Even if Plaintiff could show some likelihood of success against the Federal Defendants on some claim, it cannot establish irreparable harm sufficient to support injunctive relief against *Rail Lazy H*. The Federal Defendants have committed not to undertake any gather before July 15, 2026. DOC. No. 65 ¶ 3. They have committed not to authorize any third party to gather on their behalf. *Id.* ¶ 4. There is therefore no imminent agency action that Rail Lazy H could even conceivably participate in.

Plaintiff's irreparable-harm theory rests on Ms. Netherlands' "upon information and belief" speculation that the 1,800 horses "are currently being shipped directly to slaughterhouses in Mexico." DOC. No. 64-12 ¶ 17. That assertion is not personal knowledge; it is speculation, and it is squarely contradicted by the Federal Defendants' representation to the Court. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs.*, 844 F.2d at 674. "A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief." *Id.*

### 6. The balance of equities and the public interest do not support enjoining a contractor that is not engaged in the conduct at issue.

The balance of equities tips against an injunction. Plaintiff seeks to enjoin Rail Lazy H from conduct it is not undertaking, by reference to a regulatory framework that does not apply to it, in support of a federal policy challenge that is not properly directed at it. The public interest is not served by sweeping in a private party with no involvement in the challenged conduct merely because Plaintiff has named that party in a complaint about a different controversy involving different horses.

**C.    The Court should deny the Rule 15(d) motion to supplement.**

**1.    Rule 15(d) does not permit using a supplemental pleading to introduce a new and different cause of action.**

Rule 15(d) permits a party "to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). It is, as the Ninth Circuit has held, "a tool of judicial economy and convenience." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). But Rule 15(d) is not a vehicle to "introduce a separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997). In *Neely*, the Ninth Circuit *vacated* a supplementation order where the supplemental complaint added a new constitutional challenge to a different statute, holding that the district court abused its discretion by permitting it. *See id.* at 402–03.

**2.    Plaintiff's proposed supplement is the paradigm of a new and different cause of action.**

The Second Amended Complaint is about *13 Alpine Feral Horses* sold at the *Cleburne, Texas* livestock auction in July 2024. DOC. No. 45 ¶¶ 1, 3, 28–29. Its two APA claims allege (i) inadequate impoundment and sale notices under 36 C.F.R. § 262.10(b), (d), and (ii) violations of "Federal procurement and other regulations." *Id.* ¶¶ 44–49.

The proposed Supplemental Complaint is about *up to 1,800 Heber Feral Horses* across the Sitgreaves National Forest, in connection with (i) the January 29, 2026 FONSI, (ii) the March 9, 2026 status-determination letter, and (iii) an April 2, 2026 impoundment notice. DOC. No. 64-11 ¶¶ 14, 18, 29–32. The Supplemental Complaint adds a new jurisdictional invocation under NEPA and the WHBA, *id.* ¶ 6, a new NEPA claim (the Fifth Claim for Relief) requiring an EIS, *id.* ¶¶ 44–51, and substantially expanded factual allegations addressed at agency reclassification of horses on a different geographic footprint and under a different regulatory framework (36 C.F.R. § 222.60(b)(13); 36 C.F.R. § 222.63) than the operative pleading (36 C.F.R. § 262.10(b), (d)). These include different horses, different forest area, different statutes (NEPA and WHBA, not just APA notice

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

provisions), different regulations, different agency actions, and different transactional events. The supplement is not a continuation of the existing controversy; it is a new lawsuit. Under *Neely*, supplementation should be denied.

### 3.    *Griffin* does not save Plaintiff's motion.

Plaintiff invokes *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 226–27 (1964), which permitted a supplemental complaint adding new claims and parties in a long-running school-desegregation case. *Griffin* is the textbook example of supplementation in service of "the same old cause of action", a continuing constitutional challenge to the same defendants' continuing conduct of the same school system. *See id.* at 226. Plaintiff's proposed supplement, by contrast, would graft a NEPA/WHBA challenge to a separate herd, separate forest territory, and separate set of agency decisions onto a notice-and-procurement case. That is exactly the kind of expansion the Ninth Circuit rejected in *Neely*. *See* 130 F.3d at 402–03.

