Randall M. Weiner (CO Bar No. 23871)
Annmarie Cording (CO Bar No. 42524)
WEINER & CORDING
3100 Arapahoe Avenue, Suite 202
Boulder, Colorado 80303
(303) 440-3321
randall@randallweiner.com
annmarie@weinercording.com
*Pro Hac Vice*

Troy B. Froderman (012717)
Rita M. Gara (037349)
FR LAW GROUP PLLC
4745 North 7th Street, Suite 210
Phoenix, AZ 85014
602-566-7425
tfroderman@frlawgroup.com
rgara@frlawgroup.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| Salt River Wild Horse Management Group, | Case No. **CV24-8148-PCTJJT** |
|---|---|
| Plaintiff, | |
| vs. | **MOTION TO SUPPLEMENT THE ADMINSTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE** |
| United States Government, Department of Agriculture, et. al, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Salt River Wild Horse Management Group, Inc. ("SRWHMG"), by and through counsel, respectfully moves this Court to order supplementation of the administrative record ("AR") prepared by Defendant United States Forest Service (the

1

"Forest Service" or "USFS"), which contains a mere eight (8) document (not including the "certification" of AR). By the paucity of numbers alone, the AR provided to the Court and Plaintiff is facially incomplete and fails to "explain [the agency's] course of conduct or grounds of decision." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). Just as significantly, these documents do not permit Plaintiff to address the significant issues raised in this two-year old lawsuit concerning its, and other horse adoption groups, exclusion from wild horse auctions run by Defendant Rail Lazy H Contracting and Consulting LLC d/b/a Rail Lazy H ("Rail Lazy H"). Nor do documents in the current AR allow Plaintiff to adequately challenge Rail Lazy H's incidents of self-dealing and animal cruelty which occurred prior to and during the wild horse auctions it sponsored.

Accordingly, the AR must be enlarged to encompass the documents listed in **Section 3** below. Further, Plaintiff requests that it be permitted to take the depositions of the Forest Service supervisor in charge of the challenged notices and Rail Lazy H's 30(b)(6) representative concerning its exclusionary auctions, self-dealing and animal cruelty incidents. Only through these two limited depositions can the agency's challenged decisions be explained.

In short, the issues in this case cannot be properly analyzed and fairly decided without the enlargement of the AR as requested.

## II.    Background

SRWHMG commenced this civil action for declaratory and injunctive relief against the Forest Service, its horse impoundment and auction contractor, and a private auction operation in Texas for violating Federal notice requirements for an impoundment (noticed

2

December 15, 2023) and subsequent livestock auction sale (noticed July 18, 2024) of 13 horses removed from the Apache-Sitgreaves National Forest in Arizona (hereafter referred to as the "Alpine Wild Horses"). ECF No. 44 (Court's 2/26/25 Order) at 2. Plaintiff simultaneously sought a temporary restraining order ("TRO") to delay or prevent the auction. *Id.* The TRO was granted but allowed to expire and proceed to a sale of the impounded horses at a rescheduled auction.[1] *Id.* at 3.

Plaintiff subsequently filed its first amended complaint ("FAC") on July 29, 2025 and a second amended complaint ("SAC") on March 13, 2025. Defendant filed motions to dismiss both the FAC and SAC, which were denied in part (FAC), and fully denied (SAC), allowing this action to proceed. *See* ECF Nos. 44 and 54.

In its Order denying the motion to dismiss the SAC, the Court recognized three essential allegations contained in Plaintiff's SAC:

- **Defective Notices.** Defendants violated the Administrative Procedure Act ("APA") by failing "to comply with the notice requirements of 36 C.F.R. § 262.10" (ECF No. 54 at 2);

- **Exclusionary Auctions.** Defendants violated the APA "under 5 U.S.C. § 706(2)(A), (D) for failure to comply with regulations and laws in conducting auctions" (*Id.* at 2), including the violation of "the 'maximum return at minimum cost' and 'full and open competition' statutory and regulatory requirements by permitting self-dealing" (ECF No. 54 at 9); and

- **Animal Cruelty.** Defendants violate "statutory requirements prohibiting animal cruelty in conducting the subject auctions by engaging in animal cruelty resulting in injury to the horses through their processes in the capture, transport, loading, and auction of the horses"(*Id.*).

