ADAM R.F. GUSTAFSON, Principal Deputy Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

Gabriel Lopez (FL Bar No. 1017629)
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 598-0881
Email: Gabriel.lopez2@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group, | Case No.: 3:24-cv-08148-JJT |
| Plaintiff, | **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINSTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE [DKT. NO. 79]** |
| v. | |
| U.S. Department of Agriculture, et al., | |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

STANDARD OF REVIEW .................................................................................................. 4

ARGUMENT ...................................................................................................................... 7

    I.    PLAINTIFF FAILS TO DEMONSTRATE THAT ANY OF THE
          NARROW EXCEPTIONS PERMITTING SUPPLEMENTATION
          OF THE ADMINISTRATIVE RECORD APPLY ...................................... 7

          A.    Records of horse auctions from the Apache-Sitgreaves
                National Forests between August 2022 and the present ................. 14

          B.    Contracts and communications between the Defendants, and
                communications between Lazy H and potential bidders ................. 16

          C.    The Court should refuse to allow the deposition of the Forest
                Service's supervisor in charge of notices for auctions in the
                Apache-Sitgreaves National Forests between August 2022 and
                the present ...................................................................................... 20

CONCLUSION .................................................................................................................. 22

**TABLE OF AUTHORITIES**

**Cases**

*Animal Def. Council v. Hodel,*
840 F.2d 1432 (9th Cir. 1988) ..................................................................................... 4, 6

*Animal Legal Def. Fund v. Vilsack,*
110 F. Supp. 3d 157 (D.D.C. 2015) .................................................................................. 8

*Audubon Soc'y of Portland v. Zinke,*
No. 17-cv-00069, 2017 WL 6376464 (D. Or. 2017) ....................................................... 11

*Bennett v. Spear,*
520 U.S. 154 (1997) ............................................................................................................ 8

*Blue Mountains Biodiversity Project v. Jeffries,*
72 F.4th 991 (9th Cir. 2023) .......................................................................................... 5, 9

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
889 F.3d 584 (9th Cir. 2018) ........................................................................................... 14

*Camp* v. *Pitts,*
411 U. S. 138 (1973) ......................................................................................................... 22

*Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior,*
667 F. Supp. 2d 111 (D.D.C. 2009) ................................................................................... 8

*Citizens to Pres. Overton Park v. Volpe,*
401 U.S. 402 (1971) ..................................................................................................... 6, 22

*Ctr. for Biological Diversity v. Wolf,*
447 F. Supp. 3d 965 (D. Ariz. 2020) ................................................................................. 5

*Dakota Tribal Indus. v. United States,*
34 Fed. Cl. 295 (1995) ..................................................................................................... 15

*Dep't of Commerce v. New York,*
588 U.S. 752 (2019) ..................................................................................................... 6, 22

*Fence Creek Cattle Co. v. U.S. Forest Serv.,*
602 F.3d 1125 (9th Cir. 2010) .............................................................................. 6, 10, 11

*Fla. Power & Light Co. v. Lorion,*
470 U.S. 729 (1985) .............................................................................................. 4, 10, 22

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n,*
345 F. Supp. 3d 1 (D.D.C. 2018) ...................................................................................... 8

iii

*Goffney v. Beccerra*,
  995 F.3d 737 (9th Cir. 2021) ............................................................................... 5

*In re Hoag Ranches*,
  846 F.2d 1225 (9th Cir. 1988) ........................................................................... 18

*Int'l Soc'y for the Prot. of Mustangs & Burros v. U.S. Dep't of Agric.*,
  No. CV-22-08114, 2022 WL 3588223 (D. Ariz. July 28, 2022) ................................... 3

*Lands Council v. Powell*,
  395 F.3d 1019 (9th Cir. 2005) ........................................................................... 10

*Nw. Env't Advocs. v. United States Fish & Wildlife Serv.*,
  No. 3:18-cv-01420-AC, 2019 WL 6977406 (D. Or. Dec. 20, 2019) ........................ 6, 11

*Oceana, Inc. v. Ross*,
  290 F. Supp. 3d 73 (D.D.C. 2018) ........................................................................ 5

*Pac. Shores Subdiv. v. U.S. Army Corps of Eng'rs*,
  448 F. Supp. 2d 1 (D.D.C. 2006) ......................................................................... 8

*Pinnacle Armor, Inc. v. United States*,
  923 F. Supp. 2d 1226 (E.D. Cal 2013) ................................................................ 11

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
  713 F.3d 175 (4th Cir. 2013) ............................................................................. 16

*Safari Club Int'l v. Jewell*,
  111 F. Supp. 3d 1 (D.D.C. 2015) ..................................................................... 8, 13

*San Luis & Delta-Mendota Water Auth. v. Jewell*,
  747 F.3d 581 (9th Cir. 2014) .............................................................................. 6

