Robert T. Mills (Arizona Bar #018853)
Sean A. Woods (Arizona Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Defendant Rail Lazy H*
*Contracting and Consulting LLC*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Salt River Wild Horse Management Group,<br><br>Plaintiff,<br><br>vs.<br><br>United States Government, Department of Agriculture, Tom Vilsack as acting United States Secretary of Agriculture; United States Forest Service, Robert Lever, acting in his official capacity as Forest Supervisor, Apache-Sitgreaves National Forest and Michiko Martin, acting in her official capacity as Regional Forester, Southwestern Region; Rail Lazy H Contracting and Consulting LLC d/b/a Rail Lazy H; and Johnson County Livestock Exchange,<br><br>Defendants. | Case No.: CV-24-08148-PCT-JJT<br><br>**RAIL LAZY H AND JACQUELYN HUGHES' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE**<br><br>(Assigned to the Honorable John J. Tuchi) |

## I. **INTRODUCTION**

Plaintiff's motion rests on five principal authorities. In *Camp v. Pitts*, the Supreme Court vacated an order that expanded the record. In *Animal Defense Council v. Hodel*, an appeal from this District, the Ninth Circuit affirmed an order limiting review to the record and prohibiting discovery. In *Southwest Center for Biological Diversity v. United States Forest Service*, also from this District and also against the Forest Service, the Ninth Circuit affirmed an order striking extra-record documents. In *Lands Council v. Powell*, the page

Plaintiff pin cites holds the exceptions are "narrowly construed and applied." In *San Luis & Delta-Mendota Water Authority v. Locke*, the page Plaintiff pin cites assigns the burden to the party seeking admission and forbids using extra-record evidence "to judge the wisdom of the agency's action."

Plaintiff quotes only fragments and then omits what each decision actually held. Defendants Rail Lazy H Contracting and Consulting LLC and Jacquelyn Hughes ("Rail Lazy H") join and incorporate the Federal Defendants' arguments concerning the scope and composition of the administrative record, Doc. 82 at 4 to 15, and will not repeat them.[1] Rail Lazy H writes separately because two of Plaintiff's requests are aimed at Rail Lazy H specifically, and because one of them, a Rule 30(b)(6) deposition of a private co-defendant, is unsupported by any authority Plaintiff has offered and unaddressed by any brief before this Court.

There are multiple defects throughout Plaintiff's motion.

**First, Plaintiff seeks a record for decisions it has never challenged.** The Forest Service certified the record for one action, the July 16, 2024 Notice of Sale of Impounded Livestock. Doc. 63-2. Plaintiff demands every auction document from August 2022 to the present and every communication between Rail Lazy H and the Forest Service since January 1, 2021.

**Second, Plaintiff's theory that Rail Lazy H is a "de facto arm of the government" rests on a case about appellate filing deadlines that does not support their position.** *In re Hoag Ranches* asked whether a production credit association was an "agency" for the sixty-day appeal window under Federal Rule of Appellate Procedure 4(a)(1). It held that it was not. Plaintiff also attributes to *Hoag Ranches* a "fourth" factor of agency bad faith. No such factor exists.

---

[1] Rail Lazy H does not adopt, and expressly declines to adopt, any characterization in Doc. 82 concerning the allocation of liability or responsibility among the defendants. Rail Lazy H reserves all rights, defenses, and positions on the merits.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**Third, no discovery is open in this case.** The scheduling order permitted Plaintiff to *include* a discovery request in this motion and reserved everything else. Doc. 62 at 2.

The motion should be denied in its entirety.