### 4.    Rail Lazy H would suffer prejudice if supplementation were allowed.

Permitting supplementation would prejudice Rail Lazy H, which has been litigating a notice-and-procurement case about the Cleburne Auction for nearly two years. The proposed supplement would force it to defend against entirely new theories of liability arising from agency action it had no role in, in connection with horses (and, allegedly, conduct) it had no contractual or factual relationship to. Plaintiff's appropriate course is to file a new action against the Federal Defendants, who are the proper defendants for a NEPA/WHBA challenge, and to litigate the Heber controversy in its own forum.

### D.    If any preliminary injunction issues, it should not run against Rail Lazy H, and any bond ordered by the Court should be substantial.

Should the Court conclude that some preliminary injunctive relief against the Federal Defendants is warranted, that relief should be tailored to those Defendants and the conduct they are alleged to have undertaken or will undertake. Rail Lazy H should not be subject to an injunction based on a regulatory framework directed at agency conduct, in

14

connection with a gather USFS has committed not to undertake until July 15, 2026 (if at all), and that USFS expressly has not authorized Rail Lazy H to participate in.

To the extent any injunction issues that *does* affect Rail Lazy H, Rule 65(c) requires Plaintiff to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). The cases Plaintiff cites for waiver, *Cal. ex rel. Van De Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319 (9th Cir. 1985) and *Friends of the Earth, Inc. v. Brinegar*, 518 F.2d 322 (9th Cir. 1975), addressed the equities between an environmental non-profit and a *governmental* entity charged with statutory enforcement. Rail Lazy H is a private contractor whose business operations could be materially impaired by a wrongful injunction; the rationale for waiver does not extend to it. If the Court enjoins Rail Lazy H, an adequate bond should be posted to protect against losses Rail Lazy H would sustain if the injunction proves to have been wrongfully entered.

## III.   CONCLUSION

For the foregoing reasons, the Court should: deny Plaintiff's Application for Preliminary Injunction as against Defendant Rail Lazy H Contracting and Consulting LLC, and dissolve the TRO as against Rail Lazy H; deny Plaintiff's Motion to Supplement Complaint under Rule 15(d), and; to the extent any preliminary injunction issues affect Rail Lazy H, condition such relief on the posting of an appropriate bond pursuant to Rule 65(c).

**RESPECTFULLY SUBMITTED** this 28th day of April 2026.

**MILLS + WOODS LAW, PLLC**

By   */s/ Sean A.Woods*
        Robert T. Mills
        Sean A. Woods
        5055 North 12th Street, Suite 101
        Phoenix, AZ 85014
        *Attorneys for Defendant Rail Lazy H*
        *Contracting and Consulting LLC*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the DOC. System for filing and transmittal of a Notice of Electronic Filing to the following DOC. registrants:

Troy B. Froderman
tfroderman@frlawgroup.com
tdiefenbach@frlawgroup.com
Rita M. Gara
rgara@frlawgroup.com
**FR LAW GROUP PLLC**
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
(602) 566-7425

Randall M. Weiner
randall@weinercording.com
Annmarie Cording
annmarie@weinercording.com
**WEINER & CORDING**
3100 Arapahoe Ave., Ste. 202
Boulder, CO 80303
(303) 440-3321

*Attorneys for Plaintiff*

Gabriel Lopez
gabriel.lopez2@usdoj.gov
Ashley M. Carter
ashley.carter@usdoj.gov
**U.S. DEPARTMENT OF JUSTICE**
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 532-5492
(202) 532-3278
*Attorneys for Federal Defendants*


        */s/ Ben Dangerfield*

16