---

[1] Plaintiff participated in the rescheduled auction and purchased all Alpine Wild Horses sold. Second Declaration of Simone Netherlands ("2d Netherlands Decl."), ¶ 4.

On February 4, 2026, the Court ordered the parties to participate in a Rule 16 scheduling conference to address, in part, "[t]he subjects on which discovery will be needed, when discovery will be completed, and whether discovery will be conducted in phases or limited to or be focused upon particular issues." ECF No. 58, ¶ 7. After the Federal Defendants objected that discovery, if any, should await their production of the record, the Court Ordered them to serve a copy of the AR by April 10, 2026, and established a briefing schedule for any motion filed by Plaintiff to supplement the AR. ECF No. 62 at 2. The Court further ordered the parties to "engage in good faith settlement talks" after the filing of Plaintiff's reply. *Id.*

### III.    Argument

**1. The Court may "identify and plug holes" in the AR to permit extra-record evidence in four circumstances, two of which apply here.**

It has long been established that "the district court may inquire outside the administrative record when necessary to explain the agency's action." *Animal Def. Council v. Hodel*, 840 F.2d at 1436. When agency action is not explained through the administrative record the court may "obtain from the agency, either through affidavits *or testimony*, such additional explanation of the reasons for the agency decision as may prove necessary." *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (emphasis added). Indeed, the 9th Circuit subsequently recognized the following four exceptions that allow for the introduction of extra-record evidence: (1) where necessary to determine whether the agency has considered all relevant factors and has explained its decision; (2) when the agency has relied on documents not in the record; (3) when supplementing the record is necessary to

4

explain technical terms or complex subject matter; and (4) when plaintiffs make a showing of agency bad faith. *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436; *Lands Council v. Forester of Region One of the United States Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2004) (these exceptions allow the court to "identify and plug holes in the administrative record.").

Furthermore, the (first) relevant factors exception "permits a district court to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis," and therefore assess "whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014).

The AR provided in this case is insufficient to allow the Court to "develop a background against which it can evaluate the integrity of the agency's analysis." *Id.* Nor does it show that "the agency has considered all relevant factors and has explained its decision." (Factor 1). Finally, it does not include records that the agency must have relied on, such as information about on-line and out-of-state auctions and auctions privately conducted by Rail Lazy H. (Factor 2).

In short, the AR must be supplemented to "fill in the holes" that prevent informed discussion by Plaintiff and a reasoned analysis by the Court.

## 2. Defendant Rail Lazy H Contracting and Consulting LLC is an agent of the USFS and is a *de facto* arm of the government.

The obligations of the Forest Service to comply with the APA extend to a private party that is a *de facto* arm of the government. Defendant Rail Lazy H is the government contractor in charge of impounding and confining wild horses for the wild horse auctions and, from time to time, transporting these horses to third party auction houses. As such, it is acting as an agency or arm of the government agency that hires it.

In determining when a party is an agency, the 9th circuit considers six factors:

> (1) the extent to which the alleged agency performs a governmental function; (2) the scope of government involvement in the organization's management; (3) whether its operations are financed by the government; (4) whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental; (5) whether the organization is referred to as an agency in other statutes; and (6) whether the organization is treated as an arm of the government for other purposes, such as amenability to suit under the Federal Tort Claims Act.

*In re Hoag Ranches*, 846 F.2d 1225, 1227-28 (9th Cir. 1988). These factors are considered collectively. *Id.*

Rail Lazy H meets these factors.