*San Luis & Delta-Mendota Water Auth. v. Locke,*
  776 F.3d 971 (9th Cir. 2014) ......................................................................... 6, 10

*Stand Up for California! v. U.S. Dep't of Interior*,
  71 F.Supp.3d 109 (D.D.C. 2014) ........................................................................ 20

*Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*,
  100 F.3d 1443 (9th Cir. 1996) ...................................................................... 10, 13

*Taylor Energy Co. LLC v. United States ex rel. United States Coast Guard Nat'l Pollution Funds Ctr.*,
  No. CV 20-1086 (JDB), 2021 WL 538052 (D.D.C. Feb. 15, 2021) ............................ 5

*Thompson v. U.S. Dep't of Labor*,
  885 F.2d 551 (9th Cir. 1989) ...................................................................... 5, 15, 20

*UnitedHealthcare Ins. Co. v. Azar*,
  316 F. Supp. 3d 339 (D.D.C. 2018)...........................................................................8

**Statutes**

49 U.S.C. § 80502(a)(1) ...........................................................................................4

5 U.S.C. § 706 ..........................................................................................................4

5 U.S.C. § 706(2)(A) .................................................................................................4

5 U.S.C. § 706(2)(D) .................................................................................................4

**Rules**

RCFC 15(a) .............................................................................................................15

**Regulations**

36 C.F.R. § 262.10....................................................................................................4

36 C.F.R. § 262.10(b).................................................................................................3

36 C.F.R. § 262.10(d).................................................................................................3

41 C.F.R. § 102-38.5 ............................................................................................3, 12

**Other Authorities**

Pub. L. No. 92-195, 85 Stat. 649 (1971) ..................................................................3

**INTRODUCTION**

In this case, Plaintiff Salt River Wild Horse Management Group challenged the July 2024 scheduled auction of certain horses found on the Apache-Sitgreaves National Forests. 2d Am. Compl. ¶¶ 1–4, 36–38, Dkt. No. 45. Plaintiff alleges the U.S. Forest Service ("USFS or Forest Service") violated certain regulations when it impounded the horses and scheduled them for auction. *Id*. Plaintiff also alleges that the collective defendants engaged in "animal cruelty during the capture, transport, loading and auction" of the horses. *Id.* ¶ 11. On April 10, 2026, Federal Defendants filed the certified Administrative Record and distributed copies to the parties. Dkt. No. 63. The record, certified under oath by the Forest Range Program Manager for the Apache-Sitgreaves National Forests, contains the documents considered directly and indirectly by the USFS in making the challenged decisions.

Plaintiff now argues that the Administrative Record needs to be supplemented because the Administrative Record (1) does not explain the Forest Service's course of conduct, (2) does not permit Plaintiff to address its alleged exclusion from wild horse auctions run by Defendant Rail Lazy H Contracting and Consulting LLC d/b/a Rail Lazy H ("Lazy H"), and (3) does not allow Plaintiff to adequately challenge Rail Lazy H's alleged incidents of self-dealing and animal cruelty. *See* Pl.'s Mot. to Suppl. the Admin. Record and Consider Extra-Record Evidence ("Pl.'s Mot."), Dkt. No. 79, at 1. Therefore, according to Plaintiff, this Court should compel USFS to include documents that lie outside the scope of allegations recognized by the Administrative

1

Procedure Act ("APA"), are not in the possession of the USFS, and were not considered by USFS in deciding to conduct the impoundment and subsequent July 2024 auction of horses.

The Court should deny Plaintiff's motion. It is nothing more than a fishing expedition. Granting Plaintiff's motion would potentially add thousands of pages of material that USFS *did not consider* when issuing the July 2024 Notice or scheduling the auction, nor even a part of the Forest Service's December 2024 Notice of Intent to Impound Unauthorized Livestock under which the horses that are the subject of this litigation were impounded. Plaintiff points to nothing to support that either the Service did consider the materials it seeks to add or that the documents it seeks to add are necessary for reviewing the limited agency actions at issue here: the USFS's decision to impound horses and sell them at auction in July 2024. Plaintiff's scattered collection of documents about other, past agency decisions that USFS did not consider do not belong in this record. The Administrative Record provides all the information that the Court needs—and may legally consider—to resolve Plaintiff's claims. And the Court should certainly reject Plaintiff's effort to depose an agency decision-maker. Its request is unsupported by any evidence of bad faith. Indeed, Plaintiff admits it wishes to depose an employee of the USFS to look for evidence of bad faith. That is not how APA cases work and is contrary to Supreme Court precedent. For these reasons, and for the reasons described below, the Court should deny Plaintiff's motion.