## II. THE MOTION SEEKS A RECORD FOR DECISIONS PLAINTIFF HAS NOT CHALLENGED.

Rail Lazy H incorporates Doc. 82 at 7 to 15 on the scope of the certified record. Plaintiff cannot identify the agency action it is challenging. The motion says a notice "issued on June 11, 2023" was omitted. Mot. at 8. Three pages later it demands the "6/11/24 notice at issue in this proceeding." Mot. at 11. Neither date matches the certified July 16, 2024 Notice of Sale. Plaintiff also relies on contract 127EAC24R0001, Mot. at 7, while the contract in the record is 127EAV24C0008. Across twelve pages the motion states the scope of its own request five different ways, including a range that runs backward, "between January 2025 and July 2024." Mot. at 7. Furthermore, the number of documents in an administrative record is not what matters. Plaintiff makes the argument that the record holds "a mere eight (8) document." Mot. at 1. The record is not "every scrap of paper that could or might have been created." *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 973 (D. Ariz. 2020). Nor does it matter that additional documents "might have supplied a fuller record" if they do not "address issues not already there." *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (quoting *Friends of the Earth v. Hintz*, 800 F.2d 822, 829 (9th Cir. 1986)). One of the eight documents is the sixty-page removal contract at USFS-0004 through USFS-0063, which is most of the record by page count and on which Plaintiff's own motion relies.

Plaintiff calls the animals "Alpine Wild Horses" six times in this motion and seventeen times in the Second Amended Complaint. The label carries an implication of protection under the Wild Free-Roaming Horses and Burros Act of 1971, Pub. L. No. 92-195, 85 Stat. 649. Plaintiff has never pleaded a claim under that Act. This Court has identified the claims in this case as two, both under the APA: failure to comply with the notice requirements of 36 C.F.R. § 262.10, and failure to comply with regulations and laws

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

in conducting auctions. Doc. 54 at 2. That distinction is not academic in this District. In *International Society for the Protection of Mustangs and Burros v. U.S. Department of Agriculture*, No. CV-22-08114-PHX-SPL (D. Ariz.), the court denied a preliminary injunction that would have barred the sale and removal of horses captured on the Apache National Forest and then denied reconsideration. The order denying reconsideration explains that "[a] primary issue with Plaintiff's argument was Plaintiff's lack of meaningful evidence showing that horses existed on the [Apache National Forest] when the WHA passed in 1971." Order of Aug. 22, 2022, at 2. Documents and testimony concerning the status of horses as protected wildlife are not relevant to the notice and auction claims actually before this Court, and Plaintiff may not expand the record by relabeling the animals.

Furthermore, the majority of Plaintiff's requests are for post-decision material. Post-decision material "may not be advanced as a new rationalization either for sustaining or **attacking** an agency's decision." *Id.* Every request reaching into 2025 and 2026 fails on that ground alone.

## III. <u>THE GOVERNING STANDARD FORECLOSES THIS MOTION.</u>

Judicial review is confined to the record already in existence. *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The Ninth Circuit recognizes four narrow exceptions. *Sw. Ctr.*, 100 F.3d at 1450.

Plaintiff quotes eleven words from *Lands Council v. Powell* for the proposition that the exceptions "identify and plug holes in the administrative record," 395 F.3d 1019, 1030, then stops mid-passage. The full text reads:

> These limited exceptions operate to identify and plug holes in the administrative record. **Though widely accepted, these exceptions are narrowly construed and applied.**

*Id.* (emphasis added). The next paragraph explains that the scope of the exceptions "is constrained, so that the exception does not undermine the general rule," because liberal

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

admission of new evidence would put courts "in effect, de novo rather than with the proper deference to agency processes." *Id.*

The Ninth Circuit has held that the burden is on the Plaintiff: "the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). That burden requires showing the additional materials "are necessary to adequately review" the decision. *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010). "We place a thumb on the scale against supplementation of the AR." *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 446 (9th Cir. 2023) (as amended Apr. 16, 2024). *Blue Mountains* affirmed the denial of a motion to supplement in a Forest Service case, holding the movant "has not met its heavy burden to show that the additional materials sought are necessary to adequately review the Forest Service's decision." *Id.* (quoting *Fence Creek*, 602 F.3d at 1131). The agency's designation also carries a presumption of regularity. *Goffney v. Becerra*, 995 F.3d 737, 747 to 48 (9th Cir. 2021).