First, Rail Lazy H performs government functions as it works primarily to remove wild horses from the Apache-Sitgreaves National Forest pursuant to its contracts with the Forest Service. Second, the government has been deeply involved in the entity's management, as demonstrated by its contract with Rail Lazy H and, presumably, frequent emailed instructions. Rail Lazy H rounded up Alpine Wild Horses on behalf of the Forest

6

Service, pursuant to the USFS' contractual directives. *See* AR 17, 22-48, 127EAC24R0001 – Region 3, Apache Sitgreaves National Forest Unauthorized Livestock Removal USFS – 0017. Operations for the removal of horses require constant discussion with the Forest Service and inspection by Forest Service employees. *Id.* at USFS-0022. Third, the operations are fully funded by the Service. *See generally id.* Proceeds from the horse auctions are returned to the Service. *Id.* at USFS-0025. Fourth, the government has the sole proprietary interest in engaging in horse roundups on public lands, demonstrating that the government's interest is primary, not incidental. Factors (5) and (6) are inapplicable.

By rounding up wild horses on behalf of the Forest Service and pursuant to its directives, Rail Lazy H serves as a *de-facto* arm of the Forst Service under the *Hoag Ranches* factors. Its conduct is attributable to the federal government. Thus, it is subject to the same disclosure requirements in an APA case as the Forest Service.

**3. Enlargement of the AR with the following documents and two depositions are necessary "to explain the agency's action" and allow meaningful Court review.**

As discussed above, in order to "identify and plug holes in the administrative record," the AR must be supplemented with additional document and depositions of the Forest Service supervisor in charge of the impoundments and sales and the contractor's representative. *See Lands Council v. Forester of Region One of the United States Forest Serv.*, 395 F.3d at 1030.

The documents that have been omitted from the AR are as follows:

1. Documents pertaining to auctions of Alpine Wild Horses that occurred between January 2025 and July 2024;

2.  The 2023 and 2024 Alpine Wild Horses Impoundment and Sale Notices, including one issued on June 11, 2023;

3.  Communications between Rail Lazy H and potential bidders concerning the Alpine Wild Horses auctions;

4.  Communications between Rail Lazy H and the Forest Service between August 1, 2023 and December 31, 2024; and

5.  Additional contractual documents between the Forest Service/BLM and Rail Lazy H, and between Rail Lazy H and the Johnson County Livestock Exchange ("Johnson Exchange"), 2d Netherland Decl., ¶¶ 14-16.

The AR should be supplemented with records available to the Service and Rail Lazy H when it published the Alpine Wild Horses notice requirements, engaged in exclusionary auctions, and facilitated incidents of animal cruelty. **Table 1**, below, outlines the additional documents (and depositions) sought, and the reasons they should be included in the AR.

The Extra-Record Discovery which Plaintiff wishes to conduct includes:

1.  Deposition of Service's Contractor Lazy H Owner / Operator

2.  Deposition of Service's Supervisor

The taking of depositions to supplement an administrative record have been permitted where necessary for effective judicial review. *Pub. Power Council v. Johnson,* 674 F.2d 791, 794, 796 (9th Cir. 1982) (two depositions permitted to fill "serious gaps" in APA case challenging agency action); *Int'l Res. Recovery, Inc. v. United States*, 59 Fed. Cl. 537, 542 (2004) (depositions allowed in APA case as there was no "tidy record"); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324 (Fed. Cir.2001) (expansion of administrative record for "explanation by deposition of the contracting officer's reasons for accepting" certification); *Antarctic Support Associates v.*

*United States*, 46 Fed. Cl. 145, 148 (2000) (four depositions of Government officials allowed due to shortcomings in administrative record).