**BACKGROUND**

On March 12, 2025, Plaintiff filed its Second Amended Complaint, alleging three primary claims against the Defendants. Plaintiff alleges that USFS violated the regulatory notice requirements codified in 36 C.F.R. § 262.10(b) by failing to publish a notice 15 days in advance of the capture of feral horses in the Apache-Sitgreaves National Forests. 2d Am. Compl. ¶ 2.[1] Plaintiff also alleges that USFS failed to publish a separate notice of sale five days before the auction of those horses with the date, time, and location of the sale in violation of 36 C.F.R. § 262.10(d). *Id.* These actions, Plaintiff contends, prevented it from "meaningfully participating in the Cleborne Auction and other auctions" on July 24, 2024. 2d Am. Compl. ¶¶ 1–4.

As it relates to Defendant Lazy H, Plaintiff alleges that Lazy H (1) prevented Plaintiff from participating in its horse auctions, (2) imposed unreasonable and selective participation restrictions on Plaintiff, (3) ignored and rejected participant applications with no explanation, and (4) failed to offer impounded "Alpine Wild Horses" at public auction, all of which Plaintiff contends violates federal procurement requirements codified in 41 C.F.R. § 102-38.5, et seq. 2d Am. Compl. ¶¶ 5–8. Plaintiff also alleges that Lazy H has engaged in self-dealing, shill bidding, and has worked for personal gain. *Id*. at ¶¶ 9-10.

---

[1] In both the Second Amended Complaint and the instant Motion to Supplement the Administrative Record and Consider Extra-Record Evidence, Dkt. No. 79, Plaintiff refers to the impounded horses by the shorthand "Alpine Wild Horses." However, Plaintiff has never argued in this case that the horses on the Apache-Sitgreaves National Forests are wild horses protected under the Wild Horse and Burro Act, Pub. L. No. 92-195, 85 Stat. 649 (1971), and they cannot raise such claims now. Such claims have, in any event, already been rejected. *See Int'l Soc'y for the Prot. of Mustangs & Burros v. U.S. Dep't of Agric.*, No. CV-22-08114, 2022 WL 3588223, at *1 (D. Ariz. July 28, 2022), recons. denied, No. CV-22-08114, 2022 WL 3585831 (D. Ariz. Aug. 22, 2022).

Lastly, Plaintiff alleges that the Defendants collectively engaged in unlawful animal cruelty during the capture, transport, loading and auction of the "Alpine Wild Horses" in violation of 49 U.S.C. § 80502(a)(1). *Id.*, at ¶¶ 11-15.

On January 20, 2026, the Court denied the Federal Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. Dkt. No. 54. In its Order, the Court found that Plaintiff had brought two claims: "(1) an Administrative Procedure Act ("APA") violation under 5 U.S.C. § 706(2)(A), (D)  for failure to comply with the notice requirements of 36 C.F.R. § 262.10; and (2) an APA violation under 5 U.S.C. § 706(2)(A), (D)  for failure to comply with regulations and laws in conducting auctions." Dkt. No. 54 at 2. With respect to Plaintiff's second claim, this Court "infe[red] final agency actions on the part of Defendants" with respect to Plaintiff's allegations of animal cruelty in the capture, transport, loading, and auction of the horses, and the allegations of self-dealing against Lazy H. *Id.* at 8-9.

## <u>STANDARD OF REVIEW</u>

Judicial review of an agency action is governed by the APA, which limits the scope of judicial review to the administrative record. *See* 5 U.S.C. § 706 (in reviewing an agency action "the court shall review the whole record or those parts of it cited by a party"). Under the APA, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (internal quotation marks and citation omitted); *see also Animal Def. Council v.*

*Hodel,* 840 F.2d 1432, 1436 (9th Cir. 1988) (same), *amended on other grounds,* 867 F.2d 1244 (9th Cir. 1989). The record "consists of all documents and materials directly or indirectly considered by agency decision-makers," whether those materials support or detract from the reasonableness of the decision at issue. *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks, citations, and emphasis omitted). The record is not, however, "every scrap of paper that could or might have been created" by the agency. *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 973 (D. Ariz. 2020) (internal citations and quotation marks omitted). "[A]n agency's statement of what is in the record is subject to a presumption of regularity" and courts "presume that an agency properly designated the Administrative Record absent clear evidence to the contrary." *Goffney v. Beccerra*, 995 F.3d 737, 748 (9th Cir. 2021) (internal quotation marks and citation omitted); *Blue Mountains Biodiversity Project v. Jeffries*, 72 F.4th 991, 997 (9th Cir. 2023).

A plaintiff may move to alter the administrative record prepared by the agency in two ways—completion or supplementation. A plaintiff may seek to "supplement" the record by introducing "extra-record evidence . . . that was not initially before the agency but that the plaintiff believes should nonetheless be included in the administrative record." *Taylor Energy Co. LLC v. United States ex rel. United States Coast Guard Nat'l Pollution Funds Ctr.*, No. CV 20-1086 (JDB), 2021 WL 538052, at *2 (D.D.C. Feb. 15, 2021) (quoting *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018)).