Extra-record evidence cannot be used to attack the agency's judgment. The relevant factors exception "does not permit district courts to use extra-record evidence to judge the wisdom of the agency's action," and evidence comes in "only to help the court understand whether the agency complied with the APA's requirement that the agency's decision be neither arbitrary nor capricious." *Locke*, 776 F.3d at 993.

## IV. RAIL LAZY H IS NOT A FEDERAL AGENCY, AND PLAINTIFF'S OWN AUTHORITY HOLDS THE OPPOSITE.

Plaintiff devotes Section 2 of its motion to the claim that Rail Lazy H is "a de facto arm of the government," Mot. at 6, and therefore "subject to the same disclosure requirements in an APA case as the Forest Service," *id.* at 7. The argument rests on one case, and that case does not support it.

**A. *Hoag Ranches* Decides When an Appeal Period Runs, Not What an Agency Must Disclose.**

The opinion opens: "This motion raises the question whether a Production Credit Association is an agency of the United States for the purpose of extending the appeal period to 60 days under Fed.R.App.P. 4(a)(1)." *In re Hoag Ranches*, 846 F.2d 1225, 1226 (9th Cir. 1988). The six factors Plaintiff recites were drawn from decisions applying 28 U.S.C. § 451 "either for the purpose of invoking jurisdiction under 28 U.S.C. Sec. 1345 or to establish the time in which an answer must be filed under Fed.R.Civ.P. 12(a)." *Id.* at 1227. The words "administrative record" and "Administrative Procedure Act" appear nowhere in the opinion.

**B. *Hoag Ranches* Held the Entity Was Not an Agency.**

In *Hoag,* in determining whether the Production Credit Association was in agency, found that it was "not and dismiss the appeal for lack of jurisdiction." *Id.* at 1226. Weighing the same six factors Plaintiff recites, the court concluded that "the balance tips toward treating PCA's as private entities." *Id.* at 1229. Plaintiff cites pages 1227 to 1228 for the opposite conclusion.

**C. The "Fourth *Hoag Ranches* Factor" Plaintiff Cites Does Not Exist.**

Plaintiff writes that the depositions "will allow Plaintiff to obtain evidence of agency bad faith, the fourth *Hoag Ranche*s factor.*"* Mot. at 9. The fourth *Hoag Ranches* factor is "whether persons other than the government have a proprietary interest in the alleged agency and whether the government's interest is merely custodial or incidental." 846 F.2d at 1227. Bad faith is the fourth extra-record exception under *Southwest Center*, 100 F.3d at 1450, a different test in a different body of law. Plaintiff has merged two frameworks and misattributed one to the other.

**D. The Ninth Circuit Has Applied These Factors to a Private Federal Contractor and and Rejected Agency Status.**

In *Lake v. Ohana Military Communities, LLC*, 14 F.4th 993 (9th Cir. 2021), the court confirmed that the *Hoag Ranches* factors determine "whether an entity falls within

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

28 U.S.C. § 451's definition of agency," *Id.* at 1005, and applied them to a private company that owned and operated housing on a Marine Corps base under a federal privatization statute, on land the Navy still owned in fee. The holding was categorical: "None of the six I*n re Hoag Ranches* factors support finding Ohana an 'agency.'" *Id.*

The first factor is the one Plaintiff leads with, and *Lake* disposes of it in terms that fit this case exactly:

> Merely leasing housing to a servicemember cannot itself be a governmental function . . . . Otherwise, every private housing (or other service) provider that leases to a servicemember would perform a governmental function.

*Id.* Plaintiff is making the same arguments as in *Lake.* The only difference is this is a livestock removal case instead of a housing case. If performing a task the government could perform, under a government contract, makes a company a federal agency, then every federal vendor becomes one. *Lake* also held that a plausible connection is not enough absent a showing tied to the facts: "Certainly, there may be situations where leasing housing on a military installation might perform a governmental function. But Defendants have not shown that Ohana performs a governmental function in this specific factual context." *Id.* at 1006.