These depositions are necessary to explain the agency's "course of conduct or grounds of decision," *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436, since the record does not adequately describe the agencies conduct and omits documents used during the auctions including the physical sale notice and the full record of auctions that took place pursuant to these notices. Moreover, they will allow Plaintiff to obtain evidence of agency bad faith, the fourth *Hoag Ranches* factor. *See* 2d Netherlands Decl, ¶ 11; *Pub. Power Council v. Johnson,* 674 F.2d at 795 (depositions in 9th Circuit allowed under bad faith exception). Further, sworn testimony by Rail Lazy H and the government will lead to the disclosure of material evidence concerning the methods and reasoning surrounding the intentional exclusion of targeted members of the public, including Plaintiff, from the auctions. *See* 2d Netherlands Decl. ¶¶ 11-12.

In short, agency's action is not adequately explained and cannot be effectively reviewed without the depositions of (1) the Forest Service supervisor over the impoundment and sale notices and (2) the Rule 30(b)(6) representative of Rail Lazy H concerning the exclusionary auctions and animal cruelty incidents. *See* 2d Netherlands Decl."), ¶¶ 8-18. Accordingly, enlargement of the AR with the following documents and two depositions are necessary "to explain the agency's action" and allow meaningful Court review:

| Document / Discovery Sought | Type | Reason for Inclusion/Consideration |
|---|---|---|
| **Full Record of Horse Auctions removed from thew Apache-Sitgreaves National Forest, including pictures of horses, both online and physical auctions that took Place Between August 2022 and now, including any auctions SRWHMG may not be aware of.** | Omitted Document | To address allegations that notice was inadequate, and horses that were caught, were not added to auctions but instead taken by contractor, the Service should provide a full record of auctions occurring between August 2022 and Dec 2025, including notices thereof. |
| **Additional contracts between the Forest Service/BLM and Rail Lazy H outlining the contractor's responsibilities with respect to the Alpine Wild Horses and all horses in the Apache Sitgreaves National Forest.** | Omitted Document | These contracts explain agency "course of conduct or grounds of decision." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436. |
| **Communications between Rail Lazy H and the Forest Service between January 1, 2021 and now.** | Omitted Document | Internal emails between Lazy H and the Service are required to explain agency "course of conduct or grounds of decision." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436. |
| **All Communications between Lazy H and potential bidders, including those who were denied entry to auctions.** | Omitted Document | Emails between Lazy H and potential bidders who were denied entry is required to explain agency "course of conduct." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436. |

10

| Physical Sale and Impound Notices, including those from 6/11/24 | Omitted Document | The AR is lacking the physical notices of sale, specifically the 6/11/24 notice at issue in this proceeding. |
| --- | --- | --- |
| Deposition of Forest Service's Contractor Rail Lazy H Owner / Operator | Extra-Record Discovery | The deposition of Rail Lazy H representative to assess alleged federal law violations concerning self-dealing, improper exclusion of buyers, and transportation of horses in violation of animal cruelty laws. |
| Deposition of Forest Service's Supervisor in charge of Notices for auctions in the Apache-Sitgreaves National Forest that took place between August 2022 and now | Extra-Record Discovery | The deposition of the Service's supervisor to fill in the holes concerning the impoundment and sales occurring of Alpine Wild Horses between 2022 and 2025. |

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the record be enlarged to include the documents listed above, and that the Court authorize the taking of depositions of (1) the Forest Service supervisor over the impoundment and sale notices and (2) the Rule 30(b)(6) representative of Rail Lazy H concerning the exclusionary auctions and animal cruelty incidents.

Dated this 6th day of July, 2026.

WEINER & CORDING

By:    /s/ Randall M. Weiner
       Randall M. Weiner (CO Bar No. 23871)
       Annmarie Cording (CO Bar No. 42524)

11

FR LAW GROUP PLLC
Troy B. Froderman (012717)
Rita M. Gara (037349)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 6, 2026, I electronically transmitted the

foregoing document and its exhibits to the Clerk's Office using the ECF System for filing

and caused a copy to be electronically transmitted to all parties of record.


 */s/ Randall M. Weiner*
Randall M. Weiner