5

A party seeking supplementation must first demonstrate that the administrative record is inadequate for review of the challenged action. *San Luis & Delta-Mendota Water Auth. v. Jewell* ("*Jewell*"), 747 F.3d 581, 603 (9th Cir. 2014) (*citing Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988)); *Nw. Env't Advocs. v. United States Fish & Wildlife Serv.*, No. 3:18-cv-01420-AC, 2019 WL 6977406, at *8 (D. Or. Dec. 20, 2019) ("Moreover, there is ample authority, in the Ninth Circuit and this district, demonstrating that a party seeking to invoke the *Lands Council* exceptions must first show the administrative record is inadequate to effectively review the challenged action") (citations omitted)). This is a "heavy burden" that requires a showing that additional materials "are necessary to adequately review" an agency's decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). Courts may not supplement the record under this exception for the purpose of "questioning the agency's . . . analyses or conclusions." *Locke*, 776 F.3d at 993; *see also Jewell*, 747 F.3d at 602–03.

Inquiry into the mental processes of administrative decisionmakers is generally prohibited unless there is evidence of bad faith or improper behavior. *See Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) ("[I]nquiry into the mental processes of administrative decisionmakers is usually to be avoided. And where there are administrative findings that were made at the same time as the decision . . . there must be a strong showing of bad faith or improper behavior before such inquiry may be made.") (internal citation omitted); *see also Department of Commerce v. New York*, 588 U.S. 752,

790-91 (2019) ("[P]retext is virtually never an appropriate or relevant inquiry for a reviewing court to undertake . . . [w]e have never before found *Overton Park*'s exception satisfied, much less invalidated an agency action based on 'pretext.'")

**ARGUMENT**

Granting Plaintiff's motion would result in an administrative record that is unwieldy, inaccurate because it does not reflect the Service's consideration, and irrelevant because it would include documents unnecessary to assessing the only USFS decisions Plaintiff challenges. More importantly, Plaintiff fails to demonstrate exceptional circumstances allowing supplementation of the record with information that the agency did not consider in publishing the notice of impoundment, scheduling the auction, or contracting with Lazy H for the auction. And Plaintiff points to no evidence of bad faith so the Court cannot order a deposition. For these reasons, the Court should deny Plaintiff's motion.

I.    **PLAINTIFF FAILS TO DEMONSTRATE THAT ANY OF THE NARROW EXCEPTIONS PERMITTING SUPPLEMENTATION OF THE ADMINISTRATIVE RECORD APPLY.**

Plaintiff asks this Court to supplement the Administrative Record with any and all records of any horse auctions between August 2022 and the present, contracts between the Defendants, communications between the Defendants from January 1, 2021 to the present, communications between Lazy H and any bidders, and two irrelevant depositions as extra-record evidence. But Plaintiff has failed to demonstrate that any of the limited exceptions to the record review rule apply.

7

The administrative record for a particular case is defined by the identity of the decision(s) being challenged. *Animal Legal Def. Fund v. Vilsack*, 110 F. Supp. 3d 157, 161 (D.D.C. 2015) (noting that "the Court must consider which decision(s) form the basis for the administrative record in this case"); *see also Safari Club Int'l v. Jewell*, 111 F. Supp. 3d 1, 3 (D.D.C. 2015) (citing 5 U.S.C. § 706 and holding "[j]udicial review of an agency action under the APA is limited to the administrative record that was before the agency at the time *it made its decision*") (emphasis added). The record "is comprised of those documents that were before the administrative decisionmaker" for such decision(s). *Cape Hatteras Access Pres. All. v. U.S. De't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009). Said another way, the documents that compose the administrative record need only reflect "the consummation of [the agency's] decision-making process." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation modified).

As discussed above, the agency is entitled to a "strong presumption of regularity, that it properly designated the administrative record." *Animal Legal Def. Fund*, 110 F. Supp. 3d at 159 (citations omitted); *accord Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d. at 114. That is because "an agency is in the best position to know on what bases it made its decision." *UnitedHealthcare Ins. Co. v. Azar*, 316 F. Supp. 3d 339, 345 (D.D.C. 2018); *see also Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 6-7 (D.D.C. 2018) (citing *Pac. Shores Subdiv.*, 448 F. Supp. 2d at 5) (noting that as decisionmaker, the agency "is generally in the

best position to identify and compile the record"). Otherwise, non-agency parties would be free to define the administrative record based on the materials they believe the agency must (or should) have considered.

Given these principles, courts presume an administrative record is complete unless a plaintiff overcomes this presumption with "clear evidence to the contrary." *Id.* at 55. Among other things, the plaintiff "must offer 'reasonable, non-speculative' grounds for its belief that the documents should have been considered by the agency.