### E. **Plaintiff's Evidence of Control is the Evidence the Ninth Circuit Holds Insufficient.**

Plaintiff argues that "[o]perations for the removal of horses require constant discussion with the Forest Service and inspection by Forest Service employees." Mot. at 7. *Lake* answers that directly. It is not enough that "the regulation is highly detailed and . . . the private firm's activities are highly supervised and monitored," *id.* at 1004 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 153 (2007)), and no federal relationship arises "simply because a federal agency 'directs, supervises, and monitors a company's activities in considerable detail,'" *id.* (quoting *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1100 (9th Cir. 2018)).

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Plaintiff does not cite *Lake*. Plaintiff concedes two of the six factors are "inapplicable," Mot. at 7, and supports the second factor with the word "presumably," *id.* at 6.

## V. <u>THE RULE 30(b)(6) DEPOSITION OF RAIL LAZY H SHOULD BE DENIED.</u>

Plaintiff asks the Court to order the "Rule 30(b)(6) representative of Rail Lazy H" to testify "concerning the exclusionary auctions and animal cruelty incidents." Mot. at 9. The scheduling order permitted Plaintiff to *include* in this motion "any request for limited discovery," and reserved every question that would follow: "If the Court grants any aspect of the motion, the Court will set a schedule going forward at that time." Doc. 62 at 2. Nothing in that order authorized discovery. Plaintiff is seeking an end-around order for discovery in a motion to supplement an administrative record that is already complete. The record consists of what the agency considered when it made its decisions. Testimony taken in 2026 about a 2024 notice was not before the agency and could not have been. "[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. at 142. Rail Lazy H's corporate testimony is, by definition, a new record made initially in the reviewing court.

Furthermore, Plaintiff's only theory for reaching Rail Lazy H's internal operations is that Rail Lazy H is a *de facto* federal agency. As already discussed herein, Rail Lazy H is not a governmental agency or even an arm of a governmental agency. What remains is a fishing expedition request from Plaintiff to delve into topics that are not contemplated on the face of the pleadings or in the administrative record.

Additionally, Plaintiff seeks the depositions in order to "obtain evidence of agency bad faith." Mot. at 9. Plaintiff has again misconstrued the case law. The exception they purport to rely on does not work that way, and the Ninth Circuit has rejected this exact argument in a case *from this District*. Bad faith requires a threshold showing before any inquiry occurs. "[N]ormally there must be a strong showing of bad faith or improper behavior before the court may inquire into the thought processes of administrative

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

decisionmakers." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1437 (9th Cir. 1988), *amended by* 867 F.2d 1244 (9th Cir. 1989) (quoting *Pub. Power Council v. Johnson*, 674 F.2d 791, 795 (9th Cir. 1982)); *see also Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).

The plaintiffs in *Hodel* argued that "limiting the administrative record and prohibiting discovery without adequate justification prevented [them] from gathering the facts necessary to make out [their] bad faith claim." 840 F.2d at 1438. The Ninth Circuit answered:

> The Council, however, fails to show that the Bureau acted in bad faith or acted improperly with respect to its knowledge about AVID **or that discovery would have helped the Council make that showing.**

*Id.* (emphasis added). The court affirmed the denial of discovery. *Id.* The showing there was far more concrete than anything offered here. The *Hodel* plaintiffs alleged the agency knew before issuing its environmental impact statement that a forty-million-dollar canal would never be built. That was not enough.