Courts "place a thumb on the scale against supplementation of the [administrative record]." *Blue Mountains Biodiversity Project*, 72 F.4th at 998. There are only four limited circumstances when district courts may consider extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. For Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). "[T]hese exceptions are narrowly construed and applied . . . so that the exception does not undermine the general rule." *Lands Council*, 395 F.3d at 1030. Thus, the party seeking supplementation bears a "heavy burden" of demonstrating that extra-record materials are necessary to adequately review the agency decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010); *San Luis & Delta-*

9

*Mendota Water Auth. v. Locke* ("*Locke*"), 776 F.3d 971, 992 (9th Cir. 2014) ("When a reviewing court considers evidence that was not before the agency, it inevitably leads the reviewing court to substitute its judgment for that of the agency . . . effectively conduct[ing] a de novo review of the agency's action rather than limiting itself to the deferential procedural review that the APA's arbitrary or capricious standard permits." (quotations and citations omitted)). Thus, extra-record evidence may be considered only "in rare circumstances," *see Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985), and the party seeking to supplement the record bears the burden of demonstrating that such rare circumstances exist and that a relevant exception applies, *Locke*, 776 F.3d at 993.

Plaintiff here argues that both the first exception (the relevant factors exception), and the second exception (reliance on extra-record documents by the agency) apply, but fails to satisfy its "heavy burden" of demonstrating that supplementation with extra-record materials is necessary to adequately review the agency decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). Under the "relevant factors" exception, the moving party must identify relevant factors that were "wholly neglected" by the deciding agency, lest the exception swallow the rule. *Nw. Env't Advocs.*, 2019 WL 6977406 at *9; *Audubon Soc'y of Portland v. Zinke*, No. 17-cv-00069, 2017 WL 6376464 at *6 (D. Or. 2017) (citing *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1234 (E.D. Cal 2013)). Plaintiff identifies none. And under the second exception, Plaintiff points to

10

no evidence that the agency considered the documents it proffers. It fails to carry its heavy burden. It cannot expand the record to see what might be out there or to argue that the agency "must" have considered documents it did not.

Plaintiff's motion suffers from a threshold problem: it consistently expands the scope of Plaintiff's allegations in trying to justify extra-record evidence. But as set forth by Plaintiff's Second Amended Complaint, and as this Court recognized, the allegedly improper Forest Service actions that Plaintiff challenges here are: (1) the Forest Service's alleged failure to publish a notice 15 days in advance of the capture of feral horses in the Apache-Sitgreaves National Forests; (2) the Forest Service's alleged failure to publish a separate notice of sale five days before the auction of those horses with the date, time, and location of the sale; and (3) (together with Lazy H) alleged unlawful animal cruelty during the capture, transport, loading and auction of the "Alpine Wild Horses". 2d Am. Compl. ¶¶ 2, 11-15.

Every other claim and allegation in Plaintiff's Complaint Plaintiff attributes to the non-federal defendant, Lazy H. Plaintiff alleges that Lazy H (1) prevented Plaintiff from participating in its Alpine Wild Horse auctions, (2) imposed unreasonable and selective participation restrictions on Plaintiff, (3) ignored and rejected participant applications with no explanation, and (4) failed to offer impounded "Alpine Wild Horses" at public auction, all of which Plaintiff contends violates federal procurement requirements codified in 41 C.F.R. § 102-38.5, et seq. 2d

11

Am. Compl. ¶¶ 5–8. Plaintiff also alleges that Lazy H has engaged in self-dealing, shill bidding, and has worked for personal gain. Id. at ¶¶ 9-10.

These allegations about private party action are irrelevant to the scope of the administrative record. The administrative record reflects the agency's consideration— what the Service considered, directly or indirectly, in deciding to impound and auction horses. As the agency has certified, and as is entitled to a presumption of regularity, the Administrative Record includes all those documents. Plaintiff's claims about what Lazy H may have done during the capture, transport, loading, and auction of the feral horses cannot expand the scope of the Administrative Record: whatever documents Lazy H may have about its internal, post-decisional operations, they could not have been before the USFS when it decided to impound and auction the horses, and such after-the-fact private documents cannot inform whether the agency's earlier decision was arbitrary and capricious. The Service has included its award to and contractual engagement with Lazy H in the record, A.R. USFS-0004-USFS-0063 (April 10, 2026), but whatever other documents Plaintiff speculates that Lazy H may have are not grounds for supplementing the administrative record. Indeed, the very allegations Plaintiff makes in its motion and the fact of this dispute only highlights that Count II of Plaintiff's complaint is not actually an APA claim challenging a federal agency's final decision.