*Public Power Council* confirms the point on the very page Plaintiff cites. After reciting the strong showing requirement, the court wrote: "Though petitioners have not met that burden, for the reasons discussed above petitioners should proceed with discovery to develop these claims." 674 F.2d at 795. Discovery proceeded for reasons peculiar to that statutory scheme, its compressed review schedule. and its one-time contract offers, not because bad faith had been shown. That same opinion cautions that "[one-time this exception is so broad in its formulation, courts have been reluctant to invoke it," and that when supplementation is needed "the preferred procedure is to remand to the agency for its amplification." *Id.* at 793 to 94.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

**VI. PLAINTIFF'S DEPOSITION AUTHORITY IS DRAWN FROM A DIFFERENT PROCEDURAL WORLD, AND THE PARENTHETICALS DO NOT MATCH THE CASES.**

Plaintiff supports its request for depositions with four citations. Three arise from post-award bid protests under 28 U.S.C. § 1491(b)(1), where the APA supplies only a borrowed standard of review through § 1491(b)(4). That posture produces a different kind of record, and the lead case says so.

Plaintiff cites *International Resource Recovery, Inc. v. United States*, 59 Fed. Cl. 537, 542, for "(depositions allowed in APA case as there was no 'tidy record')." Mot. at 8. The quoted phrase is not on page 542, and it is not a rule about APA cases. It appears at 541, in a passage explaining why bid protests are unlike them. The court wrote that "an agency decision in a bid protest, while subject to the APA standard of review in this Court, is not a traditional agency action which generates the tidy record typically encountered in an APA review context." *Id.* at 541. The reason is structural. A procurement generates competing proposals, revisions, evaluations by separate panels, past performance assessments, and "exchanges among evaluators and vendors which may be captured in the most informal of e-mail traffic," so the agency record is "something of a 'fiction.'" *Id.*

The sentence that follows forecloses Plaintiff's use of the case. Quoting *Cubic Applications, Inc. v. United States*, 37 Fed. Cl. 345, 350 (1997), the court explained that such a record "cannot be viewed as rigidly as if the agency had made an adjudicative decision on a formal record that is then certified for court review," and that this is so "due to the absence of a formal record." *Id.* at 541 to 42.

This case has the formal record whose absence drove that reasoning. The Forest Service compiled the materials for a single decision and certified them to this Court under penalty of perjury. Doc. 63-2. On its own terms, *International Resource Recovery* places this case in the category in which the record **is** viewed rigidly.

Similarly, Plaintiff's *Antarctic Support* parenthetical describes a holding the opinion does not contain. Plaintiff cites *Antarctic Support Associates v. United States*, 46 Fed. Cl. 145, 148 (2000), for "(four depositions of Government officials allowed due to

10

shortcomings in administrative record)." Page 148 says, in the procedural history and nothing more, "Plaintiffs were allowed to take four depositions," followed by four sentences naming the deponents and the dates their depositions were taken. The passage sits inside a background section describing the agency's evaluation panels. There is no holding, no analysis, and no discussion of record supplementation anywhere in the opinion.

Even further, Plaintiff's reliance on *Impresa* is misplaced. *Impresa* authorized a narrow deposition of the government's own decisionmaker and expressly forbade the inquiry Plaintiff wants. Plaintiff cites *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, for "(expansion of administrative record for 'explanation by deposition of the contracting officer's reasons for accepting' certification)." Mot. at 8. The quoted language is at 1340, and the discussion that governs it is at 1339. Read together, they defeat Plaintiff's request three times over. First, the deponent was the agency's own decisionmaker. The Federal Circuit explained that "the decision at issue is not the decision of the agency or agency head, but the decision of the contracting officer, an individual within the agency," and that this was "one of those 'rare circumstances' where the reasons for the contracting officer's decision should be obtained by the contracting officer's testimony, as was done in *Overton Park*." *Id.* at 1339. That is the *Camp v. Pitts* remedy, which is an explanation obtained from the agency. It is not authority to depose a private co-defendant.

Plaintiff seeks the depositions to "obtain evidence of agency bad faith." Mot. at 9. The *Impresa* Court held that in "ordering the deposition of the contracting officer, we wish to make clear that we are not ordering a deposition into the contracting officer's mental process, that is, the thought process by which he made his decision. **S**uch inquiries are inappropriate." *Id.* at 1339 (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).