In any event, Plaintiff offers no explanation and no evidence or basis in fact to support adding the extra-record documents it lists. Plaintiff goes no farther than

reciting the legal elements of the relevant factors exception to allow supplementation of the Administrative Record. Pl.'s Mot. 5. Plaintiff avers that the record provided "is insufficient to allow the Court to 'develop a background against which it can evaluate the integrity of the agency's analysis'" without the addition of a bevy of materials unrelated to the decisions undertaken by USFS in this matter. *Id.* Yet, Plaintiff's argument "misconstrues the purpose of the exception." *Safari Club Int'l*, , 111 F. Supp. 3d, at 5 (D.D.C. 2015). The relevant factors exception "only applies when Federal Defendants fail to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision. . . ." *Id.* (quoting *Pinnacle Armor, Inc. v. United States*, 923 Supp. 2d. 1226, 1234 (E.D. Cal. 2013)).

So long as the record reflects consideration of the general subject matter addressed within the documents Plaintiff identifies, the "relevant factors" exception does not permit supplementation, even if the documents Plaintiff seeks to include "might have supplied a fuller record." *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450-51 (rejecting extra-record evidence containing information that could "be extracted from the record"); *see also Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018). Plaintiff seeks to inappropriately expand the scope of its Second Amended Complaint beyond the July 2024 auction and its related notice to an administrative complaint regarding any horse auction that has occurred *within the past 4-5 years*. This request is entirely unsupported. The Administrative Record already contains information on the issues

13

identified by Plaintiff in the Second Amended Complaint. Plaintiff identifies *no* relevant factors USFS failed to consider in making the decisions at issue here. The question is not whether the record provides a sufficient "background" against which to assess the agency's actions. But given the presumption of regularity and weight against supplementation, the question is whether Plaintiff has met its heavy burden to add documents showing that USFS entirely failed to consider a relevant factor. Because Plaintiff does not even say *what* factor it alleges USFS failed to consider, it fails to carry this burden and the Court should deny Plaintiff's motion.

A.    *Records of horse auctions from the Apache-Sitgreaves National Forests between August 2022 and the present.*

Plaintiff argues that any and all records of horse auctions from the Apache-Sitgreaves National Forests between August 2022 and the present are relevant to address the allegations that the July 16, 2024 notice was inadequate. Pl.'s Mot. 5, 10. Plaintiff contends that the relevant factors exception applies because the records sought by Plaintiff would "allow the Court to 'develop a background against which it can evaluate the integrity of the agency's analysis.'" *Id.* (citation omitted). However, the standard anchors the analysis of the Administrative Record to those documents that the agency considered in making its decision. *Thompson*, 885 F.2d at 555 (9th Cir. 1989).

Plaintiff provides no reasons why 4-5 years of auction records are relevant to address allegations that the July 16, 2024 notice was inadequate. Nor does Plaintiff even say what could be gleaned from those records about the July 2024 auction.

14

Indeed, the Declaration Plaintiff appends to the motion as Exhibit 1 goes no further than to state that the Forest Service issued notices for two additional auctions, on August 25, 2024 and in September 2024, which Plaintiff concedes they were aware of. Dkt. No. 79-1, at 2-3. Notably, Plaintiff has never contested these separate notices in court, either in a new complaint or when it amended its complaint here, despite stating in the affidavit that these notices are inadequate. Nor can Plaintiff now attempt to challenge these notices without seeking leave to amend their Second Amended Complaint to include them. RCFC 15(a); *see, e.g.*, *Dakota Tribal Indus. v. United States*, 34 Fed. Cl. 295, 298 n.2 (1995); cf. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").

Plaintiff puts forth no logical connection between the documents they request and how that would show whether the agency considered all relevant facts and explained its decision with respect to the July 2024 sale notice and corresponding auction. Plaintiff does not come close to providing reasonable, non-speculative grounds for their new contention that the record in this case should be expanded to include documents pertaining to all auctions of "Alpine Wild Horses" that occurred between August 2022 and the present. Importantly, none of these records will aid the Court in its review of the challenged agency action—whether a single notice complied with a regulation. That challenge can be assessed by reviewing the notice and the

15

regulation, not other, unchallenged notices the agency did not consider. Plaintiff's arguments are conclusory, and they do not meet their high burden.

B.    *Contracts and communications between the Defendants, and communications between Lazy H and potential bidders.*

Plaintiff argues that contracts between the Forest Service and Lazy H, communications between the Forest Service and Lazy H between January 1, 2021 and the present, and communications between Lazy H and potential bidders are necessary to "explain agency 'course of conduct or grounds of decision.'" Pl.'s Mot. 6-7, 10. With respect to the contract between the Forest Service and Lazy H, the relevant contract has already been provided. A.R. USFS-0004-00063 (April 10, 2026). The terms of the contract, the incorporated guidelines, and the delineated scope of work clearly lay out the terms by which Lazy H was to abide sufficient to address Plaintiff's allegations of improper conduct in the gather, transport, and sale of the horses. A.R. USFS-0022-0050 (April 10, 2026). If there is even any proper claim before this Court over which it has jurisdiction relating to USFS's contracting with Lazy H for the July 2024 impoundment and auction, the relevant contract is in the record and no other contracts are necessary to assess the USFS decisions Plaintiff challenges.