The *Impresa* Court similarly limited the scope "to be confined strictly to placing on the record the basis for the contracting officer's responsibility determination," directed at two specific questions: whether the officer "possessed or obtained information sufficient to decide the integrity and business ethics issue," and "on what basis he made the

11

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

responsibility determination." *Id.* The court ordered it only because the record contained a certification, evidence raising "serious questions as to the accuracy of the certification," and no articulation of what the officer concluded when he reviewed it. *Id.* at 1340.

Plaintiff has none of that. It identifies no unexplained step in the July 2024 notice, points to no evidence undermining a document in the record, and asks instead for open ended corporate testimony from a private company about "the exclusionary auctions and animal cruelty incidents." Mot. at 9. Plaintiff requests a deposition for the one purpose *Impresa* said was inappropriate.

Finally, Plaintiff cites *Public Power Council v. Johnson*, 674 F.2d 791, 794, 796, for "(two depositions permitted to fill 'serious gaps' in APA case challenging agency action)." Mot. at 8. That is not why the depositions were allowed.

The court described the petitioners' showing as barely surviving. Their arguments were "not insubstantial or frivolous," and "[o]rdinarily, that might not be sufficient to justify a discovery order." *Id.* at 795. Discovery followed only because "there are compelling reasons why in the case before us we permit limited discovery to proceed." *Id.*

Those reasons were peculiar to the statute at issue. The Regional Act required the agency to formulate twenty-year power contracts within nine months, allowed one year for acceptance, and channeled all challenges directly to the court of appeals within ninety days, leaving that court "a short period to review the merits." *Id.* Against that clock, the court concluded it "must avoid any delay arising from incomplete allegations or a subsequent need to remand to the agency or to expand the record." *Id.*

Plaintiff identifies no comparable circumstance, because none exists. No statutory deadline compresses this Court's review. No one time contract offer is expiring. Plaintiff has not attempted the showing *Public Power Council* demanded.

The "serious gaps" language is not a holding in any event. It appears in a *cf.* reference to District of Columbia Circuit practice, in the same paragraph warning that courts "have been reluctant to invoke" the explanation exception, and stating that when the

record needs explaining "the preferred procedure is to remand to the agency for its amplification." *Id.* at 793 to 94. The Ninth Circuit never found serious gaps in that case.

## VII. THE DECLARATION SUPPORTING THE MOTION ESTABLISHES NOTHING.

The Second Declaration of Simone Netherlands, Doc. 79-1, is the motion's only evidentiary support. First, **Exhibit 3 does not exist.** Paragraph 15 states that "before and after pictures are attached hereto as Exhibit 3." No exhibits were filed with Doc. 79. Plaintiff's certificate of service nevertheless represents that counsel transmitted "the foregoing document **a**nd its exhibits." Doc. 79 at 12. Second, the motion's citations to the declaration do not match it. The motion cites paragraphs 14 through 16 for its request for additional contract documents. Mot. at 8. Those paragraphs address horse transport, a virus, and horse deaths. Nothing in them concerns contracts. The motion likewise cites paragraph 4 for the assertion that Plaintiff "purchased **all** Alpine Wild Horses sold." Mot. at 3 n.1. Paragraph 4 says neither, and dates the auction to August 2025, while this Court's order dates it August 14, 2024. Doc. 44 at 3.