None of the communications between the Forest Service and Lazy H and between Lazy H and potential bidders bear on the USFS's decisions that Plaintiff challenges and so cannot be added to the record. Primarily, these communications, as Plaintiff appears to describe, relate to the actions of Lazy H in performing its

16

contractual duties. For instance, communications with private parties about any auctions would not involve the Forest Service, would not inform the Forest Service's decisions to issue an impoundment notice or sale notice, and would not have been and could not have been considered by the agency. And certainly any communications after the dates of the notices cannot be a valid part of considering the agency's decisions to issue those notices—they did not even exist when the USFS acted.

What's more, Lazy H is not a federal agency. Indeed, Plaintiff tacitly concedes that most of its claims lie against Lazy H, not the Forest Service, despite stating that the Forest Service directly undertook these actions. Dkt. No. 79-1, at 11, 14, 15. Plaintiff raises, for the first time, the argument that since Lazy H is a government contractor, it is therefore a de-facto agent of the Government, and the Administrative Record must be expanded to include any documents generated by the third-party contractor, citing *In re Hoag Ranches*, 846 F.2d 1225, 1227-28 (9th Cir. 1988). Pl.'s Mot. 6-7.

However, Plaintiff both misreads and misapplies this case law. *Hoag Ranches* is not a test to determine whether a contractor is an agent of a federal agency. In *Hoag Ranches*, the plaintiff sought to appeal from a bankruptcy court's order denying a motion for a rehearing as untimely. The plaintiff argued that the creditor, a credit association, was a federal agency, which would have granted the debtor an additional 30 days to file their notice of intent to appeal. The court ruled that the Stockton Production Credit Association was not a federal agency within the meaning of the

federal appellate rules, as it was a private institution despite operating under federal charter. *Hoag Ranches*, 846 F.2d at 1228-29 (9th Cir. 1988). This case does not stand for a rule that the government must include in its administrative record documents from a private contractor that were not before it when it made the decision under challenge.

Lazy H is a private entity, free to contract with any other party, not just the federal government. Plaintiff argues that because Lazy H performs functions for which it has contracted with the Forest Service, it must be a federal agency. This is not so. The Forest Service is not involved in any capacity with Lazy H's management. Plaintiff points to no evidence to the contrary. Lazy H had a contract for specific work. Lazy H is not on a permanent retainer for any and all future horse gathers and associated auctions. A contract with a private party is not sufficient to show "deep involvement with the entity's management," as Plaintiff speculates. Pl.'s Mot. 6. Plaintiff's assumption that there are "frequent emailed instructions" between the parties are similarly unavailing and entirely speculatory. And if *Hoag* applies at all, Plaintiff misapplies the fourth element, which is whether the government has a proprietary interest in the alleged agency, not *the action* for which the private entity has been engaged. The Forest Service has no proprietary interest in this private corporation, nor does Plaintiff allege one.

Furthermore, taking Plaintiff's argument to its logical conclusion, this would mean that *any* private entity that contracts with a federal agency to perform a task,

18

which the agency is authorized to perform under both statute and regulation, would become a federal agency in and of themselves under the *Hoag* factors. Moreover, this would require that *Lazy H itself* aggregate and collate an Administrative Record corresponding to "the consummation of its decision-making process" and final agency action at issue in this matter. Pl.'s Mot. 7 ("[Lazy H] is subject to the same disclosure requirements in an APA case as the Forest Service.") Plaintiff cites no case law that stands for the proposition that a federal agency is required to produce all materials generated by an agent, or even a contractor, as part of the Administrative Record. Nor should that be so, as any such materials would fall outside the realm of the decision being challenged – USFS's decision to issue impound and sale notices, as Plaintiff presents not evidence that such documents were directly or indirectly considered by agency decisionmakers. *See Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal quotation marks, citations, and emphasis omitted).

Plaintiff's assertions are no more than an attempt to transpose what amounts to a dispute over the legality of actions by a third-party contractor with whom Plaintiff has a sordid history into an administrative claim against the Forest Service itself. Most of Plaintiff's claims in the Second Amended Complaint relate to actions undertaken by Lazy H pursuant to the contract that has been produced. The documents Plaintiff identifies in trying to support its claims of exclusion from horse auctions (communications between Lazy H and potential bidders) are not properly part of the record in an APA case against USFS. They were not generated by, nor kept in the

19

possession of the Forest Service. And even if they were within the Forest Service's possession, courts have held that an agency's possession of certain records is not sufficient to show that the same records were considered by the agency when challenging a decision under the APA; mere possession triggers no requirement to include such documents in the administrative record. *Stand Up for California! v. U.S. Dep't of Interior*, 71 F.Supp.3d 109, 117 (D.D.C. 2014). Nor is the administrative record any document "that any agency employee has ever created, reviewed, or placed in a file." *Id.* Plaintiff completely fails to connect any alleged communications between the Forest Service and Lazy H to one of the limited exceptions that would allow the extraordinary relief of supplementing the record. And communications between private parties, including communications after the USFS decision being challenged, cannot aid this Court's review of the agency's decision. The Court should reject Plaintiff's request to add these documents.