Additionally, the operative paragraphs are not made on personal knowledge. Paragraphs 11, 12, and 14 rest expressly on information and belief, notwithstanding the blanket recital in paragraph 1. Paragraphs 8, 9, 10, and 17 contain no facts at all. Paragraph 12 asserts conduct "in violation of the above-cited regulations," though the declaration cites no regulation before that point. In Paragraph 14 the declarant states that horses were transported "over 48 hours," and Plaintiff treats that as evidence of a violation. Plaintiff's animal cruelty theory rests on a statute the Second Amended Complaint identifies by name. *See* Doc. 45 ¶¶ 13 to 14 (pleading 49 U.S.C. § 80502(a)(1) and § 80502(b)). But that paragraph relies on statements such as "do not believe" and cannot genuinely be given the weight Plaintiff desires. Plaintiff did not state that she followed, had eyes on, or continually monitored the truck for the entire 48 hours.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

13

The statute states that the limit runs on 28 consecutive hours of confinement, not total trip duration. § 80502(a)(1). A transit exceeding forty-eight hours is consistent with compliance if the animals were unloaded during it, and the declaration does not say they were not. Second, "[t]ime spent in loading and unloading animals is not included as part of a period of confinement." § 80502(a)(3). Third, confinement up to 36 hours is permitted on the owner's written request. § 80502(a)(2)(B). Fourth, the statute "does not apply when animals are transported in a vehicle or vessel in which the animals have food, water, space, and an opportunity for rest." § 80502(c). The declaration says nothing about conditions inside the trailer. Fifth, the statute reaches only "a rail carrier, express carrier, or common carrier (except by air or water)." § 80502(a)(1). The declaration does not establish that any such carrier was involved.

A request for discovery must be tethered to the elements of the claim it is said to support.

## IX. <u>CONCLUSION</u>

Plaintiff's own authorities answer this motion. *Hoag Ranches* held that the entity before it was not a federal agency. *Lake* applied those same six factors to a private federal contractor and found that not one of them supported agency status. *Impresa* allowed a narrow deposition of the government's own decisionmaker and called inquiry into a decisionmaker's mental processes "inappropriate." *Public Power Council* said the showing made there would "[o]rdinarily" not justify a discovery order at all. *International Resource Recovery* reserves loose treatment for records that were never certified, which is the opposite of the record here. And in *Camp v. Pitts*, *Hodel*, and *Southwest Center*, the reviewing court refused to expand the record.

What Plaintiff brings to overcome all of that is a declaration citing an exhibit it never filed, a "fourth *Hoag Ranches* factor" that appears nowhere in *Hoag Ranches*, and a plan to obtain evidence of bad faith through the very discovery that a showing of bad faith is supposed to justify.

14

The exceptions exist to plug holes in a record. They do not exist to build a different one, for claims Plaintiff has not pleaded, about decisions Plaintiff has not challenged. Defendants Rail Lazy H Contracting and Consulting LLC and Jacquelyn Hughes respectfully request that the Court deny the motion in its entirety, and in particular deny the request to compel the Rule 30(b)(6) deposition of Rail Lazy H.

**RESPECTFULLY SUBMITTED** this 30th day of July 2026.

**MILLS + WOODS LAW, PLLC**

By  */s/ Sean A.Woods*
 Robert T. Mills
 Sean A. Woods
 5055 North 12th Street, Suite 101
 Phoenix, AZ 85014
 *Attorneys for Defendant Rail Lazy H*
 *Contracting and Consulting LLC*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

15

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**CERTIFICATE OF SERVICE**

I hereby certify that on July 30, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Troy B. Froderman
tfroderman@frlawgroup.com
tdiefenbach@frlawgroup.com
Rita M. Gara
rgara@frlawgroup.com
**FR LAW GROUP PLLC**
4745 N 7th St., Ste. 210
Phoenix, AZ 85014
(602) 566-7425

Randall M. Weiner
randall@weinercording.com
Annmarie Cording
annmarie@weinercording.com
**WEINER & CORDING**
3100 Arapahoe Ave., Ste. 202
Boulder, CO 80303
(303) 440-3321

*Attorneys for Plaintiff*

Gabriel Lopez
gabriel.lopez2@usdoj.gov
Ashley M. Carter
ashley.carter@usdoj.gov
**U.S. DEPARTMENT OF JUSTICE**
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
(202) 532-5492
(202) 532-3278
*Attorneys for Federal Defendants*


        */s/ Ben Dangerfield*

16