C.     *The Court should refuse to allow the deposition of the Forest Service's supervisor in charge of notices for auctions in the Apache-Sitgreaves National Forests between August 2022 and the present.*

Plaintiff asserts that the deposition of the Forest Service's Supervisor is necessary to "fill in the holes concerning the impoundment and sales occurring of Alpine Wild Horses between 2022 and 2025." Pl.'s Mot. 8-10. Plaintiff contends that this falls into the exception allowing the Court to review extra-record materials that "explain the agency's course of conduct or grounds of decision." Pl.'s Mot. 9 (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988)). This too misses

20

the mark. As previously stated, the decision by the Forest Service in this case was the **July 2024** notice and scheduled auction of the horses. So if the current record "lacks" information about *other* impoundments and sales besides the July 2024 sale, such as sales in 2022, 2023, or 2025, that would not be a basis for supplementing the record—Plaintiff challenges no decisions and no auctions except for the July 2024 sale. And if Plaintiff means to explore any alleged violations of federal law such as self-dealing, the exclusion of buyers from auction, and mistreatment of horses during transportation, as an alleged "course of conduct," those relate solely to Lazy H, not the Forest Service.

Probing a decisionmaker's subjective mental reasoning is distinct from the judicial task of evaluating whether the decision itself was objective, considering all of the materials before the decisionmaker at the time he made the decision. *Overton Park*, 401 U.S. at 420 (1971). And the testimony of the decisionmaker, which is not at issue, cannot be deemed properly part of the administrative record in any event, because it did not exist until after the agency decision had been made. See *Florida Power & Light Co.* v. *Lorion*, 470 U. S. 729, 743 (1985) ("'[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court'" (quoting *Camp* v. *Pitts*, 411 U. S. 138, 142, 93 S. Ct. 1241, 36 L. Ed. 2d 106 (1973) (*per curiam*))).

21

In any event, and more importantly, such a deposition is not permitted in this APA case. Plaintiff claims this deposition will allow it to *obtain* evidence of agency bad faith. Pl.'s Mot. 9. But Plaintiff has never previously alleged bad faith against the Forest Service. Inquiry into the mental processes of administrative decisionmakers is generally prohibited unless there is evidence of bad faith or improper behavior. *See Overton Park*, 401 U.S. at 420 (1971) ("[T]here must be a strong showing of bad faith or improper behavior before such inquiry may be made.") (internal citation omitted); *see also Department of Commerce*, 588 U.S. 752, 790-91 (2019) ("[P]retext is virtually never an appropriate or relevant inquiry for a reviewing court to undertake . . . [w]e have never before found *Overton Park*'s exception satisfied, much less invalidated an agency action based on 'pretext.'")

Regardless, it turns the exception to record review on its head. Actual evidence of bad faith can be a basis to allow a deposition. Complete speculation about it is not a basis to explore for it in a deposition. The mental processes of agency decision-makers are off limits in APA cases absent a heavy showing of bad faith. Plaintiff alleges none. It thus cannot obtain a deposition of anyone in this APA case.

**CONCLUSION**

The Court should decline to supplement the Administrative Record with any of the documents suggested by Plaintiff, or the depositions requested, because the record contains all the materials that USFS directly or indirectly considered in deciding to impound and auction horses in July 2024. Most of the documents Plaintiffs identify

are irrelevant to this Court's consideration of the July 2024 auction and its associated notice and do not demonstrate that the Forest Service failed to consider any relevant factor. Plaintiff's assertion that the Court will be "hampered" in its evaluation of the merits of this case is premised upon an un-called for expansion of the allegations of their Second Amended Complaint. Plaintiff's record motion seeks to turn this case into one in which the Court reviews many actions of the Forest Service over many years. That is not this Court's role in an APA case, is contrary to the complaint, and would create a record comprised of potentially thousands of irrelevant documents, without any basis in law. For the reasons set forth above, Federal Defendants respectfully request that this Court deny Plaintiff's motion to supplement the Administrative Record and consider extra-record evidence.

Respectfully submitted this 29th day of July, 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

 /s/ Gabriel Lopez
Gabriel Lopez
Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 598-0881
Email: Gabriel.lopez2@usdoj.gov